IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES KARL, individually and on behalf of all
others similarly situated,

        Plaintiffs,

    v.

ZIMMER BIOMET HOLDINGS, INC., a
Delaware corporation; ZIMMER US, INC., a
Delaware corporation; BIOMET U.S.
RECONSTRUCTION, LLC, an Indiana limited
liability company; BIOMET BIOLOGICS, LLC,
an Indiana limited liability company; and
BIOMET, INC., an Indiana corporation,

        Defendants.

_____/

No. C 18-04176 WHA

**ORDER DENYING
DEFENDANTS' MOTIONS
TO TRANSFER, DISMISS,
AND STRIKE**

## INTRODUCTION

In this putative class action, defendants move to transfer venue, dismiss and/or strike. For the reasons herein, defendants' motions are **DENIED**.

## STATEMENT

Plaintiff James Karl is a resident of Novato, California. Plaintiff alleges that defendants misclassified him and other sales representatives as independent contractors. Based on this, he raises claims for relief for violations of the FLSA, Industrial Welfare Commission Wage Order 4-2001, the California Labor Code for unpaid wages and overtime premiums, and related California Labor Code claims including: meal and rest period violations, failure to provide

1    itemized wage statements, failure to reimburse business expenses, and related civil and statutory

2    penalties.  Seeking to represent a putative class, plaintiff filed this action in the Northern

3    District of California (Dkt. No. 17 at 2).

4    　　　In August 2015, plaintiff James Karl signed a sales associate agreement with defendants

5    Zimmer Biomet Holdings, Inc., a Delaware corporation; Zimmer US, Inc., a Delaware

6    corporation; Biomet U.S. Reconstruction, LLC, an Indiana limited liability company; Biomet

7    Biologics, LLC, an Indiana limited liability company; and Biomet, Inc., an Indiana corporation.

8    Plaintiff thereafter began working for defendants as a sales representative in California.

9    The agreement classified plaintiff and other California-based sales representatives as

10   independent contractors and included a forum-selection clause identifying Indiana as the

11   exclusive forum (Dkt. Nos. 1 at 1; 14-2 at 27; 17 at 1–2).

12   　　　Defendants now move to transfer, dismiss, and/or strike.  This order follows full briefing

13   and oral argument.

## ANALYSIS

### 1.    ENFORCEMENT OF THE FORUM-SELECTION CLAUSE
WOULD CONTRAVENE CALIFORNIA'S STRONG PUBLIC POLICY.

16   　　　An action may be transferred to another district "where it might have been brought."

17   28 U.S.C. § 1404(a).  Whether transfer or dismissal is appropriate "rests within the sound

18   discretion of the district court."  *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976).  Generally, the

19   district court considers the factors of Section 1404(a) when deciding a motion to transfer.

20   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The presence of a

21   forum-selection clause, however, changes the analysis.  The Supreme Court has held that a

22   forum-selection clause should be enforced unless the party challenging enforcement of the

23   provision can show it is unreasonable.  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

24   But, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would

25   contravene a strong public policy of the forum in which suit is brought, whether declared by

26   statute or by judicial decision."  *Id.* at 15.

27

28

Plaintiff's agreement contains the following forum-selection clause:

> This Agreement (including, but not limited to, the validity, performance, interpretation and enforcement thereof), the relationship established herein, and any dispute between the parties shall be governed by and subject to the internal laws (exclusive of conflicts of law provisions) and decisions of the trial and appellate courts of the State of Indiana. Furthermore, to the extent any legal proceedings are initiated pursuant to this agreement or otherwise, the exclusive venue for such litigation shall be a court located in Kosciuko County, Indiana or the United States District Court for the Northern District of Indiana, South Bend Division. Accordingly, Sales Representative irrevocably consents to the personal jurisdiction and exclusive venue in such courts

(Dkt. No. 14-2 at 27).

Here, plaintiff argues that the forum-selection clause is unenforceable because it contravenes California's strong public policy of litigating labor disputes that arise in California within the state. California Labor Code Section 925 makes forum-selection clauses voidable per public policy. Section 925 states, in part:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.
>
> * * *
>
> (f) This section shall apply to a contract entered into, modified, or extended on or after January 1, 2017.

Whether the agreement here falls within the orbit of the statute is disputed.

Reserving discussion of the term "employee" for the moment — the forum-selection clause at issue here violates both prongs of Section 925(a) by: (1) requiring labor disputes that

arise within California to be adjudicated in Indiana, and (2) imposing Indiana law on California employees.

