IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KARL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZIMMER BIOMET HOLDINGS, INC., a Delaware corporation; ZIMMER US, INC., a Delaware corporation; BIOMET U.S. RECONSTRUCTION, LLC, an Indiana limited liability company; BIOMET BIOLOGICS, LLC, an Indiana limited liability company; and BIOMET, INC., an Indiana corporation,<br><br>Defendants. | No. C 18-04176 WHA<br><br>**ORDER RE MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND MOTION TO FILE UNDER SEAL** |

**INTRODUCTION**

In this putative employment class action, plaintiff moves for conditional certification of an FLSA collective action and to file under seal. To the extent stated below, the motions are **GRANTED**.

**STATEMENT**

In August 2015, plaintiff James Karl signed a sales associate agreement with defendants Zimmer US, Inc. ("Zimmer US"); Biomet U.S. Reconstruction, LLC ("Biomet Reconstruction"); and Biomet Biologicals, LLC ("Biomet Biologics"). He thereafter began working for those three entities as a sales representative in California. Pursuant to the agreement, plaintiff sold medical devices in the surgical field — particularly, orthopedics —

such as replacement hips and surgical tools. The agreement also classified plaintiff as an independent contractor. Sales representatives such as plaintiff were primarily paid on commission (Dkt. No. 53-1, Exhs. 1 at 164:15–165:22; 13 ¶ 1; 21 ¶ 1).

Defendant Zimmer Biomet Holdings, Inc. ("Zimmer Biomet Holdings") was formed in June 2015 as a result of a merger between two previous competitors, Zimmer Holdings, Inc. and Biomet, Inc. Zimmer Biomet Holdings is a holding company and the parent corporation of various subsidiaries, including the three subsidiary entities plaintiff contracted with. It did not have any employees or directly contract with independent contractor sales representatives who sell orthopedic products (Dkt. Nos. 53-1, Exh. 1 at 110:19–111:7; 57-14 ¶ 3).

The subsidiaries of Zimmer Biomet Holdings were responsible for selling and distributing various product lines (with each subsidiary selling different products). These products included orthopedic reconstructive products, sports medicine, biologics, extremities, and trauma products, office-based technologies, spine, craniomaxillofacial and thoracic products, dental implants, and related surgical products. The primary customers were surgeons, other specialists, hospitals, and other health care dealers (Dkt. No. 53-1, Exh. 1 at 22:4–21, 110:17–24).

As to the three subsidiary entities plaintiff directly contracted with, Zimmer US engaged Biomet Reconstruction and Biomet Biologics in designing, manufacturing, and marketing medical devices and biologics related to knees, hips, sports medicine, foot and ankle, extremities, and trauma. These three entities (and Zimmer Biomet Holdings' subsidiaries generally) used two different sales models relevant to this action: (1) direct, and (2) distributor (Dkt. No. 57-14 ¶¶ 4, 6, 14).

Under the direct territory sales model, the Zimmer Biomet Holdings subsidiaries contracted directly with independent contractor sales representatives who sold primarily their products. Under the distributor sales model, the subsidiary entities contracted with a third-party distributor — who owned and operated its independent business — who was in turn responsible for all sales within a geographic territory, including hiring sales representatives (*id*. ¶¶ 6, 14).

2

Plaintiff filed the instant action in July 2018, alleging that defendants misclassified him and others similarly situated as independent contractors. Relevant to this motion, plaintiff seeks to represent other sales representatives who were classified as independent contractors and allegedly subsequently denied overtime pay under the FLSA. Plaintiff now moves under Section 216(b) of the FLSA to conditionally certify a collective action and to disseminate notice. Plaintiff's proposed FLSA class is defined as follows (Dkt. No. 53 at 3):

> Any person who signed a contract, from three years prior to the date on which notice is issued to the date on which notice is issued, with Zimmer Biomet, or any of its subsidiaries, that engages the person as an independent contractor for the solicitation of sales of Zimmer Biomet products and/or services in the market segments or product lines: Orthopedics, S.E.T., Biologics, Reconstructive, Spine, CMF, Thoracic, Knee, Hip, Foot & Ankle, Sports Medicine, Extremities, Surgical, Microfixation, Bone Healing, Cement, Trauma.

Defendants oppose. They contend that (1) those individuals who have not contracted with the same entities as plaintiff (*i.e.*, Zimmer US, Biomet Reconstruction, and Biomet Biologicals) should be excluded from the collective; (2) those individuals who contracted with third-party distributors should be excluded from the collective; (3) the forum-selection clause narrows the scope of the collective; and (4) fact-intensive inquiries bar conditional certification. This order follows full briefing and oral argument, followed by supplemental briefing.

**ANALYSIS**

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions of the Act. *See* 29 U.S.C. § 216(b). "[W]orkers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). "Similarly situated" means "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id*. at 1114. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id*. at 1115. In other words, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117.

3

A majority of district courts in our circuit employ a two-step approach to collective actions. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. Aug. 16, 2004) (Judge Vaughn Walker); *Campbell*, 903 F.3d at 1109–10 (noting the two-step approach favorably). In the first step of this approach, plaintiffs move for preliminary certification and show that the members of the defined collective are "similarly situated" for purposes of providing notice of the action. At this early stage, the standard is "lenient" and district courts simply evaluate whether there is "some factual basis beyond the mere averments in their complaint for the class allegations." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. Apr. 11, 2007) (Judge Marilyn Patel); *see also Campbell*, 903 F.3d at 1109. The second stage occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification. *Leuthold*, 224 F.R.D. 466–67.

Here, plaintiff alleges that each member of the putative collective signed an independent contractor agreement, subjecting them to a uniform company policy of treating them as exempt workers under FLSA. Plaintiff thus argues that "all of Zimmer Biomet's Sales Representatives are similarly situated to himself because they are victims of a common policy that misclassified them as independent contractors when they are in fact employees" (Dkt. No. 53 at 21). This order agrees (in accepting plaintiff's broad allegation as true) that there is sufficient material similarity between plaintiff and the putative collective members with respect to the disposition of their FLSA claim. This order also agrees with defendants, however, that the proposed FLSA class should be narrowed in scope, as discussed below.

**1. SALES REPRESENTATIVES WHO SOLD PRODUCTS FOR NON-PARTY ENTITIES.**

In addressing the scope of the proposed FLSA class, defendants argue that plaintiff failed to show that he is "similarly situated" to putative members who sold products for non-party entities (*i.e.*, other subsidiaries of Zimmer Biomet Holdings) with which he did not contract (Dkt. No. 56 at 11).

Plaintiff's proposed FLSA class includes sales representatives who contracted to sell spine, CMF, thoracic, microfixation, and surgical products, which are sold by non-party entities

4

Zimmer Biomet Spine, Inc. ("ZB Spine"), Zimmer Biomet CMF and Thoracic, LLC ("CMF&T"), MedTech Surgical, Inc. ("MedTech"), and Zimmer Biomet Surgical, Inc. ("ZB Surgical") (Dkt. No. 56 at 1, 11). Defendants thus contend that, even assuming that plaintiff was an employee of the entities he contracted with, he failed to offer evidence that parent company Zimmer Biomet Holdings or the non-parties entities was a "joint employer" of the entities with which he contracted with and, as such, plaintiff is not similarly situated to the individuals selling products manufactured by these non-party entities (Dkt. No. 56 at 11–12). This order agrees.

Two or more employers may be considered "joint employers" for purposes of the FLSA. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). "All joint employers are individually responsible for compliance with the FLSA." *Ibid.*; *see* 29 C.F.R. § 791.2(a). Whether an entity is a "joint employer" under the FLSA is a question of law. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

Our court of appeals applies two tests to determine whether a second entity is a "joint employer" under the FLSA. *See Guifu Li v. A Perfect Day Fran., Inc.*, 281 F.R.D. 373, 400 n.26 (N.D. Cal. 2012) (Judge Lucy Koh) (discussing the two tests). The first is the same "economic reality" test applied to determining whether a worker is an "employee" or an independent contractor. This test applies to "vertical" joint employment relationships where "a company has contracted for workers who are directly employed by an intermediary company." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003). The alternate test applies to "horizontal" joint employment relationships where two entities share operations. *Guifu Li*, 281 F.R.D. at 400 n.26. Under that circumstance, a joint employment relationship exists where (1) "the employers are not 'completely disassociated' with respect to the employment of the individuals," and (2) "one employer is controlled by another or the employers are under common control." *Chao*, 346 F.3d at 917–18 (citing 29 C.F.R. § 791.2(b)(3)).

Plaintiff argues that a joint employment relationship among Zimmer Biomet Holdings and its subsidiary entities exists due to their "close association" (Dkt. No. 59 at 4–5). As such, plaintiff contends that the alternate test for "horizontal" joint employment relationships applies here (*see ibid.*). For example, Donald Ritter, defendants' Rule 30(b)(6) designee for Zimmer Biomet Holdings, testified that Zimmer Biomet Holdings was "the holding company that all the legal entities roll up into" (Dkt. No. 53-1, Exh. 1 at 63:20–22). "Corporate" ultimately calculated the sales commissions for each sales representative (*id.* at 170:4–18). Zimmer Biomet Holdings' 2018 Form 10-K annual report referred to products such as spine and CMF products and related surgical products as "[o]ur products." This, plaintiff contends, shows that Zimmer Biomet Holdings does not treat those products as relating to separate businesses (Dkt. No. 59 at 5). All sales representatives, regardless of whom they directly contracted with, remain subject to the common policies enumerated in the "U.S. Sales Independent Distributor and Direct Territory Compliance Manual," which is implemented by "Zimmer Biomet" (*e.g.*, Dkt. No. 53-1, Exhs. 29–30).

Plaintiff, however, fails to sufficiently show a joint employment relationship at this stage. The alternative "horizontal" joint employment relationship test he seeks to apply is applicable where two entities *share operations*. *Guifu Li*, 281 F.R.D. at 400 n.26. But plaintiff's attempt to reach the other non-party subsidiary entities requires first going through the *parent* Zimmer Biomet Holdings. And, the *vertical* analysis has typically been applied to parent-subsidiary relationships. *See Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. C 15-04456 PJH, 2018 WL 934545, at *4 (N.D. Cal. Feb. 16, 2018) (Judge Phyllis Hamilton) (citing *Radford v. Telekenex, Inc.*, No. C 10-812 RAJ, 2011 WL 3563383, at *3 (W.D. Wash. Aug. 15, 2011) (Judge Richard Jones)). As defendants point out, plaintiff's relationship with the non-party subsidiaries is thus *twice* removed.

Nor has plaintiff shown any evidence that the subsidiary entities he contracted with and those non-party subsidiary entities share operations. The horizontal test typically applies where there is "an established or admitted employment relationship between the employee and each of the employers, and often the employee performs separate work or works separate hours for each

employer." *Id.* at *5 (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2016 WL 284582, at *4 (Jan. 20, 2016)). That "Corporate" allegedly set certain standards and handled certain responsibilities does not necessarily demonstrate that the subsidiaries shared operations. And, defendants have put forth evidence indicating that they are in fact generally distinct entities and that plaintiff does no work for those non-party entities (*see, e.g.*, Dkt. Nos. 57-8 ¶ 8–9; 57-9 ¶ 8–9). As such, sales representatives who work for non-party entities only (*i.e.*, those persons who have not also contracted with the named defendants) will be excluded from the putative collective action.[1]

### 2. SALES REPRESENTATIVES WHO SOLD FOR THIRD-PARTY DISTRIBUTORS.

As discussed above, various subsidiaries of Zimmer Biomet Holdings — including Zimmer US, Biomet Reconstruction, and Biomet Biologics — currently use two different sales models in the United States: (1) direct, and (2) distributor territories (Dkt. No. 57-14 ¶¶ 6, 14). Defendants contend that plaintiff failed to show that he is "similarly situated" to persons who worked for third-party distributors (Dkt. No. 56 at 12).

Here, plaintiff and the three putative FLSA class members who submitted declarations in support of the instant motion contracted with Zimmer US, Biomet Reconstruction, and Biomet Biologics to sell specific orthopedic products in *direct* territories — that is, they were hired directly by those three entities (Dkt. Nos. 53-2–53-5). To the extent that the proposed FLSA class includes those persons who sold products in *distributor* territories — that is, sales representatives who were hired by third-party distributors — defendants argue plaintiff is not similarly situated to those sales representatives.

Plaintiff does not dispute that "to the extent there are differences with" sales representatives "who contract solely with distributors," such persons are excluded, as the proposed collective includes only those like plaintiff, "who contracted with Zimmer Biomet and its subsidiaries" (Dkt. No. 59 at 6). As such, neither party disputes that "a sales representative who works for and is paid by a distributor would not be part of the proposed collective" (*ibid.*).

---

[1] Because this order finds that the collective action will not include sales representatives who sold products of non-parties, it does not reach defendants' argument regarding plaintiff's proposed collective action beyond the one described in his first amended complaint (*see* Dkt. No. 56 at 11).

7

To the extent plaintiff now tries to broaden the scope of the FLSA class again to include all sales representatives in the distributor territories, the attempt is unavailing. Plaintiff argues that "the evidence demonstrates that the agreements sales representatives sign[ed] are the same" by asserting that Ritter (defendants' 30(b)(6) witness) testified that the eight agreements submitted with the instant motion "constitute the universe of agreements between ZB and independent sales representatives" (Dkt. No. 66 at 1 (citing Dkt. No. 53-1, Exh. 1 at 188:5–10)). But those eight agreements only related to the three entities plaintiff contracted with, *i.e.*, Zimmer US, Biomet Reconstruction, and Biomet Biologics (*see* Dkt. No. 53-1, Exh. 1 at 187:25–188:10, 188:21–25; Lohr Decl. ¶¶ 16–23). There is no indication that those eight agreements encompass those agreements with *distributors*. And, there is evidence that at least certain third-party distributors' agreements included additional arbitration provisions (*see, e.g.*, Dkt. Nos. 57-8, Exh. A ¶ 16, Exh. B ¶ 16). Moreover, that sales representatives hired by distributors allegedly functioned in a similar manner to those hired directly by Zimmer Biomet Holdings' subsidiaries is insufficient, by itself, to show that they are similarly situated to plaintiff within the meaning of the FLSA in light of all their differences.

At bottom, plaintiff's proposed FLSA class definition encompasses only those independent contractors who "signed a contract with . . . with Zimmer Biomet, or any of its subsidiaries" directly (Dkt. No. 53 at 3). This definition thus excludes distributor independent contractor sales representatives from the putative collective — whether in connection with Zimmer US, Biomet Reconstruction, and Biomet Biologics, or other non-party entities (*i.e.*, ZB Spine, CMF&T, MedTech, and ZB Surgical) — as they are not similarly situated to plaintiff, who directly contracted with the Zimmer Biomet Holdings entities and sold within a direct territory (*see* Dkt. No. 56 at 9; 57-9 ¶¶ 4–5; 57-8 ¶¶ 5–6; 57-13 ¶ 2; 57-14 ¶ 14).

### 3. NON-CALIFORNIA DIRECT CONTRACTOR SALES REPRESENTATIVES.

Defendants argue that the sales associate agreements signed by plaintiff and putative collective members contained a forum-selection clause designating Indiana as the exclusive

forum for any dispute arising between the parties to the contract.[2]  They point to the clause that stated as follows (Dkt. No. 56 at 13):

> This Agreement (including, but not limited to, the validity, performance, interpretation and enforcement thereof), the relationship established herein, and any dispute between the parties shall be governed by and subject to the internal laws (exclusive of conflicts of law provisions) and decisions of the trial and appellate courts of the State of Indiana.  Furthermore, to the extent any legal proceedings are initiated pursuant to this agreement or otherwise, the exclusive venue for such litigation shall be a court located in Kosciuko County, Indiana or the United States District Court for the Northern District of Indiana, South Bend Division.  Accordingly, Sales Representative irrevocably consents to the personal jurisdiction and exclusive venue in such courts.

Defendants contend that the prior order dated November 6, 2018, denying defendants' motion to transfer after finding the forum-selection clause unenforceable was based on *California's* strong public policy against litigation labor disputes out-of-state, as codified under California Labor Code Section 925 (Dkt. No. 27 at 8), and thus pertains to only those putative collective members residing and working in California.  Approximately 85 percent of the Zimmer US, Biomet Reconstruction, and Biomet Biologics entities' (with whom plaintiff contracted with) direct contractors reside and work in states other than California, according to defendants (Dkt. No. 56 at 14).  Defendants argue that because these forum-selection clauses are presumptively valid and enforceable (inasmuch as they are outside the purview of California Labor Code Section 925), challenges to these persons' forum-selection clauses "would necessitate analysis of multiple different state regulations and public policies" (*ibid.* (citing *Atlantic Marine Const. Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 583 (2013)).  This order disagrees.

As plaintiff points out, defendants do not quote from the sales associate agreement, as they seemingly try to imply.  Rather, defendants slickly quote the forum-selection provision from a different document called "Exhibit C:  Non-Compete, Non-Solicit and Confidentiality Agreement," which is referenced in but merely appended to the sales associate agreement (Dkt. No. 53-1, Exh. 13 at 160).  In contrast to the forum-selection clause found in Exhibit C, the sales associate agreement itself stated in relevant part (*id.* at 153 (¶ 28) (emphasis added)):

---

[2] Sales representatives can negotiate for another forum, such as Texas, as the exclusive forum (*see, e.g.*, Dkt. No. 53-4 ¶ 28).

9

> Governing Law and Venue. This Agreement (including, but not limited to, the validity, performance, interpretation and enforcement thereof), the relationship established hereunder, and any dispute between the parties shall be governed by and subject to the internal laws (exclusive of conflicts of law provisions) and decisions of the trial and appellate courts of the State of Indiana. *Furthermore, to the extent any legal proceedings are initiated pursuant to the restrictive covenants set forth above or otherwise*, the exclusive venue for such litigation shall be a court located in Kosciusko County, Indiana or the United States District Court for the Northern District of Indiana, South Bend Division. Accordingly, Representative, including Principal Owner(s), individually, irrevocably consents to the personal jurisdiction and exclusive venue in such courts.

Plaintiff thus argues that the forum-selection clause in the sales associate agreement applied only to litigation involving the *restrictive covenants* set forth in the sales associate agreement. The restrictive covenants referenced therein, found in paragraph seven of the sales associate agreement, is related to non-compete and non-solicit covenants (*id*. at 142 (¶ 7)). The restrictive covenant provision in the sales associate agreement further stated in relevant part (*id*. at 144 ¶ 7(g) (emphasis added)):

> Restrictive Covenants for Representative's Principal Owners, Employees, and Representatives. Representative represents and warrants that each Principal Owner who has not executed this Agreement, and each officer, sales associate, employee, and contractor of Representative will execute the agreement *attached hereto as Exhibit C* prior to retaining such person.

Exhibit C (referenced in the sales associate agreement's restrictive covenant provision), in turn, contains the actual forum-selection clause defendants quote in their opposition (*see* Dkt. No. 53-1, Exh. 13 at 162 (¶ 13)). But Exhibit C does not apply to plaintiff or other sales representatives, according to plaintiffs. Rather, Exhibit C pertains to *helpers* that sales representatives themselves might retain, with the result of binding those helpers to the same restrictive covenants. Plaintiff thus contends that defendants attempt to create a broader forum-selection clause than what actually exists (Dkt. No. 59 at 14). As such, plaintiff argues that since the instant action relates to defendants' compliance with the FLSA — and does not concern restrictive covenants — the forum-selection clause does not apply here and thus gives no basis for narrowing the collective action.

Defendants, of course, now assert in supplemental briefing that the relevant forum-selection clause in the sales associate agreement itself was clearly intended to apply to all legal proceedings (including those involving FLSA claims) between the parties to the agreement

10

(Dkt. No. 68 at 1). They point to the phrase "or otherwise" (as prompted by the Court during oral argument) in the relevant forum-selection clause and assert that this phrase referred to *any* legal proceedings initiated between the parties, including those unrelated to restrictive covenants.[3]

This order finds both sides' interpretation plausible. That is, the phrase "or otherwise" in the relevant forum-selection clause could be reasonably understood as either applying to claims involving restrictive covenants only or broadly encompassing all claims.

Specifically, defendants contend as follows: the forum-selection clause language in paragraph 28 of the sales associate agreement ("legal proceedings . . . initiated pursuant to the restrictive covenants set forth above") related to paragraph 7(a)(ii) of the agreement, which was the only section addressing legal proceedings in connection with restrictive covenants (Dkt. No. 68 at 1–2). And, following the phrase "or otherwise" in paragraph 28 ("legal proceedings . . . initiated pursuant to the restrictive covenants set forth above *or otherwise*"), according to defendants, broadly "refer[red] to the opposite of the word[s] that came before it," *i.e.*, "pursuant to restrictive covenants" (*id*. at 2). Defendants further argue that " 'as set forth above' is a dependent clause and reads together with the phrase 'restrictive covenants,' " and thus assert that "the sentence reads with equal grammatical power, 'to the extent any legal proceedings *are initiated* pursuant to the restrictive covenants set forth above or [*initiated*] otherwise' " (*ibid*.).

Defendants' reading, however, is not the only plausible reading. As plaintiff argues, the phrase "or otherwise" may equally refer to the location of the relevant restrictive covenants (as opposed to subject matter). Moreover, plaintiff further points out that the relatively narrow scope of the forum-selection provision ("to the extent any legal proceedings are initiated pursuant to the restrictive covenants set forth above or otherwise, the exclusive venue for such litigation shall be a court located in Kosciusko County, Indiana . . . .") is illustrated by its

---

[3] The phrase at issue is found in the following context: "Furthermore, to the extent any legal proceedings are initiated pursuant to the restrictive covenants set forth above *or otherwise*, the exclusive venue for such litigation shall be a court located in Kosciusko County, Indiana or the United States District Court for the Northern District of Indiana, South Bend Division" (Dkt. No. 53-1, Exh. 13 at 153 (¶ 28) (emphasis added)).

11

contrast to the broadly worded choice-of-law provision within the same paragraph ("This Agreement . . ., the relationship established hereunder, and any dispute between the parties shall be governed by and subject to the internal laws (exclusive of conflict of law provisions) and decisions of the trial and appellate courts of the State of Indiana.") (Dkt. No. 53-1, Exh. 13 at 153 (¶ 28)).

Contrary to defendants' assertion, plaintiff's interpretation does not necessarily "eviscerate" the plain meaning of the forum-selection clause. The phrase "or otherwise" was immediately preceded by "set forth above," *not* the language regarding subject matter (*i.e.*, restrictive covenants). And, defendants cite no authority for the assertion that the parties would have used the word "elsewhere" rather than "or otherwise" in order to denote a different location for the relevant restrictive covenants. Rather, either wording would have seemingly sufficed under these circumstances. As such, this order finds either side's interpretation potentially valid (and equally consistent with *Gleave v. Graham*, 954 F. Supp. 599, 609 (W.D.N.Y. 1997), *aff'd*, 152 F.3d 918 (2d Cir. 1998)). Nor is this order persuaded that the mere use of the definite article "the" before the phrase "restrictive covenants" in this context compels the conclusion that the *only* relevant restrictive covenants were contained in the sales associate agreement.

Defendants further contend that the integration language in the sales associate agreement clearly shows that the agreement contained the only restrictive covenant language applicable to the parties of that agreement (Dkt. No. 68 at 3). This order disagrees. The integration language defendants cite to stated as follows (Dkt. No. 53-1, Exh. 13 at 152 (¶ 21) (emphasis added)):

> This Agreement, which includes all the terms and conditions hereunder, *and all exhibits, manuals, policies, riders, and/or ancillary agreements attached hereto or incorporated herein* is intended to be the exclusive and final statement of the terms and understandings relative to the subject matter hereof, merging herein and amending, restating, and superseding all prior negotiations and prior written or oral agreements between [the parties] as to any part of the subject matter of this Agreement and the relationship. In the event there is a conflict between this Agreement and any materials incorporated hereto or herein by reference, the terms of this Agreement shall control.

Thus the integration clause itself contemplated that other documents outside the agreement (but attached to or incorporated by reference) — documents that may have included other relevant restrictive covenants — were also controlling.

Defendants next point out that the sentence immediately following the forum-selection language at issue broadly stated as follows: "Accordingly, Representative . . . irrevocably consents to the personal jurisdiction and exclusive venue in such courts" (*id*. at 153 (¶ 28)). This sentence, defendants contend, did not contain language limiting consent to exclusive venue in Indiana to only legal proceedings involving restrictive covenants (Dkt. No. 68 at 3–4). Plaintiff's interpretation would thus be "absurd," according to defendants, as it would mean a partial consent to a non-exclusive venue. Defendants further contend the alleged absurdity of plaintiff's interpretation by pointing to the fact that a direct sales representative changed the designated forum to Tarrant County, Texas in his agreement as the exclusive forum (*ibid*.; Dkt. No. 53-4, Exh. A ¶ 28). These arguments, however, fail to sufficiently show that defendants' interpretation is the unambiguously correct interpretation. This order, however, does not find that allegedly inefficient or narrow forum-selection clauses are necessarily rendered implausible.

Thus at bottom, this order finds that the scope of the forum-selection clause is ambiguous. There is a plausible reading of the relevant forum-selection clause that would bar the FLSA claim from compelled litigation in Indiana. As such, the clause will be construed against the drafter of the agreement. *See Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 247 (2016) ("[A]mbiguities in written agreements are to be construed against their drafters.").[4] Accordingly, this order finds that the forum-selection clause related to restrictive covenants only, and plaintiff may therefore represent the FLSA claim nationwide for other sales representatives who are similarly situated.[5]

---

[4] Defendants offer no authority for their suggestion that broad, general clauses regarding the parties' acknowledgment of the terms of the agreement render the terms themselves unambiguous (*see* Dkt. No. 68 at 4).

[5] Paragraph 28 included a jury waiver for "any and all controversies arising among the parties under the agreement" (Dkt. No. 53-1 ¶ 28). Defendants argue that the putative collective action cannot include sales representatives outside of California, Georgia, and North Carolina because those states prohibit jury waivers and

13

### 4. "SIMILARLY SITUATED" TO OTHER DIRECT INDEPENDENT CONTRACTOR SALES REPRESENTATIVES.

The question of whether plaintiff is "similarly situated" to other sales representatives in the proposed FLSA class implicates two dispositive issues: (1) whether sales representatives are employees, and (2) if so, whether they are exempt from overtime wages (Dkt. No. 56 at 16). Defendants assert that answering the second question of whether an employee is subject to an overtime exemption requires fact-intensive inquiries into the employee's primary job duties (*ibid.*). They raise various issues such as differing relationships between the sales representatives and the Zimmer Biomet entities plaintiff contracted with (*e.g.*, control over daily schedule, exclusively selling for Zimmer Biomet, submitting reports, attending trainings) and the sales representatives' differing activities (*id.* at 18–22).

Plaintiff, however, has advanced more than mere generalized allegations and shown sufficient similarity with other sales representatives such that, at least as narrowed above, the collective should proceed, subject to possible decertification in the event that the nightmare of litigation horrors truly materialize.

Defendants' reliance on *Trinh v. JP Morgan Chase & Co.*, No C 07-1666 W(WMC), 2008 WL 1860161, at *3–4 (S.D. Cal. Apr. 22, 2008) (Judge Thomas Whelan), is unavailing. There, the plaintiff offered only boilerplate and legal conclusions without evidentiary support. Here, in contrast, plaintiff offers multiple declarations of himself and three other sales representatives evidencing his allegations that the putative collective class had, *inter alia*, similar primary job duties and employment circumstances with respect to the Zimmer Biomet Holdings subsidiary entities, were subject to the same compensation scheme, and signed similar sales associate agreements (*see* Dkt. Nos. 53-2–53-5). That defendants have submitted their own declarations in an attempt to rebut plaintiff's evidence again amounts to a "he-said-she-said situation" best reserved for the decertification stage. *Escobar v. Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008);

---

as such, sales representatives from other states whose jury waivers remain effective are not similarly situated to plaintiff (Dkt. No. 68 at 4). In support, defendants summarily conclude that their inclusion "would be inefficient and their jury waiver would leave to conflicting litigation results" (*ibid.*). Defendants, however, fail to elaborate on *how* litigation results would consequently conflict due to their inclusion.

14

*Flores v. Velocity Express, Inc.*, No. 12-CV-05790-JST, 2013 WL 2468362, at *7 (N.D. Cal. June 7, 2013) (Judge Jon Tigar) ("[T]he question at this stage is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing."). This order thus finds that plaintiff's showing is sufficient at this early stage in the proceedings to support conditional certification, narrowed as stated above. Certification may be revisited at the second stage as to the proper scope of the FLSA class.

### 5. PLAINTIFF'S PROPOSED NOTICE.

Defendants also take issue with plaintiff's proposed notice, arguing that it is overbroad and misleading. They thus request that if conditional certification is granted, they be given an opportunity to meet and confer on the proposed notice and then submit any specific disputes to the Court (Dkt. No. 56 at 23). The request is **GRANTED**.

### 6. ADMINISTRATIVE MOTION TO FILE UNDER SEAL.

Plaintiff seeks to file under seal in connection with the motion for conditional certification sales numbers and/or revenue for certain products sold by defendants found in Exhibit 17 (Dkt. No. 55).

In this circuit, courts start with a "strong presumption in favor of access" when deciding whether to seal records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related" to the merits bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016). A particularized showing of "good cause" under FRCP 26(c), however, suffices to warrant sealing of judicial records in connection with a non-dispositive motion. *Kamakana*, 447 F.3d at 1179–80. Good cause requires a "particularized showing" that "specific prejudice or harm will result" if the documents are made public. *Id*. at 1180; *Foltz*, 331 F.3d at 1130. Furthermore, Civil Local Rule 79-5(b) requires administrative motions to file under seal to "be narrowly tailored to seek sealing only of sealable material." Because the underlying motion for conditional certification

is more than tangentially related to the merits, this order applies the compelling reasons standard.

Defendants filed a supporting declaration stating that they only seek to seal plaintiff's "Gross Sales, Net Sales, pre-Pricing Commission % and Post-Pricing Commission %" (Dkt. No. 58 ¶ 6). They further state that maintaining confidentiality "is important to Defendants' competitive advantage in that competitors could use the sales revenue information from this specific region to determine whether to devote additional resources to taking this revenue away from Defendants" (*ibid*.). Moreover, because those numbers "reflect commission rates," defendants state that disclosure could pose competitive harm in terms of potential use by competitors in negotiating with plaintiff or other sales representatives (*id*. ¶ 7). Because the information at issue has no bearing on plaintiff's FLSA claim and plaintiff's joint employer theory does not in any way rely on these specific numbers (and thus the public has no real interest in accessing said information), this order finds compelling reasons to seal. The motion is therefore **GRANTED**.

## CONCLUSION

To the foregoing extent, plaintiff's motion for conditional certification and administrative motion to file under seal are **GRANTED**. The parties shall **MEET AND CONFER** regarding the issue of notice and jointly submit a proposed notice by **JULY 10 AT NOON**.

**IT IS SO ORDERED.**

Dated: July 2, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE