# Morgan Lewis

**Eric Meckley**
Partner
+1.415.442.1013
eric.meckley@morganlewis.com

September 3, 2019

The Honorable William H. Alsup
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom 8 – 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

RE:   *James Karl v. Zimmer Biomet Holdings, Inc., et al.*, Case No. C 18-04176 WHA

In accord with the Court's Order dated August 27, 2019 (ECF # 82), Defendants timely file this response to Plaintiff's discovery dispute letter ("Letter").[1]

## I.   RFP Nos. 1-2: Contact Information[2]

Plaintiff James Karl is not entitled to contact information for putative class members because has not demonstrated either a *prima facie* showing that Rule 23 class-action requirements may be satisfied or that the sought-after discovery is likely to substantiate the class allegations.  As the Court is aware, Plaintiff bears the burden to show "that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985) (holding that "a trial court's refusal to allow class discovery is not an abuse of discretion" absent a "*prima facie* showing of the class action requirements of [Rule 23]").  In *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977), the Ninth Circuit held that "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites ... the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger*, 564 F.2d 1304, 1313.

Pursuant to Rule 23, a member of a class may sue on behalf of all members only if: "(1) the class is so *numerous* that joinder of all members is impracticable; (2) there are questions of law or fact *common* to the class; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class; and (4) the representative parties will *fairly and adequately* protect the interests of the class." Fed.R.Civ.P. 23(a) (emphasis added).

In arguing that the Court's ruling as to conditional certification under the FLSA shows he has made a *prima facie* case entitling him to the class contact information, Plaintiff's Letter erroneously

---

[1] At the outset, Defendants note Plaintiff's submission of 201 pages of attachments violates Paragraph 34 of this Court's standing order, which limits attachments to no more than 12 pages.

[2] Plaintiff's Letter seeks contact information for all putative class members from October 25, 2014 onward through these RFPs.  This contact information is properly sought via an interrogatory, however, Plaintiff never served any interrogatories on Defendants.

**Morgan, Lewis & Bockius LLP**

One Market
Spear Street Tower
San Francisco, CA  94105-1596         +1.415.442.1000
United States                                         +1.415.442.1001

DB2/ 37192098.1

The Honarable William H. Alsup
September 3, 2019
Page 2

conflates the "lenient first stage" standard for conditional certification with the far more rigorous class certification standard under Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Indeed, courts frequently de-certify classes under Rule 23 after conditionally certifying a collective under the FLSA. *Gilbert v. Citigroup, Inc* 2009 WL 10692463, at *9 ("it may turn out that the Rule 23 class is not proper, even though the FLSA class has been conditionally certified since the threshold for certification there was very low.")

In addition, this Court only *partially* granted Plaintiff's Motion for FLSA Conditional Certification. Plaintiff's Letter overgeneralizes and incorrectly asserts that "this Court has already determined that Mr. Karl and other California sales representatives are similarly situated under the FLSA[.]" The truth is that this Court expressly found that certain California sales representatives are *not* similarly situated to Mr. Karl, because they contracted with independent distributors and unnamed, third-party subsidiaries of Zimmer Biomet Holdings, Inc. ECF 70, at 4:22-8:23. This is a significant distinction because Plaintiff has not outwardly limited the discovery requests at issue to conditionally certified individuals. Thus, any leveraging of conditional certification should account for the persons whom the Court previously excluded under a far more lenient standard.

Plaintiff's Letter does not discuss the requirements for class certification, much less analyze how or why putative class member contact information is likely to substantiate his claims. Instead, Plaintiff merely relies on his pleadings, contending that because his Complaint recites the elements of Rule 23, he satisfies "the lenient standard for discovery of class contact information." ECF 80, p. 2. This argument runs counter to the Supreme Court's warning against class action treatment based on only a "competently crafted class complaint" (*Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 349 (2011)). The Northern District of California similarly has found that a "plaintiff would not be permitted a general inquisition into defendant's files merely on the strength of having filed a putative class complaint." *Zautinsky v. Univ. of Cal.*, 96 N.D. Cal. 622 (1983).

Plaintiff's Letter does not articulate *why* he needs the putative class member contact information or *how* he intends to use it. Plaintiff's insistence that he should receive contact information for *all* putative class members begs the obvious question: If questions of law and fact are supposedly *common* and Mr. Karl's claims are supposedly *typical*, then why must Plaintiff receive information *all* class members, as opposed to some more limit sample to allow him an opportunity to attempt to show that Rule 23's requirements have been met. Indeed, if Plaintiff needs every person's contact information in order to establish class status, then he clearly has *not* shown a *prima facie* case and should not receive such information under the reasoning of *Mantolete* and *Donninger*.

Defendants recognize that federal courts generally balance privacy and other concerns with disclosure against Plaintiff's need to determine typicality. Therefore, in an effort to resolve the dispute and reach a compromise, Defendants offered to provide a random sampling of contact information for 20% of the California direct sales representatives. Plaintiff declined the offer. During the Parties' in-person meet and confer on July 31, 2019, Defendants offered to discuss providing an even greater percentage, but Plaintiff refused to discuss any percentage. Here, a 25% sample would yield approximately fifty-five (55) sales representatives (because there are approx. 220 putative class members). If Plaintiff's class claims are as common and typical as he has contends, then he does not need to contact all of the putative class members to make a *prima facie* showing. Defendants' proposal is consistent with federal court decisions requiring disclosure of only a sampling of contact information:

The Honarable William H. Alsup
September 3, 2019
Page 3

- *Maes v. JP Morgan Chase* (S.D. Cal., Mar. 5, 2013, No. 12CV782-JAH MDD) 2013 WL 811839, at *2 (plaintiff's known contact information for 10% of an 83-member putative class was "at least as much, if not more, contact information than would have been authorized by the Court.")
- *Kaminske v. JP Morgan Chase Bank N.A.* (C.D. Cal., May 21, 2010, No. SACV 09-00918 JVS) 2010 WL 5782995, at *5 (ordering 10% sample of approximately 1,700 putative class members).
- *Quintana v. Claire's Boutiques, Inc.*, Case No. 13-cv-368-PSG, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) (permitting 20% sample of a putative class of 1,100);
- *Sansone v. Charter Communications, Inc.* (S.D. Cal., Feb. 6, 2019, No. 17-CV-01880-WQH-JLB) 2019 WL 460728, at *9 ("Defendants shall randomly produce the names and last known contact information for 20% of the estimated 2,184 class members.");
- *Martin v. Sysco Corporation* (E.D. Cal., Oct. 10, 2017, No. 116CV00990DADSAB) 2017 WL 4517819, at *4. ("The Court will require Defendant to provide a sampling of contact information for 20 percent of non-exempt truck workers, industrial truck workers, industrial truck drivers, industrial vehicle drivers, and industrial workers that fall within the putative class at each of Defendant's California facilities.")
- *Ortiz v. Amazon.com LLC* (N.D. Cal., May 31, 2018, No. 17CV03820JSWMEJ) 2018 WL 2451816, at *2 ("Golden State shall produce, pursuant to its proposed compromise, a sample list of 20% of Level 4 Shift Managers at its California Delivery Stations from June 2, 2013 to the present.");

Plaintiff separately contends that because he has brought a claim under the Private Attorneys General Act ("PAGA"), he "stands in the shoes" of the Labor and Workforce Development Agency ("LWDA"), and thus has the power to inspect employee records. While the PAGA certainly permits Plaintiff to bring a lawsuit on the State's behalf, neither the statute nor any case law vests Plaintiff with the State's investigative or other powers. For example, PAGA does not authorize employees to schedule hearings and call witnesses (as the State can do), nor does it authorize employees to show up at an employer's doorstep and demand inspection/production of records (as the State can do). The PAGA's authorization is limited to what is written in the statute (i.e., employees can sue their employers), however, it does not convey to employees the State's power to inspect records.

Plaintiff cites *Williams v. Sup. Ct.*, 3 Cal. 5th 531 (2017), for the proposition that as a PAGA representative, "state policy favors access to contact information for fellow employees alleged to have been subjected to Labor Code violations." Here, however, *Williams* is not persuasive. First, as a state court case interpreting a state procedural statute, *Williams* is simply not binding on this Court. Plaintiff cites *Goro v. Flowers Foods, Inc.* 2018 WL 3956018 (S.D. Cal., Aug. 17, 2018, No. 17-CV-02580-JLS-JLB) to argue that *Williams* is "persuasive" in federal court. However, *Goro* actually held that "*Williams* did not hold that the contact information for fellow employees in a PAGA action is per se relevant, without regard for the rules governing the scope of discovery. To the contrary, the California Supreme Court held that the same rules of civil procedure that govern discovery in any civil action also govern PAGA actions. As a result, the Court held that PAGA claims are not subject to a PAGA-specific heightened proof standard at the threshold, before discovery. *Goro*, at *6 (internal citations omitted). The *Goro* court eventually permitted defendants to disclose contact information to the plaintiff, *in response to an interrogatory*.[3] Second, a critical

---

[3] Plaintiff also cites *Barreras v. Michaels Stores, Inc.* 2015 WL 1886337 (N.D. Cal., Apr. 24, 2015, No. C 12-4474 (PJH), in support of his argument. However, as in *Williams* and unlike Mr. Karl

The Honarable William H. Alsup
September 3, 2019
Page 4

factor in overcoming the defendant's privacy objections in *Williams* was the persons' reasonable expectations regarding the privacy of their contact information. The *Williams* court found that "fellow employees might reasonably expect, and even hope, that their names and addresses would be given to a plaintiff seeking to vindicate their rights." *Id.* at 554 (internal citations omitted). Not true here, because the putative class members were independent contractor sales representatives who, for the most part, operated as independent S corporations and LLCs, and did not give Defendants their contact information as "fellow employees." Third, in *Williams*, the plaintiff specifically requested the names and addresses of potentially aggrieved employees through an interrogatory, *not* a request for production. Here, Plaintiff has not served any interrogatories; rather, he has requested contact information for through a compound request seeking *no less than 20 categories of documents*:

> **REQUEST NO. 1:**
> Electronic data showing, for all Class or Collective Members, the following information applicable at all times during the relevant period:
> - full name, job position information, job title, job code, job level, salary grade, or other applicable compensation terms and conditions
> - organizational location within Defendant, job location, and employee number, and
> - dates of all changes to any of these variables;
> - all last known contact information, including current and former home address,
> - telephone numbers, and email addresses; and
> - information reflecting each individual's location within Defendant's organization, including team, department, group, division, or organizational unit.

As *Williams* explained: "a party may use interrogatories to request the identity and location of those with knowledge of discoverable matters." The court did *not* hold that a party could request contact information through a request for production, which inherently demands an entirely different form of response. *Id.* at 541 (citing Code Civ. Proc. § 2030.010). As opposed to the interrogatory at issue in *Williams*, the breadth and scope of Plaintiff's RFP No. 1 makes it *harassing, overly broad, unduly burdensome and disproportional to the needs of discovery*. The disproportionality of Plaintiff's RFPs further illuminates the fact that *Williams* did not consider, as this Court must, the 2015 proportionality amendments to FRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*[.]")

In sum, Plaintiff is not entitled to putative class members' contact information because he has not shown that it will help establish a *prima facie* case for Rule 23 class certification; in fact, his Letter fails even to address the *prima facie* requirements for class certification. The Court's partial conditional certification under the FLSA does not equate to a *prima facie* showing of class certification under Rule 23, and *Williams* does not control a request for production in federal court. The Court should deny Plaintiff's motion or, in the alternative, order Defendants to provide a list,

---

here, the *Barreras* plaintiff requested putative class members' contact information through an interrogatory. *Id.* at *2.

DB2/ 37192098.1

The Honarable William H. Alsup
September 3, 2019
Page 5

akin to an interrogatory response, of the name, address and telephone number of a 25% random sample of putative class members in California.

## II.     RFP Nos. 3-6: Sales Associate Agreements and Organizational Charts

"Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1195 (2013).

Here, Plaintiff contends that he is entitled to organizational charts and hundreds of individual person's independent contractor agreements, purportedly so he can rebut Defendants' 6th and 7th affirmative defenses (Exempt Status and Outside Salesperson Exemption) (ECF 80, p. 2). However, (1) individual agreements constitute "merits" discovery that is unnecessary and disproportionate prior to class certification, and (2) Defendants already have produced all versions of these template contractor agreements in effect during the statute of limitations period and there is no evidence of variance in the basic terms.  In short, Plaintiff obtains nothing from production of hundreds of essentially identical agreements other than to harass and unduly burden Defendants.

Plaintiff argues that one sales representative in Texas changed the forum selection provision in his agreement and thus, Plaintiff needs to see whether other sales representatives in California did so. However, his Letter does not explain why that would matter in the case.  The Court already ruled that the changes made by the Texas representative were entirely irrelevant when ruling on FLSA conditional certification. Plaintiff already has all versions of the independent contractor agreements that Defendants used -- he doesn't need signed versions of these documents.

Plaintiff also requests "organizational charts and lists of workers *in each state*." ECF 80, p. 3 (emphasis added).  This Request makes no sense and is irrelevant and overbroad, harassing and disproportional because Plaintiff's Rule 23 putative class is limited to persons in California. ECF 41, ¶¶ 43-50.

## III.    RFP Nos. 15-16: Timekeeping Records and Policies; RFP No. 19: Calendars

Plaintiff argues that Defendants should produce (1) records from the Surgery Management System ("SMS") and (2) work calendars for hundreds of putative class members because the records supposedly will reflect the amount of time each sales representative worked.  ECF 80, p. 3.

First, Defendants already have produced Plaintiff's SMS records. Yet, Plaintiff testified that SMS records did *not* show his amount of time worked because he did not enter cases in SMS at all and/or different hospitals required him to arrive at different times before a surgery.  Karl Depo. 154:18-155:3 ("if [the account] own[s] the product, we don't need to put it in SMS because there's no tracking. *We don't need to track it*. We don't need a restock from it. *All we need is to go to the case and cover the case*."); Karl Depo. 222:21-24 ("I try to get there 45 minutes before the case, unless it's Sutter; then we have to be an hour before the case.)  Even if the SMS record had some relation to time worked, the SMS record for each individual sales representative is unique to the surgeries that the specific representative entered in the system and/or covered.  Plaintiff has not shown what commonality, typicality, or other Rule 23 requirement would be reflected or established by each individual sales representative's SMS records.  Thus, SMS records for hundreds of putative class members have simply no bearing on class certification and instead appear entirely related to potential *merits discovery* and, even in that regard, have little relevance at all, according

DB2/ 37192098.1

The Honarable William H. Alsup
September 3, 2019
Page 6

to Plaintiff's testimony. Given the limited to no relevance of these records, requiring Defendants to produce thousands of such SMS records would be entirely disproportionate, overly broad, unduly burdensome and harassing.

With respect to "work calendars," Defendants cannot produce individual sales representatives' calendars because Defendants do not control, host or otherwise have access to these documents.

Sincerely,

/s/ Eric Meckley


Eric Meckley

DB2/ 37192098.1