In Section 925, California expresses a strong public policy to protect employees from litigating labor disputes outside of their home state. In an analogous context, our court of appeals made unenforceable a forum-selection clause due to California's strong public policy as expressed in an analogous statute:

> *Bremen* teaches that a strong public policy may be "declared by statute." By voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, § 20040.5 ensures that California franchisees may litigate disputes regarding their franchise agreement in California courts. We conclude and hold that § 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue.

*Jones,* 211 F.3d at 498.

So too here.

### A. Application of California Labor Code Section 925.

Defendants assert that Section 925 does not apply to plaintiff's agreement for two reasons. *First,* plaintiff is not classified as an "employee" in the agreement. S*econd,* defendants contend that plaintiff's agreement predates the effective date (January 1, 2017) of Section 925, and relatedly, that the June 2018 revision in question is not a contract modification. These assertions are unconvincing, as now shown.

#### *(1) Plausibility of Alleged Employee Status Under California Law.*

The agreement's designation of plaintiff as an "independent contractor" does not foreclose further inquiry. Under California law, "[t]he label placed by the parties on their relationship is not dispositive." *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349. In fact, the recent California Supreme Court decision in *Dynamex Operations W. v. Superior Court*, adopting the ABC test, made clear that all workers are presumed to be employees. 4 Cal. 5th 903, 955–56 (2018). "The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent

4

contractors only if the hiring business demonstrates that the worker in question satisfies each of three conditions:"

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of such work and in fact;
>
> (B) that the worker performs work that is outside the usual course of the hiring entity's business; and
>
> (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex*, 4 Cal. 5th at 955 (2018). A recent California Court of Appeal decision clarified that, as to part (C), the inquiry is whether the worker "actually has such an independent business, occupation, or profession, not whether he or she could have one." *Garcia v. Border Transportation Group, LLC, et al*, 2018 WL 5118546 (Oct. 22, 2018). A worker is an employee if the employer fails to prove any of the above factors.

The ABC test applies only to claims arising under Industrial Welfare Commission Wage Orders. *California Trucking Ass'n v. Su*, 903 F.3d 953, 959, fn.4 (9th Cir. 2018). Here, all but one of plaintiff's claims (reimbursement of business expenses) are for violations of the California Labor Code that arise under a Wage Order 4-2001 (Dkt. No. 1 at 12–15).

There is no doubt that Section 925 expresses California's strong public policy against enforcing forum-selection clauses in employment agreements. In a misclassification action such as this, doubt exists about whether the plaintiff qualifies under the statute. That determination, in turn, depends on a careful consideration of whether the complaint sets out facts and circumstances (taken as true) from which one could conclude that plaintiff has made a substantial showing that he or she is an employee under California law.

Here, as plaintiff's claims arise under an Industrial Welfare Commission Wage Order, the ABC test from *Dynamex* controls. Under this test, the worker is presumed to be an employee, and the burden of proving otherwise shifts to the hiring entity. Accordingly, plaintiff's burden is simply to allege facts sufficient to show that his misclassification allegation is plausible, as required under *Iqbal*.

As a non-exhaustive example, plaintiff here alleges that he is required to track and report his appointments and activities to defendants, he is required to be on-call at times designated by defendants, less than ten percent of his time is dedicated to sales functions, and that the majority of his time is dedicated to on-site customer service for tasks such as surgical implantation of defendants' products and account management tasks (Dkt. No. 1 ¶¶ 20, 21, 30). This order finds that plaintiff has pled facts sufficient to show that his misclassification claim (under the ABC test) is plausible. Plaintiff therefore qualifies for Section 925. This, however, is insufficient to trigger Section 925 and is only the first part of the analysis.

### *(2)* *Contract Modification*.

Section 925(f) indicates that the section "shall apply to a contract entered into, modified, or extended on or after January 1, 2017." Though plaintiff's initial agreement was signed in 2015 (before the effective date of Section 925), defendants later revised plaintiff's compensation on June 1, 2018 (after the effective date) (Dkt. No. 14-2 at 31). In a declaration submitted by defendants, Donald Ritter, Vice President of U.S. Sales Operations for defendant Zimmer US, Inc., stated that he signed plaintiff's initial agreement (Dkt. No. 14-1 ¶ 6). He further declared that "Karl executed a later, separate amendment to the Sales Associate Agreement. Jim Karl's relationship with Zimmer Biomet has been governed by the Sales Associate Agreement and amendment since their respective execution" (*ibid*). Defendants concede that the contract update emailed to plaintiff on June 1, 2018 was an amendment that modified his initial agreement. The modification condition required by Section 925 is met.

Citing to *Yates v. Norsk Titanium US, Inc.*, 2017 WL 8232188 (C.D. Cal. Sept. 20, 2017) (Judge Andrew Guilford), defendants contend that the emailed revision which augmented plaintiff's compensation is not a contractual modification for purposes of the statute. *Yates*, however, found Section 925 inapplicable to an implied-in-fact modification "because the employment agreement require[d] that any amendment or modification be 'in a writing signed and dated by both parties.'" *Id.* at *3.

Plaintiff's agreement here has a similar amendment clause. Section 24 of the agreement provided that "[t]his Agreement may not be modified or amended except by an instrument in

6

writing executed by each of the parties" (Dkt. 14-2 at 17). Defendants assert that their revision cannot be an amendment because it is inconsistent with the terms of the agreement's amendment clause as it "[was] not signed by either Plaintiff or any Defendants" (Dkt. 18 at 6). Not so.

Unlike *Yates*, defendants issued a written revision by email entitled "UPDATE TO EXHIBIT A" which "supersede[s] exhibit A of [plaintiff's] original agreement and any subsequent amendments" (*id.* at 31). This emailed revision is a contract modification by its own terms — as conceded by defendants in the Ritter declaration (Dkt. No. 14-1 ¶ 6).

Defendants' contention that any amendment must be executed by both parties as required by Section 24 of their agreement falls limp. Defendants' letterhead on the revision suffices as a signature. *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 798 (2013) (citing Rest.2d Contracts, § 134). Moreover, "[i]t is a settled rule that the receipt and acceptance by one party of a paper signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper." *Dallman Supply Co. v. Smith-Blair, Inc*., 103 Cal. App. 2d 129, 132 (1951). The nature of the modification here parallels the rule stated in *Dallman.* The unilateral modification — signed by virtue of company letterhead via official business email — bound defendants. Plaintiff signified his acceptance by his continued labor under the modified terms, including a higher compensation. The revision here has been executed by both parties, and therefore constitutes a modification for purposes of applying Section 925.

At the hearing, defendants raised previous orders by the undersigned which granted transfer. Because neither decision considered Section 925, they are out of place. First*, Lentini v. Kelly Servs. Inc.*, No. C17-03911 WHA, 2017 WL 4354910, at *3–4 (N.D. Cal. Oct. 2, 2017), considered the merits of the plaintiff's contention that his PAGA claim in a wrongful termination action precluded transfer of his case by making his forum-selection clause unenforceable on public policy grounds. It did not. Second*, East Bay Women's Health, Inc. v. gloStream, Inc*., No. C 14-00712 WHA, 2014 WL 1618382, at *1 (N.D. Cal. Apr. 21, 2014), considered a motion to transfer pursuant to a forum-selection clause, but with a claim for consumer fraud regarding a

malfunctioning product. There, Section 925 had not even been enacted, and the action was not predicated on any Labor Code violations. These past orders have no bearing here.

For the reasons stated above, this order finds that plaintiff's agreement falls within Section 925's orbit and contravenes California's strong public policy against litigating labor disputes out-of-state. The forum-selection clause is unreasonable under *Bremen* and shall not be enforced. Nor shall the choice of law provision, for the same reasons.

## 2. TRANSFER ANALYSIS UNDER SECTION 1404(a).

Because the forum-selection clause has been found to be unenforceable, this order considers the factors of Section 1404(a) to decide defendants' motion to transfer. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Section 1404(a) considers the convenience of the parties, the convenience of the witnesses, and the interest of justice, as understood through the following non-exhaustive list of factors: (1) the location where the relevant events occurred; (2) the forum that is most familiar with the governing law; (3) plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to plaintiff's cause of action in the chosen forum; (6) the differences in costs of litigation in the two fora; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; and (9) the public policy of the forum state. *Jones*, 211 F.3d at 498–99, 499 n.21. No single factor is dispositive. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

There is no dispute that this action may have been brought in the Northern District of Indiana. Thus, defendants' motion only presents the question of whether the convenience of the parties and witnesses and the interest of justice favor transfer.

The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, district courts consider convenience and fairness factors on an individualized, case-by-case basis. *Stewart Org.*,

8

487 U.S. at 29. We must weigh both private factors, which go to the convenience of parties and witnesses, and public factors, which go to the interest of justice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). This order considers these factors in turn.

### A. Convenience and Fairness.

Generally, great weight is accorded to a plaintiff's choice of forum, although that choice is given less weight when filed as a class action and where there are not significant contacts between the forum and the allegations of the complaint. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987). "[T]he most convenient forum is frequently the place where the cause of action arose." *Van Dusen*, 376 U.S. at 628.

Defendants contend that because plaintiff seeks a nationwide collective action and that defendants' headquarters are in Indiana, plaintiff cannot show that California has a greater interest in the lawsuit than Indiana (Dkt. No. 14 at 11).

Defendants' corporate headquarters may be in Indiana but, defendants hired dozens of California citizens as sales representatives and implemented policies that allegedly violate California labor laws (Dkt. No. 1 at 8–9). That defendants are headquartered in Indiana "does not negate the local impact of [their] decisions when they are implemented elsewhere." *Schultz v. Hyatt Vacation Marketing Corp.*, 2011 WL 768735, at *5 (N.D. Cal. 2011) (Judge Lucy H. Koh). Moreover, as pled in plaintiff's complaint, the operative facts of this action occurred within California which has a strong interest in adjudicating labor disputes within the forum. Plaintiff has established significant contacts between the chosen forum and the allegations of his complaint.

The next factor involves the convenience of parties and witnesses. In this action, named plaintiff's convenience aligns with that of at least 40 putative class members who reside in California; the putative collective action membership is still unknown (Dkt. No. 1 at 8). *First*, no class or collective has yet been certified, so named plaintiff is the only plaintiff in this action and his convenience merits greater consideration than the putative class or collective members. Named plaintiff lives and works in this district, not in Indiana, and naturally prefers to

litigate this case here — which weighs against transfer. *Second*, if certified, this geographically widespread collective action will likely call for some participants to travel inconvenient distances regardless of where the parties litigate. Indiana's more central geography weighs in favor of transfer given the potential nationwide FLSA collective action.

Defendants argue that "[v]irtually all of the corporate witnesses are located in Indiana, and counsel's costs associated with traveling to Indiana will be negligible" (Dkt. No. 14 at 12). Defendants' cost of transporting employee-witnesses, however, would be unlikely to outweigh the airfare and hotel costs of named plaintiff and putative class or collective members if this action were litigated in Indiana. Transfer is inappropriate when it merely shifts the inconvenience from one party to the other. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

If, however, a California class is indeed certified, Karl, as named plaintiff, would be charged with the additional duties of representing the interests of class members. To transfer this action to Indiana would cause him financial and logistical hardships (as explained in his sworn declaration) which would presumably compromise his ability to attend hearings (Karl Decl. ¶ 10). Unlike plaintiff, defendants offered no statement under oath claiming such hardships related to travel or scheduling availability for hearings in the Northern District of California. Plaintiff's declaration claiming hardship is not dispositive, but weighs against transfer.

Contrary to defendants' assertion, because the forum-selection clause has been found unenforceable here, plaintiff's convenience factors need not "overwhelmingly disfavor transfer" (Dkt. No. 14 at 12). Moreover, without the benefit of discovery to further illuminate the issue of numerosity and geographic distribution regarding the proportional convenience of the California class members and the collective members, the convenience of the parties is a neutral factor in deciding defendants' motion to transfer.

### B. Transfer Would Contravene Public Policy And Not Be in The Interest of Justice.

A district court deciding a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, familiarity with governing law, and local interest in deciding localized controversies.

Here, court congestion is a neutral factor. While the case load in the Northern District of California was slightly higher than in the Northern District of Indiana, the median time from filing to disposition of a civil action was significantly less.[*] During the twelve-month period ending on June 30, 2018, this district had 704 pending cases per active judge while the Northern District of Indiana had 606 pending cases per active judge. During the same period, however, the median time from filing to disposition of civil actions was 7.0 months in this district and 13.0 months in the Northern District of Indiana. Federal Court Management Statistics (June 30, 2018), http://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2018.pdf.

The two districts are equally familiar with federal law, which forms the basis of the putative FLSA collective action; however, this district is more familiar with the state laws underlying the California class action claims. But since other federal courts are fully capable of applying California law, this factor weighs only slightly against transfer. *Schultz*, 2011 WL 768735 at *4.

Plaintiff's argument that his potential PAGA claim precludes transfer is incorrect as California district courts routinely transfer PAGA actions to other courts outside of California. *See Lentini,* 2017 WL 4354910. California's strong public policy as discussed in the above forum-selection analysis, however, shows that the local interest in adjudicating this action is great. Section 925 expresses California's interest in preventing contractual circumvention of its labor law — tipping the scales against transfer. Accordingly, defendants' motion to transfer venue pursuant to Section 1404(a) is **DENIED**.

---

[*] Defendants' request for judicial notice of judicial caseload statistics (Dkt. 15-1) is **GRANTED**.

**3. MOTION TO DISMISS PURSUANT TO RULE 12(b)(3).**

An action filed in a district that satisfies 28 U.S.C. § 1391 may not be dismissed under Federal Rule of Civil Procedure 12(b)(3). *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55–56 (2013). Because "a substantial part of the events or omissions giving rise to the claim occurred" in and around San Francisco, the Northern District of California is a proper venue under Section 1391(b)(2). Since venue is proper, defendants' motion to dismiss pursuant to Rule 12(b)(3) is **DENIED**.

**4. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**.

Defendants move to dismiss plaintiff's FLSA and California state law claims pursuant to FRCP 12(b)(6). On a motion to dismiss, we accept the facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). But, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. *Ibid*. Regarding wage-and-hour claims brought under the FLSA, our court of appeals has held that though conclusory allegations that merely recite the statutory language are inadequate, "detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim." *Landers v. Quality Commc'ns, Inc*., 771 F.3d 638, 644 (9th Cir. 2014) (amended Jan. 26, 2015) ("Obviously, with the pleading of more specific facts, the closer the complaint moves toward plausibility").

Plaintiff claims that defendants mischaracterized sales representatives as independent contractors. As a result of this misclassification, plaintiff alleges that defendants have violated a number of FLSA and California Labor Code provisions — including the denial of overtime compensation, meal and rest breaks, and that sales representatives had to pay for necessary business expenses (Dkt. Nos. 1 ¶¶ 2, 55, 65).

In support of his claim, plaintiff alleges that sales representatives typically work more than forty hours per week (with an estimated average of fifty to sixty hours) and that defendants paid plaintiff, and other sales representatives, no overtime wages and kept no records of their work hours. Sales representatives are compensated exclusively by commission, and are subject to mandatory group-pooling and distribution amongst defendants' sales teams based on terms controlled by defendants. Plaintiff is also required to track and report his appointments and schedule. Moreover, though defendants paid for the vendor credentials required to access hospitals, they did not reimburse sales representatives for other business costs — namely travel, mandatory training and compliance programs, or advertising costs they incurred (Dkt. No. 1 ¶¶ 2, 16–36).

In addition to his state and federal overtime claims, plaintiff alleges that defendants violated California labor laws and the California Business and Professions Code by failing to reimburse him, and putative class members, for necessary job-related expenditures; failing to provide statements accurately reflecting appraisers' work hours and wages; and misclassifying sales representatives as independent contractors rather than employees, thereby engaging in unfair business practices (Dkt. No. ¶¶ 38–96).

**A.      Plaintiff's Federal and State Overtime Claims Are Sufficiently Pled.**

Defendants move to dismiss plaintiff's state and federal claims for unpaid overtime, contending that plaintiff's allegations fall short of pleading a plausible claim for overtime. *Landers*, however, held that an employee need not allege the overtime compensation owed with mathematical precision, but instead must provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." 771 F.3d at 646. A plaintiff's estimations of the average hours worked and an allegation that he worked more than forty hours in a given workweek without being compensated for the overtime hours is sufficient. *Id.* at 644.

Defendants contend that plaintiff's FLSA and state claims should be dismissed because he "merely recites the legal standard . . . that Defendants violated the FLSA . . . [and] does not allege any particular job tasks, nor does he allege any facts regarding production or other

requirements that would necessitate him working overtime" (Dkt. No. 14 at 17). But the complaint alleges that plaintiff commenced work after signing his agreement with defendants in August 2015, and "has worked, and continues to work as a sales representative," with work days "most often in the range of 10 to 12 hours per day and 50 to 60 hours per workweek" (Dkt. No. 1 ¶¶ 3, 24, 32). Moreover, the complaint does provide a reason for working overtime — alleging that sales representatives are required to remain on-call on schedules set by defendants (*id.* at ¶ 21).

These factual allegations not only support the inference that plaintiff worked in excess of forty hours in one specific week, but that he did so each work-week from 2015 through the present day and defendant failed to pay him overtime in each of those weeks. Under *Landers*, that allegation is sufficient. Accordingly, defendants' motion to dismiss plaintiff's first and second claims for relief is **DENIED**.

### B. Claims for Failure to Provide Meal And Rest Periods Are Sufficiently Pled.

Under California Labor Code Section 226.7, an employer is prohibited from requiring employees to work during a meal or rest period mandated by a wage order. Pursuant to California's Industrial Welfare Commission Wage Order 4–2001, an employer is required to provide at least a thirty-minute meal period per five-hour work period. 8 Cal. Code Regs. § 11040(11). Under Wage Order 4–2001, employees are entitled to a rest period amounting to a net total of ten minutes per four hours worked. 8 Cal. Code Regs. § 11040(12).

Plaintiff alleges that "due to the daily demands of their job requirements, Plaintiff and other sales representatives typically are not provided the opportunity to take an uninterrupted" meal or rest period (Dkt. 1 ¶¶ 33, 34).

Defendants argue that plaintiff's claim is insufficient under the standard set forth in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012). In *Brinker*, the California Supreme Court held that an employer complies with California labor laws and the applicable wage order if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so." *Id.* at 1040. An employer "is not obligated to police

1   meal breaks and ensure no work thereafter is performed.  Bona fide relief from duty and the

2   relinquishing of control satisfies the employer's obligations." *Id*. at 1040–41.

3       Defendants argue that *Brinker* requires plaintiff to include allegations in their meal break

4   violation claims explaining why they did not take meal breaks: "Such broad, conclusory,

5   allegations without any supporting substantive facts do not state a plausible claim that

6   Defendants did not provide meal or rest periods without proper allegations as to why any meal

7   periods were allegedly missed," particularly here where plaintiffs are labeled as independent

8   contractors (Dkt. No. 14 at 27).  Nothing in *Brinker* supports that proposition.  Nor does the

9   decision in *Brown v. Wal–Mart Stores, Inc*., No. 08-cv-5221-SI, 2013 WL 1701581 (N.D. Cal.

10  Apr. 18, 2013) (Judge Susan Illston), also relied upon by defendant.  In *Brown*, the court

11  considered whether the employer had pressured employees not to take meal breaks that the

12  employer, at first, had provided.  The plaintiff in *Brown* failed to plead the nature of the pressure

13  tactics at issue in that case.

14      Here, plaintiff alleges that no meal breaks were provided at all.  That claim is adequately

15  pled under *Brinker*.  For the same reasons, plaintiff has adequately pled that defendants did not

16  provide him with the rest period as required by the wage order.  That defendants considered

17  plaintiff an independent contractor is irrelevant at the motion to dismiss stage where plaintiff

18  has alleged that he is an employee and meal and rest breaks were not provided.  Accordingly,

19  defendants' motion to dismiss plaintiff's third and fourth claims for relief is **DENIED**.

20          **C.    Expense Reimbursements.**

21      Under California Labor Code Section 2802(a), an employer shall indemnify employees

22  for all necessary expenses incurred by the employee as a direct consequence of his duties.

23  Merely alleging failure to reimburse unspecified work-related expenses is not enough to state a

24  Section 2802 claim.  *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016)

25  (Judge Jacqueline Scott Corley).  "Instead, Section 2802 claims are sufficiently pled where the

26  complaint identifies the particular expenses that were not reimbursed and affirmatively alleges

27  that the expenses were part of the plaintiff's job duties." *Ibid.*

28

Here, plaintiff alleges that he and other putative class members were not reimbursed for their gas, smartphone and data plans, travel expenses, insurance, advertising, marketing, continuing education and other professional charges and expenses (Dkt. No. 1 ¶¶ 36, 84–85). Defendants insistence that plaintiff has failed to plead with sufficient particularity is misplaced. Plaintiff has specifically identified particular expenses in his complaint and affirmatively alleges that they were necessary business expenses (*id*. at ¶ 36). For example, plaintiff alleges that defendants require "sales representatives to attend and pay for meetings, mandatory training sessions and professional education seminars and conferences about product information, operating room etiquette, and Defendants' compliance program at Plaintiff and other sales representatives' own expense" (*ibid*).

Because plaintiff has specifically identified particular expenses in his complaint, defendants' motion to dismiss plaintiff's sixth claim for relief is **DENIED**.

### D. Class and Collective Claims.

Defendants also move to dismiss plaintiff's putative class and collective action pursuant to Rule 12(b)(6) on the grounds that plaintiff's definitions are overbroad, imprecise, and unascertainable — thereby failing to satisfy the requirements of Rule 23. But "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).

It is premature to assess plaintiff's compliance with Rule 23 at this early stage where defendant has yet to file an answer and discovery has not yet begun. *See Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 943 (N.D. Cal. 2016) (Judge Jon S. Tigar). Defendant's contention is more appropriate at the class certification stage. To the extent defendants move to dismiss or strike plaintiff's class and collective allegations, the motion is **DENIED**.

### 5. MOTION TO STRIKE PURSUANT TO RULE 12(F).

#### A. Costs and Interest Pursuant to Labor Code Section 226.7 Are Available.

Plaintiff seeks to recover costs and interest pursuant to his meal and rest period claims (Dkt. No.1 ¶¶ 70, 74). Section 226.7(a) provides, "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare

16

Commission." Subdivision (b) of Section 226.7 further provides that, "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

Defendants — string citing to various decisions — seem to argue that plaintiff is not entitled to cost and interest penalties under Labor Code Section 203 because compensation for unpaid rest breaks are not "wages" (Dkt. No. 14 at 29).

This is an issue on which district courts are divided. *In re: Autozone, Inc.*, No. 3:10-MD-02159-CRB, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016) (Judge Charles R. Breyer) (collecting cases). Judges here disagreed as to whether penalties under Section 226.7 are "wages" for purposes of Section 203 interest. *Ibid.* This disagreement stems from two opinions of the California Supreme Court, as now discussed.

In *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007), the court considered whether the remedy from a Section 226.7 rest break claim was a "wage" or a "penalty" for purposes of the appropriate statute of limitations. The court held that "[t]he statute's plain language, the administrative and legislative history, and the compensatory purpose of the remedy compel the conclusion that the 'additional hour of pay' . . . is a premium wage intended to compensate employees, not a penalty." *Ibid*. In other words, the plaintiff's remedy under his Section 226.7 claim constituted a "wage."

Later, in *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1248 (2012), the court interpreted Section 226.7 with respect to a different statute — Section 218.5 — which required that attorneys' fees be awarded to the prevailing party in "any action brought for the nonpayment of wages . . . ." The court considered whether a Section 226.7 claim "constitutes an 'action brought for the nonpayment of wages' within the meaning" of Section 218.5. *Id*. at 1255. The court held it did not. *Ibid*. In determining the root cause of an action, for purposes of triggering the attorney's fees statute, the court stated that "[t]he failure to provide required meal and rest breaks is what triggers a violation of section 226.7. Accordingly, a Section 226.7 claim

17

is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." *Id.* at 1256–57.

The court, however, stated that its decision in *Kirby* was "not at odds with" *Murphy*:

> We said that the "additional hour of pay" remedy in section 226.7 is a "liability created by statute" and that the liability is properly characterized as a wage, not a penalty . . . . To say that a section 226.7 remedy is a wage, however, is not to say that the legal violation triggering the remedy is nonpayment of wages. As explained above, the legal violation is nonprovision of meal or rest breaks, and the object that follows the phrase "action brought for" in section 218.5 is the alleged legal violation, not the desired remedy.

*Id.* at 1257.

Here, defendants point to *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016), where the California Court of Appeal, citing to *Kirby*, found that a premium payment under Section 226.7 was not a wage because, a Section 226.7 "action is brought for the non-provision of meal and rest periods, not for the 'nonpayment of wages.'"

Judge Breyer rejected an identical argument, finding that the citation to *Ling* was dicta. *In re: Autozone*, 2016 WL 4208200, at *7. In *Ling*, the California Court of Appeal only embarked on the discussion of Section 203 penalties after upholding an arbitration decision on other grounds. This order agrees that *Ling's* analysis of Section 226.7 was dicta.

Because the California Supreme Court itself explicitly stated that its holding in *Kirby* was "not at odds with" the *Murphy* decision, *Murphy's* holding that a Section 226.7 remedy constitutes a "wage" should be followed. *Kirby*, 53 Cal. 4th at 1257. Unpaid rest breaks are "wages" entitling plaintiff to costs and interest should his claim prevail. Defendants' motion to strike plaintiff's claims for such recovery is **DENIED**.

### B.  The "Value of Benefits That Would Have Been Due."

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." In conjunction with his UCL claims, plaintiff seeks "restitution in the amount of the respective unpaid wages earned and due, and the value of the benefits that would have been due had they been properly classified" (Dkt. No. 1 ¶94). Defendants move to strike on the basis that such an award is inappropriate under California law.

18

Defendants argue that "it is unclear how the Court would measure the 'value' of employment benefits, as the cost of the benefits themselves may be more or less than the value of the health care or other benefits provided" (Dkt. No. 14 at 30). Defendants, citing to our court of appeals decision in *West Winds, Inc. v. M.V. Resolute*, contend that such recovery is inappropriate because the value of the benefit that the employees will ultimately receive is speculative. 720 F.2d 1097, 1100–01 (9th Cir. 1983) (involving an admiralty claim for a preferred maritime lien to recover the loss of benefits due to employers failure to make contributions to the seamen's trust fund). There, our court of appeals reviewed the legislative history of the priority of trust fund contributions as compared to wages in bankruptcy law to inform its interpretation of employer contributions under admiralty law. Our court of appeals noted that "[r]ather than constituting benefits convertible to a cash equivalent, contributions generally accumulate in trust funds, which, after investment, finance future benefits that are non-convertible, and may vary according to an employee's needs." *Id.* at 1100.

In *West Winds*, the uncertain future value of would-be trust fund contributions to an investment vehicle made determining the present cash-equivalent value speculative. Here, the task is simpler. And should plaintiff use a reasonable proxy for the "value of benefits," the claims may be found to be quantifiable and provable at trial.

Moreover, defendants' cite to *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992), for the proposition that recovery of wages and "the value of benefits" cannot be recovered in an action brought under California's Unfair Competition Law. *Bank of the West* involved an insurance coverage dispute under a comprehensive general liability policy for recovery of damages under the policy as a result of violations of California's Unfair Competition laws. *Id.* at 1258. The court stated that "damages are not available under Section 17203. The only non-punitive monetary relief available under the Unfair Business Practices Act is the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restor[ing] . . . money . . . which may have been acquired by means of . . . unfair competition.'" *Id.* at 1266.

In a more recent and on-point discussion, the California Court of Appeal explained that monetary damages are different from restitution in a UCL claim. Wages unlawfully withheld pursuant to a violation of the UCL may be recovered as restitution. *Espejo v. The Copley Press, Inc*., 13 Cal. App. 5th 329, 367 (2017). "An order for payment of wages unlawfully withheld from an employee is a restitutionary remedy authorized by the UCL." *Ibid*. Moreover, the term 'wages' includes benefits to which the employee would be entitled to. *Ibid*.

The availability of restitution is not contingent on injunctive relief. *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp*., 14 Cal. 4th 1247, 931 P.2d 290 (1997). Recovery through the UCL may be maintained as long as the claim is predicated on a Labor Code provision. *Id.* at 368; *See also Cortez v. Purolator Air Filtration Products Co*., 23 Cal. 4th 163, 177, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) ("[O]rders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203;" and discussing the court's broad powers to order restitution to effect justice). Here, plaintiff's claim is predicated on violations of Labor Code Sections: 226, 226.7, 226.8, 510, 512, 1182.12, 1194, 1197, 1197.1, 1198, and 2802 (Dkt. No. 1 ¶ 91). Plaintiff's claims for recovery of wages and the value of benefits constitute restitutional disgorgement, a remedy available under Section 17200.

Accordingly defendants' motion to strike plaintiff's claims for recovery of the "value of benefits" is **DENIED**. To the extent defendants move to strike on the grounds that the amount sought to be recovered by plaintiff is speculative, the argument will be more appropriate on a motion for summary judgment and is **DENIED**.

### C. Plaintiff's Claims For Injunctive Relief.

Defendants are correct that injunctive or other equitable relief is not available under the UCL unless the plaintiff lacks an adequate remedy at law. *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (Judge Lucy H. Koh). But it would be premature to strike plaintiff's equitable claims should they be the sole remedy — such as the request for declaratory relief for his misclassification claim.

For now (at the pleading stage) plaintiff has met his burden to plead with sufficient particularity to put defendants on notice as required by Rule 9(g). Accordingly, defendants' motion to strike is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' motions to transfer, dismiss, and strike are **DENIED**.


**IT IS SO ORDERED.**


Dated: November 6, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE