1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Jason P. Brown, Bar No. 266472
3  jason.brown@morganlewis.com
   Joseph R. Lewis, Bar No. 316770
4  joseph.lewis@morganlewis.com
   One Market
5  Spear Street Tower
   San Francisco, CA  94105-1596
6  Tel:    +1.415.442.1000
   Fax:    +1.415.442.1001
7
   Attorneys for Defendants
8  ZIMMER BIOMET HOLDINGS, INC.; ZIMMER US,
   INC.; BIOMET U.S. RECONSTRUCTION, LLC;
9  BIOMET BIOLOGICS, LLC; and BIOMET, INC.

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| 15 | JAMES KARL, on behalf of himself, and on behalf of a class of those similarly situated, | Case No. 18-cv-04176-WHA |
|---|---|---|
| 16 | | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| 17 | Plaintiff, | |
| | vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |
| 18 | ZIMMER BIOMET HOLDINGS, INC., a | |
| 19 | Delaware corporation; ZIMMER US, INC., a Delaware Corporation; BIOMET U.S. | Date:       October 10, 2019 |
| 20 | RECONSTRUCTION, LLC, an Indiana limited liability company; BIOMET BIOLOGICS, | Time:       8:00 A.M. |
| 21 | LLC, an Indiana limited liability company; and BIOMET, INC., an Indiana Corporation, | Courtroom:  12 |
| 22 | | Judge:      Hon. William H. Alsup |
| 23 | Defendants. | |

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

1   **PLEASE TAKE NOTICE** that on October 10, 2019 at 8:00 AM, or as soon thereafter as

2   the matter may be heard in Courtroom 12 of the above-entitled court, located at 450 Golden Gate

3   Avenue, San Francisco, CA 94102, Defendants ZIMMER BIOMET HOLDINGS, INC.;

4   ZIMMER US, INC.; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET BIOLOGICS, LLC;

5   and BIOMET, INC. (collectively, "Defendants") will move the Court for Summary Judgment

6   pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendants move as follows:

7       1)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

8   First Claim for unpaid overtime under the Fair Labor Standards Act because, based upon the

9   undisputed evidence, Plaintiff cannot prove that he is an employee under Federal law.

10      2)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

11  First Claim for unpaid overtime under the Fair Labor Standards Act because, even if Plaintiff

12  could prove that he is an employee under Federal law, the undisputed evidence demonstrates that

13  Plaintiff is an exempt outside salesperson under Federal law.

14      3)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

15  Second Claim for unpaid overtime under California law because, even if Plaintiff could prove that

16  he is an employee under California law, the undisputed evidence demonstrates that Plaintiff is an

17  exempt outside salesperson under California law.

18      4)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

19  Third Claim for failure to provide meal periods under California law because, even if Plaintiff

20  could prove that he is an employee under California law, the undisputed evidence demonstrates

21  that Plaintiff was provided with the opportunity to take meal periods.

22      5)       For summary judgment in favor of Defendants, and each of them, on Plaintiff's

23  Fourth Claim for failure to provide rest periods under California because, even if Plaintiff could

24  prove that he is an employee under California law, the undisputed evidence demonstrates that

25  Plaintiff was provided with the opportunity to take rest periods.

26      6)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

27  Sixth Claim for failure to reimburse business expenses under California law because, based upon

28  the undisputed evidence, Plaintiff cannot prove that he is an employee under the California Labor

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

2

NOTICE OF MOTION & MOTION
18-CV-04176-WHA

1    Code and thus he is not entitled to expense reimbursements.

2        7)      For summary judgment in favor of Defendants, and each of them, on Plaintiff's

3    Seventh Claim for Unfair Business Practices to the extent such claim is derivative of the

4    foregoing claims.

5        8)      For summary judgment in favor of Defendants ZIMMER BIOMET HOLDINGS,

6    INC. and BIOMET, INC. as to all claims plead in Plaintiff's First Amended Complaint because

7    the undisputed evidence demonstrates that neither ZIMMER BIOMET HOLDINGS, INC. nor

8    BIOMET, INC. employed Plaintiff, jointly or otherwise, and neither entity had privity of contract

9    with Plaintiff at any time.

10       This Motion is supported by the accompanying Memorandum of Points and Authorities,

11   the Declaration of Eric Meckley and all exhibits attached thereto, including the transcript from the

12   Deposition of James Karl, the Declaration of Donald Ritter, all documents filed in this matter, all

13   pleadings and the Court's record on file herein, and all other such documentary and/or oral

14   evidence or argument before the Court during any hearing on this Motion or of which this Court

15   make properly take notice.

16

17   Dated:  September 5, 2019                        MORGAN, LEWIS & BOCKIUS LLP

18

19                                          By      /s/ Eric Meckley
                                               Eric Meckley
20                                             Jason P. Brown
                                               Joseph Lewis

21
                                               Attorneys for Defendants
22                                             ZIMMER BIOMET HOLDINGS, INC.;
                                               ZIMMER US, INC.; BIOMET U.S.
23                                             RECONSTRUCTION, LLC; BIOMET
                                               BIOLOGICS, LLC; BIOMET, INC.

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

NOTICE OF MOTION & MOTION
18-CV-04176-WHA

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF RELEVANT FACTS ................................................................. 2

    A.    The Named Defendant Entities ................................................................ 2

    B.    Plaintiff's Engagement as an Independent Contractor with Zimmer Biomet ........ 2

    C.    Plaintiff Operated as a Business Entity, Not as an Individual ............................... 3

    D.    Plaintiff's Primary Duty Was Selling Zimmer Biomet Products .......................... 3

    E.    Plaintiff Spent the Majority of His Time "Outside" in the Field Selling Zimmer Biomet Products .......................................................................... 5

    F.    Plaintiff Had Independent Discretion and Control over His Daily Activities ........ 5

    G.    Edge Medical Paid All Business Expenses, and Zimmer Biomet Did Not Provide Any Tools For Plaintiff to Perform His Sale Representative Services. ........................................................................................ 7

III.   LEGAL ARGUMENT ........................................................................................ 7

    A.    Summary Judgment Standard. ................................................................. 7

    B.    Plaintiff's First Claim Fails Because Plaintiff Cannot Prove That He Was An Employee Under the FLSA's "Economic Reality" Test. ................................. 8

        1.    Zimmer Biomet Did Not Control the Manner In Which Plaintiff Performed His Services .............................................................. 9

        2.    Plaintiff's Opportunity for Profit or Loss Depended On His Managerial Skill ...................................................................... 12

        3.    Plaintiff Invested in Equipment to Perform His Services and He Had the Ability to, and Did, Retain Others to Help ................................. 13

        4.    The Services He Rendered Required Special Skills and Knowledge ....... 13

        5.    The Degree of Permanence in Plaintiff and Zimmer Biomet's Relationship. ......................................................................... 14

        6.    Whether Plaintiff's Services Are an Integral Part of Zimmer Biomet's Business. .................................................................. 15

    C.    Plaintiff's First Claim Fails for the Separate and Independent Reason That He Qualified as an Exempt Outside Salesperson Under the FLSA. ..................... 15

    D.    Plaintiff's Second Claim Fails Because He Qualified as an Exempt Outside Salesperson Under California Law. ......................................................... 17

    E.    Plaintiff's Third and Fourth Claims Fail Because He Was Provided With the Opportunity to Take Meal Periods and Rest Breaks. ..................................... 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

i

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

**TABLE OF CONTENTS**
(continued)

Page

F.  Plaintiff's Sixth Cause of Action Fails Because He Cannot Prove He Is An Employee Entitled to Expense Reimbursements Under the California Labor Code. ........................ 20

   1.  The Borello Test Applies to Plaintiff's Claim for Failure to Reimburse Business Expenses Under California Labor Code Section 2802. ........................ 20

   2.  Plaintiff Qualifies as an independent contractor under Borello. ............... 21

G.  Plaintiff's Seventh Claims Under the UCL Fails to the Extent It Is Derivative of the First, Second, Third, Fourth, and Sixth Claims. ........................ 22

H.  Judgment on All Claims Should Be Entered In Favor of Defendants ZB Holdings and Biomet Inc. Because These Entities Did Not Jointly Employ Plaintiff. ........................ 23

   1.  ZB Holdings Is Not Plaintiff's Joint Employer and Had No Relationship to Plaintiff ........................ 23

   2.  Biomet, Inc. Is Not Plaintiff's Joint Employer and Had No Relationship to Plaintiff. ........................ 24

IV.  CONCLUSION ........................ 25

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

ii

MPA ISO MOTION FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ..................................................................................................................7

5

6

*Arnold v. Mut. of Omaha Ins. Co.*
    135 Cal. Rptr. 3d 213 (Cal. Ct. App. 2011) ............................................................................11

7

*Ayala v. Antelope Valley Newspapers, Inc.*
    59 Cal. 4th 522 (2014) ...........................................................................................................20

8

9

*Bartels v. Birmingham*
    332 U.S. 126 (1947) ..................................................................................................................9

10

*Benshoff v. City of Virginia Beach*
    180 F.3d 136 (4th Cir. 1999) ....................................................................................................9

11

12

*Bonnette v. Cal. Health & Welfare Agency*
    704 F.2d 1465 (9th Cir. 1983) ..........................................................................................23, 24

13

14

*Brinker Rest. Corp. v. Superior Ct.*
    53 Cal. 4th 1004 (2012) ......................................................................................................1, 18

15

16

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*
    213 F.3d 474 (9th Cir. 2000) ....................................................................................................7

17

*Cal. Trucking Ass'n v. Su*
    903 F.3d 953 (9th Cir. 2018) ..................................................................................................20

18

19

*Campanelli v. ImageFirst Healthcare Laundry Servs., Inc.*
    No. 15-04556 PJH, 2019 WL 934545 (N.D. Cal. Feb. 16, 2018) ...........................................23

20

21

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ..................................................................................................................8

22

23

*Christopher v. SmithKline Beecham Corp.*
    567 U.S. 142 (2012) ...................................................................................................15, 16, 17

24

*D'Este v. Bayer Corp.*
    2007 WL 6913682 (C.D. Cal. Oct. 9, 1997) ...........................................................................17

25

26

*Dailey v. Sears, Roebuck & Co.*
    214 Cal. App. 4th 974 (2013), *as modified* (Mar. 27, 2013) .................................................19

27

28

*Deal v. State Farm Cty. Mut. Ins. Co.*
    5 F.3d 117 (5th Cir. 1993) ......................................................................................................11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Desimone v. Allstate Ins. Co.*
No. 96-3606, 2000 WL 1811385 (N.D.Cal. Nov. 7, 2000) ......................................................11

*Donovan v. Sureway Cleaners*
656 F.2d 1368 (9th Cir.1981) ...................................................................................................9

*Dynamex Operations West v. Superior Court*
4 Cal.5th 903 (2018) ...............................................................................................................20

*Fairbank v. Wunderman Cato Johnson*
212 F.3d 528 (9th Cir. 2000) ................................................................................................8, 9

*Furry v. E. Bay Publ'g, LLC*
30 Cal. App. 5th 1072, 1082-83 (2018), *reh'g denied* (2019) ...............................................18

*Futrell v. Payday Cal., Inc.*
190 Cal.App.4th 1419 (2010) .................................................................................................21

*Garcia v. San Antonio Metro. Transit Auth.*
469 U.S. 528 (1985) ................................................................................................................23

*Gonzalez v. Millard Mall Servs., Inc.*
2012 WL 684590 (S.D. Cal. March 2, 2012) ..........................................................................19

*Hennighan v. Insphere Ins. Sols. Inc.*
38 F. Supp. 3d 1083, 1100 (N.D. Cal. 2014) *aff'd* 650 Fed. Appx. 500 (9th Cir. 2016) ...................................................................................................................................11

*Iontchev v. AAA Cab Serv., Inc.*
685 F. App'x 548 (9th Cir. 2017) ...........................................................................................10

*Keenan v. Allan*
91 F.3d 1275 (9th Cir. 1996) ....................................................................................................8

*Missions Ins. Co. v. Workers' Comp. Appeals Bd.*
176 Cal. Rptr. 439 (Cal. Ct. App. 1981) .................................................................................11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
210 F.3d 1099 (9th Cir. 2000) ..................................................................................................8

*Ordonez v. Radio Shack, Inc.*
2013 WL 210223 (C.D. Cal. Jan. 17, 2013) ...........................................................................19

*Polizos v. Boston Scientific Corp.*
2011 WL 13225104 (C.D. Cal. May 13, 2011) .......................................................................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 37165861.1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ramirez v. Yosemite Water Co. Inc.*
  20 Cal. 4th 785 (1999) ..............................................................................................17

*Real v. Driscoll Strawberry Assocs., Inc.*
  603 F.2d 748 (9th Cir. 1979)....................................................................................9, 10

*Rutherford Food Corp. v. McComb*
  331 U.S. 722 (1947) .............................................................................................8, 9, 23

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*
  48 Cal.3d 341 (1989) .........................................................................................20, 21, 22

*Summers v. Teichert & Son, Inc.*
  127 F.3d 1150 (9th Cir. 1997)...................................................................................8

*Taylor v. Waddell & Reed Inc.*
  No. 09-02909, 2013 WL 435907 (S.D. Cal. Feb. 1, 2013) ........................................11

*Walling v. Portland Terminal Co.*
  330 U.S. 148 (1947) ..................................................................................................8

*White v. Starbucks Corp.*
  497 F. Supp. 2d 1080 (2007)....................................................................................22

*Yacoubian v. Ortho-McNeil Pharm., Inc.*
  2009 WL 3326632 (C.D. Cal. Feb. 6, 2009) ..............................................................18

**Statutes**

29 U.S.C.
  §203(e)(1)......................................................................................................................8
  §203(g).........................................................................................................................8
  § 203(k) ...............................................................................................................15, 16
  §206.....................................................................................................................8, 15
  §207.....................................................................................................................8, 15
  §213(a)(1)...................................................................................................................15

Cal. Code Regs.
  tit. 8 §11040(2)(M) ...................................................................................................17

Cal. Lab. Code
  §1171........................................................................................................................17
  §2802........................................................................................................................20

Fair Labor Standards Act ............................................................................ *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

v

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1
2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

3
4

Unfair Competition Law, Cal. Bus. & Profs. Code §§17200 *et seq.* ..........................................1, 22

5

**Rules and Regulations**

6
7

Fed. R. Civ. P.
 56(a) ...............................................................................................................................7
 56(c)(1)..........................................................................................................................7

8

IWC Order No. 7-2001(2)(M)........................................................................................................17

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 37165861.1

vi

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Zimmer US, Inc. ("Zimmer US"), Biomet U.S. Reconstruction, LLC ("Biomet Reconstruction"), and Biomet Biologics, LLC ("Biomet Biologics") (collectively "Zimmer Biomet") move for summary judgment as to Plaintiff James Karl's First, Second, Third, Fourth, and Sixth Claims.  Defendants Zimmer Biomet Holdings, Inc. and Biomet, Inc. move for summary judgment as to all of Plaintiff's claims.  The undisputed evidence establishes that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. The Court should enter judgment in favor of Defendants for the following reasons:

Plaintiff's First Claim for the alleged failure to pay overtime under the Fair Labor Standards Act ("FLSA") fails because Plaintiff cannot prove that he was an employee under the FLSA, and, separately, because the undisputed evidence -- drawn entirely from Plaintiff's own sworn deposition testimony -- establishes that Plaintiff qualified as exempt from overtime as an outside sales person under the FLSA.

Plaintiff's Second Claim for the alleged failure to pay overtime under California law fails because the undisputed evidence establishes that Plaintiff qualified as exempt from overtime under California's outside sales person exemption.

Plaintiff's Third and Fourth Claims for the alleged failure to provide meal periods and rest breaks fail because Plaintiff was provided with the opportunity to take meal periods and rest breaks pursuant to the standard articulated in *Brinker Rest. Corp. v. Superior Ct.* 53 Cal. 4th 1004 (2012) and Defendants did not discourage, impede, or prevent him from taking such breaks.

Plaintiff's Sixth Claim for the alleged failure to reimburse business expenses fails because Plaintiff cannot prove that he was an employee under the California Labor Code and *Borello* test.

Plaintiff's Seventh Claim for violations of California's Unfair Competition Laws ("UCL") fails to the extent that it is derivative of the foregoing claims.

In addition to the above, Plaintiff's claims against Defendants Zimmer Biomet Holdings, Inc. and Biomet, Inc. fail for the separate and independent reasons that Plaintiff cannot establish either entity contracted with him, or jointly employed him under Federal or California law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

1

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

## II.     STATEMENT OF RELEVANT FACTS[1]

### A.     The Named Defendant Entities

Zimmer Biomet designs, manufactures, and markets medical device and biologics products for knees, hips, sports medicine, foot and ankle, extremities, and trauma. Ritter Decl. ¶4.

Defendant Zimmer Biomet Holdings, Inc. ("ZB Holdings") is the parent corporation to Zimmer US, which is an entity that, along with Biomet Reconstruction and Biomet Biologics, operates separately and independently of ZB holdings. *Id.* at ¶3. Defendant Biomet, Inc. is a separate subsidiary corporation of ZB Holdings and also operates separately and independently of Zimmer Biomet. *Id.*

### B.     Plaintiff's Engagement as an Independent Contractor with Zimmer Biomet

Plaintiff has served as a sales representative for various different companies within the medical device industry for approximately seventeen years and, except for a brief period in 2001-02, always has been classified as an independent contractor sales representative. Karl Depo. 32:7-21, 59:12-25, 61:5-65:23.[2] Immediately prior to contracting with Zimmer Biomet, Plaintiff served as an independent contractor sales representative for Motion Medical, an independent distributor that sold "legacy" Biomet products.[3]

Plaintiff entered into his Sales Associate Agreement ("SAS") with Zimmer Biomet effective August 10, 2015. Karl Depo. 46:25-47:8, 75:20-77:25, Exhibit 1001; *see also* ECF 53-1, Ex. 13. Prior to signing the SAS, Plaintiff was free to negotiate and did negotiate certain material terms and conditions of his relationship with Zimmer Biomet (including, specifically, the sales territory/region he would be covering). *Id.* at 71:20-73:8; 79:21-81:4; 98:25-99:20; 118:23-119:8; 110:9-12; 114:21-115:15; Ritter Decl. ¶8; *see also* [ECF 57-13]. Plaintiff expressly agreed in the SAS that Zimmer Biomet had engaged him "as an independent contractor and not as an employee" and that "neither this Agreement nor the relationship

---

[1] Citations to declarations are in the format "[declarant's last name] Decl. ¶__"; citations to deposition testimony are in the format "[deponent's last name] [page] : [line]." Citations to evidence previously filed with the Court include any applicable ECF docket number.

[2] Notably, Plaintiff never sued any of the other companies that had classified him as an independent contractor. *Id.* at 49:1-14, 50:2-6.

[3] Plaintiff never contracted directly with Biomet, Inc. Karl Depo. 63:10-65:23, 66:9-18, 68:7-19. ZB Holdings and Biomet merged effective June 24, 2015. Ritter Decl. ¶3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

2

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    between Company and [Plaintiff] creates an employer-employee relationship."  Exhibit 1001;

2    ECF 53-1, Ex. 13, ¶ 2(a).

3        **C.      Plaintiff Operated as a Business Entity, Not as an Individual**

4        Plaintiff independently chose to establish a corporate entity, JWK Management, Inc.,

5    and a limited liability company, Edge Medical, LLC, in order to conduct and operate his sales

6    representative business.  Karl Depo. 239:19-22; 242:17-243:22; 246:2-24; Exh. 1016.  After he

7    entered into his contractor relationship with Zimmer Biomet, Plaintiff continued to contract

8    with and sell products for numerous other medical device companies (including some

9    competitors) through his Edge Medical sales business.  *Id.* at 263:11-280:16 Exs. 1022-1032.

10       Zimmer Biomet paid commissions to Edge Medical, not Plaintiff individually.  *Id.* at

11   239:19-22; 241:7-24; Exh. 1014.  Plaintiff chose to receive a salary from Edge Medical. *Id.* at

12   250:9-18.  Zimmer Biomet did not issue any tax documentation to Plaintiff because it paid

13   commissions to his business entity, Edge Medical. *Id*. at 240:8-25; 252:25-254:4; Exh. 1013.

14   Edge Medical had its own bank account and credit card, which were separate from Plaintiff's

15   individual accounts. *Id.* at 241:25-242:16; 246:25-247:15; 304:11-23; Exhs. 1015, 1017.  Any

16   expenses Plaintiff incurred performing sales representative duties for Zimmer Biomet or other

17   medical device companies were paid by Edge Medical from its accounts, not by Plaintiff. *Id*. at

18   241:25-242:16, Exh. 1015. Plaintiff could not differentiate which expenses (or portions

19   thereof) were incurred by Edge Medical in connection with selling Zimmer Biomet products

20   versus expenses incurred as a result of selling other companies' products. *Id.* at 260:20-261:4.

21   JWK Management and Edge Medical filed and paid their own business taxes, which were

22   separate from Plaintiff's personal taxes.  *Id*. at 245:10-246:1.

23       **D.      Plaintiff's Primary Duty Was Selling Zimmer Biomet Products**

24       Zimmer Biomet contracted directly with Plaintiff to utilize his long-tenured expertise in

25   medical device sales and individual relationships with local physicians in order to sell Zimmer

26   Biomet products.  *Id.* at 75:23-77:1. Plaintiff's SAS expressly authorized him to sell Zimmer

27   Biomet orthopedic product lines, and one of his first "Duties and Obligations" under the SAS

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    was "to exercise best efforts to aggressively market and sell the Products in the Territory." *Id.* at

2    139:4-140:6, Exh. 1001, ¶¶ 2(a), 6(a); ECF 53-1, Ex. 13.

3           Plaintiff admitted that his primary function as a sales representative for Zimmer Biomet

4    was selling. Karl Depo. 82:17-83:2. He succinctly testified: "We are salespeople, and we are

5    driven by sales." *Id.* at 101:19-21.  Plaintiff referred to himself as an "orthopedic sales

6    consultant" on his resume/LinkedIn profile because orthopedic surgeons called *him* for advice

7    (not Zimmer Biomet) and sought *him* out for support with medical devices.  *Id.* at 127:5-17.

8    Plaintiff admitted using "sales techniques" and described his primary sales technique as

9    "solution-selling to surgeons," an overall strategy through which he personally attended surgeries

10   and consulted/interacted with surgeons and their staff in order to make sales of Zimmer Biomet

11   products and increase sales commission revenues for Edge Medical.  *Id.* at 178:15-180:18.

12   Plaintiff characterized one iteration of his sales techniques as follows:  "meet with the doctor,

13   show him product, research the doctor, figure out what they need and what would benefit their

14   practice.  Go to their office.  Talk to them about cases, potential cases.  I'll get texts from them

15   looking for solutions.  Try to support their needs, basically."  *Id.* at 177:6-185:24.

16          Plaintiff conceded that a necessary part of his selling medical devices was attending

17   surgeries, because his being present with doctors at surgeries gave him the opportunity to

18   develop relationships with surgeons, talk with them about solutions during their implantation of

19   the devices, and "sell" the surgeons on the overall effectiveness of Zimmer Biomet products.  *Id.*

20   at 105:22-109:2; 174:20-177:5; 180:21-25. Plaintiff admitted these duties were directly related to

21   retaining/maintaining existing sales from these surgeons, generating sales of new products to

22   these surgeons, and obtaining referrals to other surgeon customers.  *Id.*  Indeed, Plaintiff testified

23   that "[i]f you're not supporting the case [i.e., attending surgery], then somebody can come in on

24   the case, try to take that business," and he further admitted that he faced intense competition

25   from sales representatives from multiple competitor medical device companies who were trying

26   to "angle in" on his territory, and as a result he strongly believed that he needed to be present

27   with surgeons during surgeries in order to hold on to their business and continue to sell them

28   Zimmer Biomet products.  *Id.* at 174:20-177:5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

4

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

**E.**   **Plaintiff Spent the Majority of His Time "Outside" in the Field Selling Zimmer Biomet Products**

Plaintiff admitted he spent "the majority" (about 80%) of his working time at hospitals or surgery centers. *Id.* at 213:4-11; 214:22-215:7.  Specifically, Plaintiff spent on average about 60-70% of his time engaging in sales activities by attending surgeries and interacting/communicating with surgeons to maintain/increase his sales of Zimmer Biomet products, about 15% handling calls and texts (many of which were with existing and new surgeon customers), and about 15% addressing problems/issues that arose.  *Id.* at 223:7-25. Plaintiff had a home office but spent only a minimal amount of time there. Plaintiff spent "zero" time at any Zimmer Biomet office and was not required to report to any central office within the territory.  *Id.* at 192:10-17.

**F.**   **Plaintiff Had Independent Discretion and Control over His Daily Activities**

Plaintiff admitted Zimmer Biomet neither scheduled his surgeries nor generally decided whether he personally attended surgeries.  Karl Depo. 228:14-230:2. Rather, Plaintiff directly communicated with his surgeons on scheduling without input or influence from Zimmer Biomet. *Id.* at 230:3-231:6.  Zimmer Biomet did not specify how long Plaintiff was to remain at a surgery or when to meet with surgeons; rather, individual surgeons and hospitals had their own expectations and/or requirements.  *Id.* at 198:1-199:25.  Zimmer Biomet did not dictate or recommend to Plaintiff what sales techniques worked best for particular doctors or attempt to influence the regular day-to-day choices Plaintiff made in interacting with his doctor customers. *Id.* at 191:3-12.  Zimmer Biomet did not train Plaintiff on sales or sales techniques.  *Id.* at 184:18-185:6. Zimmer Biomet did not tell Plaintiff how to address competitor sales reps trying to "angle in" on his business; that was up to Plaintiff to determine and handle.  *Id.* at 231:19-232:2.

Zimmer Biomet never gave Plaintiff a sales "quota" and did not require him to attend sales calls or meetings. Ritter Decl. ¶9.  Plaintiff did not have to prepare and submit logs or reports of any sales calls to Zimmer Biomet and did not have to update Zimmer Biomet about whether or when he called upon doctors.  *Id.* at 224:3-6.  ZB Bay Area Territory General Manager Don Quigley communicated with Plaintiff only about once every three months.  *Id.* at 308:24-309:6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

5

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    Within the ZB Bay Area territory, Plaintiff was on a team of sales representatives called

2  "Team Golden Gate."  Karl Depo. 79:21-80:3; 81:16-19.  Although he initially served as the

3  sales manager/team lead for Team Golden Gate, Plaintiff unilaterally decided to stop do so.  *Id* at

4  123:1-11.  Team Golden Gate chose to create an "on-call" schedule for representatives on the

5  team to cover emergency surgeries and support other's cases when they were not available.  *Id*.

6  at 225:23-228:3.  Zimmer Biomet did not set up or dictate this on-call schedule. *Id.*  However,

7  Plaintiff unilaterally decided to remove himself and not participate in Team Golden Gate's on-

8  call schedule, because he wanted to limit his focus to only the surgeons he worked with. *Id*; *see*

9  *also Id.* at 255:17-256:8; Exh. 1011.  At one point, Plaintiff even unilaterally decided to modify

10  his relationship with Zimmer Biomet in order to contract with an independent distributor in the

11  North Bay, while still providing solutions to his network of surgeons in San Francisco.  *Id.* at

12  88:25-90:9.

13    Under the SAS, Plaintiff had the discretion to hire or otherwise retain other persons to

14  help him perform his duties under the SAS, thus freeing him from the need to perform any

15  specific duties himself. Ex. 1001, ¶¶ 2, 6(g); ECF 53-1 Ex. 13. Indeed, Plaintiff did contract with

16  other persons, without any involvement by Zimmer Biomet, to perform a variety of tasks for

17  him, such as assistance with coverage, post-operative cleaning, or other tasks that assisted his

18  sales operations. Karl Depo. at 143:23-144:10; 144:23-145:1; 146:16-148:21; 152:2-5.  As

19  another example, Plaintiff was not required to go to the warehouses to pick up implants, as he

20  could hire people or arrange for couriers to pick up and transport inventory for him. Ritter Decl.

21  ¶10.

22    Plaintiff's independent discretion and control over his schedule included his ability to

23  take breaks from working, since his schedule was determined solely via his independent

24  communications with the surgeons to whom he sold.  Karl Depo. at 228:14-231:16.  Specifically,

25  Plaintiff admitted that no one from Zimmer Biomet told him not to take a meal period or rest

26  break or in any way prevented him from taking meal periods and rest breaks whenever he wanted

27  to do so.  *Id.* at 280:17-281:14; 283:22-284:10.  As another indicia of his independence, Plaintiff

28  admitted he had discretion to perform post-operative cleanup any time following a surgery (or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

6

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1  could simply choose to pay someone else to do it all together), which would allow him the

2  opportunity for a break of 10 minutes or 30 minutes or longer following a surgery.  *Id.* at 284:11-

3  285:10.

4      **G.      Edge Medical Paid All Business Expenses, and Zimmer Biomet Did Not
                 Provide Any Tools For Plaintiff to Perform His Sale Representative Services.**

5

6          Zimmer Biomet did not require Plaintiff to utilize any particular "tools of the trade" in

7  order to sell its medical devices, nor did Zimmer Biomet provide any such tools to Plaintiff.  *See*

8  ECF 41 at ¶37.  Business expenses related to Plaintiff's sales activities for both Zimmer Biomet

9  and other companies were paid using an Edge Medical credit card.  Karl Depo. at 304:11-23.

10  Zimmer Biomet provided Plaintiff with an email address (jim.karl@zbbayarea.com), but he was

11  not required to use it, and this email domain was not hosted or controlled by, owned, or even

12  accessible to Zimmer Biomet and, was not the same email domain given to employees of

13  Zimmer Biomet (e.g., @zimmerbiomet.com).  Ritter Decl. ¶ 12.  Plaintiff admitted to using his

14  personal email, jim.karl@gmail.com, to communicate with Zimmer Biomet, his surgeons and

15  other customers.  Karl Depo. at 232:11-233:17.  Plaintiff was not required to have or use Zimmer

16  Biomet business cards.  *Id.* at 232:8-10.

17  **III.   LEGAL ARGUMENT**

18      **A.      Summary Judgment Standard.**

19          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

20  any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

21  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by

22  citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A

23  party also may show that such materials "do not establish the absence or presence of a genuine

24  dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

25  Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable

26  fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

27  49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248.

28          Where the party moving for summary judgment would bear the burden of proof at trial,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

7

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1   that party bears the initial burden of producing evidence that would entitle it to a directed verdict

2   if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

3   480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of

4   proof at trial, that party bears the initial burden of either producing evidence that negates an

5   essential element of the non-moving party's claim, or showing that the non-moving party does not

6   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.

7   *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) ("showing" requires no

8   more than "pointing out through argument" the absence of evidence); *Nissan Fire & Marine Ins.*

9   *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (moving party satisfies its

10  burden on summary judgment by showing "an absence of evidence to support an essential

11  element of a claim"). If the moving party satisfies its initial burden of production, then the non-

12  moving party must produce admissible evidence to show that a genuine issue of material fact

13  exists. *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102-03.  The non-moving party must

14  "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v.*

15  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "A mere scintilla of evidence will not be sufficient to

16  defeat a properly supported motion for summary judgment; rather, the nonmoving party must

17  introduce some significant probative evidence tending to support the complaint." *Summers v.*

18  *Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks

19  omitted). If the non-moving party fails to make this showing, the moving party is entitled to

20  summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.   Plaintiff's First Claim Fails Because Plaintiff Cannot Prove That He Was An Employee Under the FLSA's "Economic Reality" Test.

23      The FLSA applies only to "employees."  29 U.S.C. §§206, 207.  An "employee" is an

24  individual that an employer suffers, permits, or otherwise employs to work. *See* 29 U.S.C.

25  §203(e)(1), (g). While broad, this definition is "obviously not intended to stamp all persons as

26  employees." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).  Independent

27  contractors are not "employees." *See, e.g.*, *Rutherford Food Corp. v. McComb*, 331 U.S. 722,

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

8

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

729 (1947) (recognizing that workers may be independent contractors when their work does not "in its essence ... follow[] the usual path of an employee").

To determine whether an individual is an employee or an independent contractor under the FLSA, courts apply the economic realities test: "[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).  Courts consider the following non-exhaustive factors to guide their application of this test: "1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business." *Id.*  "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends 'upon the circumstances of the whole activity.'" *Id.* at 745-55 (quoting *Rutherford Food Corp.* 331 U.S at 730 (1947)); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir.1981).

Plaintiff bears the burden of proving he was an "employee" covered under the FLSA. *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) ("Those seeking compensation under the Act bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act."). As a result, Defendants need only either produce evidence that negates an essential element of Plaintiff's claim or show that Plaintiff does not have enough evidence of an essential element to carry his ultimate burden of persuasion at trial. *Fairbank*, 212 F.3d at 532.

Here, the undisputed evidence as to each factor in the economic realities test, when considered together, shows that Plaintiff cannot prove he was an employee under the FLSA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

9

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1.      **Zimmer Biomet Did Not Control the Manner In Which Plaintiff Performed His Services**

Here, this factor weighs heavily in favor of independent contractor status because Plaintiff had discretion and control over whether, when, how, and where he performed sales representative duties, and Zimmer Biomet had little to no control over his daily activities.  The undisputed evidence shows that Zimmer Biomet did not train Plaintiff on sales or sales techniques, did not dictate the sales techniques Plaintiff used, and did not direct Plaintiff on how to deal with competitors trying to angle in on his business. Karl Depo. 184:18-185:6; 191:3-12; 231:19-232:2.  The Territory General Manager Don Quigley was so removed from control over Plaintiff that Mr. Quigley only communicated with Plaintiff once every three months.  *Id.* at 308:24-309:6.  Plaintiff did not have to use any particular tools or Zimmer Biomet business cards, and used his own personal Gmail account for business, all of which was outside of Zimmer Biomet's control.  *Id.* at 232:8-10; 232:11-233:17. Zimmer Biomet did not schedule Plaintiff's surgeries, monitor or control how he spent his time from day to day, access (let alone dictate) his daily schedule, or require him to report to any Zimmer Biomet office.  *Id.*  at 192:10-17; 213:3-11; 214:22-215:7; 228:14-230:2.  Plaintiff directly communicated with surgeons on scheduling without input or influence from Zimmer Biomet.  *Id.* at 230:3-231:6.  Zimmer Biomet did not dictate whether Plaintiff needed to attend surgeries in person, did not specify how long Plaintiff should remain present in a surgery, and did not instruct Plaintiff whether or when to meet with any surgeons, if at all, on any given day.  *Id.* at 198:1-199:25. Plaintiff did not have to submit sales call logs or reports to Zimmer Biomet.  *Id.* at 224:3-6.  Zimmer Biomet did not require Plaintiff to be on-call or to take any assignments at all.  *Id.* at 225:23-228:3; Exh. 1011. Zimmer Biomet never gave Plaintiff a sales "quota" and Plaintiff's compensation was determined by how much (or little) he sold. Ritter Decl. ¶9; Karl Depo. 177:11-178:18; Ex. 1012. Plaintiff unilaterally chose to modify his relationship with Zimmer Biomet in order to contract with an independent distributor for a period of time while still servicing physicians in San Francisco. Karl Depo. 88:25-90:9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

10

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    Courts regularly find that the lack of control Zimmer Biomet had over Plaintiff precludes

2  a finding of employee status under the FLSA. For example, in *Iontchev v. AAA Cab Serv*., *Inc.,*

3  685 F. App'x 548, 550 (9th Cir. 2017), the federal court granted summary judgment on behalf of

4  a cab company after applying the six-factor *Driscoll* test, finding defendant had relatively little

5  control given that it did not maintain attendance logs, establish work schedules, or mandate a

6  minimum number of hours.  *Id.* To the extent there was any training, discipline or rules the

7  contractors had to follow, they derived from government mandates or law.  *Id.*

8    Defendants anticipate Plaintiff will argue that he was subject to "control" because he

9  needed to adhere to certain rules set forth in a Territory Compliance Manual.  However, as a

10 medical device manufacturer, Zimmer Biomet needed to comply with numerous FDA and other

11 strict federal rules and regulations, and the Company's Territory Compliance Manual and any

12 training relating thereto simply insured that sales representatives did not provide their services in

13 a manner that ran afoul of such governmental rules. These types of compliance parameters are

14 insufficient evidence of "control."  *See Hennighan v. Insphere Ins. Sols. Inc.*, 38 F. Supp. 3d

15 1083, 1100 (N.D. Cal. 2014) *aff'd* 650 Fed. Appx. 500 (9th Cir. 2016) ("Required meetings and

16 training related to legal compliance do not necessarily indicate an employment relationship.");

17 *Desimone v. Allstate Ins. Co*., No. 96-3606, 2000 WL 1811385, at *13 (N.D.Cal. Nov. 7, 2000)

18 (meetings and trainings mandated to ensure compliance with state and federal law are not

19 evidence of employment); *see also Deal v. State Farm Cty. Mut. Ins. Co.*, 5 F.3d 117, 119 (5th

20 Cir. 1993); *Taylor v. Waddell & Reed Inc.*, No. 09-02909, 2013 WL 435907, at *6 (S.D. Cal.

21 Feb. 1, 2013) ("allegations of 'control' pursuant to legal requirements are not employment

22 indicia"); *Arnold v. Mut. of Omaha Ins. Co*., 135 Cal. Rptr. 3d 213, 220 (Cal. Ct. App. 2011)

23 (finding no significant right to control where agents were required to attend trainings offered for

24 compliance with state law); *Missions Ins. Co. v. Workers' Comp. Appeals Bd*., 176 Cal. Rptr.

25 439 (Cal. Ct. App. 1981) (prescribed standards of performance and occasional lectures or classes

26 concerning proper methods were not evidence of control over the manner in which the desired

27 result was to be achieved).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

11

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1      Defendants anticipate that Plaintiff also may argue he was subject to "control" because he

2  needed to enter information regardnig surgeries into Zimmer Biomet's "SMS" system. By

3  Plaintiff's own admission, however, the SMS system is simply a platform that communicated

4  whether a surgery was scheduled, cancelled or completed, and allowed Zimmer Biomet to know

5  what types of devices/products were used for inventory purposes. Karl Depo. at 153:3-13;

6  155:21-24.  Plaintiff did not enter all of the surgeries he attended in SMS, and kept no other

7  records of those surgeries. *Id.* at 174:2-5.  Plaintiff may contend that Team Golden Gate used a

8  shared Google Calendar, but he admitted that he did not use it for his scheduling (which was "a

9  combination of your mind, emails from schedulers the doctors send you, your own personal

10 calendar") and also admitted that Zimmer Biomet had no access to the team's calendar.  *Id.* at

11 207:23-209:17; Ex. 1010 ("I was typing it into Google Docs because [the Team Golden Gate

12 leads were asking for it] - - even though I know my schedule and I keep it in my way…So I tried

13 to appease them as much as I could, but, you know, I have my own system.  And I tried to do my

14 best, but, you know that's what they get.")

15              **2.      Plaintiff's Opportunity for Profit or Loss Depended On His
                          Managerial Skill**
16

17     Plaintiff called himself an "orthopedic sales consultant" on his resume/LinkedIn profile

18 because orthopedic surgeons called *him* for advice and sought *him* out for support with medical

19 devices. *Id.* at 127:5-17.  Plaintiff engaged in his own marketing efforts to increase his profit or

20 loss.  *Id.* at 186:24-187:5  Plaintiff chose to set up his own business entities, JWK Management,

21 Inc. and Edge Medical, LLC, to operate his sales contractor business.  *Id.* at 239:19-22; 242:17-

22 243:22; 246:2-24; Exh. 1016.  Plaintiff set up Edge Medical with its own bank account and credit

23 card, which were separate from Plaintiff's individual accounts. *Id.* at 241:25-242:16; 246:25-

24 247:15; 304:11-23, Exs. 1015; 1017.  Plaintiff utilized accountants to have JWK Management

25 and Edge Medical file and pay their own business taxes, separate from Plaintiff's personal taxes.

26 *Id.* at 245:10-246:1.  Plaintiff invested in these corporate vehicles to structure and enhance his

27 operation in medical device sales for multiple companies of which Zimmer Biomet was just one.

28 *Id.* at 263:11-280:16 Exs. 1022-1032.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

12

1  Plaintiff admitted his profit and loss were directly proportional to his business and

2  managerial skill, which contributed to the overall commissions earned by and payable to Team

3  Golden Gate. *Id.* at 177:11-178:4.  Zimmer Biomet paid Edge Medical commissions of about

4  $130,000 in 2016, $170,000 in 2017, and $150,000 in 2018. *Id.* at 238:11-239:18; Ex. 1012.[4]

5  Month to month, the commissions earnings ranged from $9,300 to $22,000. *Id.* at Ex. 1012.

6  Plaintiff managed his relationships with surgeons to whom he sold, including by dealing with

7  scheduling and consulting on solutions on his own. *See, e.g.*, *id.* at 172:7-18 (describing a

8  situation where two doctors had a conflicting request for his attendance around Christmas, and he

9  "[c]alled [Zimmer Biomet] to ask for help, and you know, it was basically on my shoulders.

10  [Zimmer Biomet] said, you know, 'You're going to have to deal with it.'")  Plaintiff used his own

11  management skill (including subcontracting and outsourcing) to respond to the demands of the

12  surgeons to whom he sold. *Id.* at 147:9-17 (referring to paying someone else for a job, "I'd call it

13  the unfortunate task of needing to pay somebody to cover my call.  But yeah…Zimmer didn't

14  have a say in that.")  This factor supports a finding of independent contractor status.

15  ### 3.  Plaintiff Invested in Equipment to Perform His Services and He Had the Ability to, and Did, Retain Others to Help

16

17  Plaintiff's SAS permitted him to subcontract out work at his discretion or hire employees

18  or other personnel to best achieve the end of the contract - freeing him from the need to do any

19  duties himself should he elect to organize his operation in this manner.  Ex. 1001, ¶¶ 2 6(g).

20  Indeed, Plaintiff did contract with others via agreements completely outside of Zimmer Biomet to

21  perform a variety of tasks such as assistance with coverage, post-operation cleaning, or other

22  tasks that assisted his operations.  Karl Depo. at 143:23-144:10; 144:23-145:1; 146:16-148:21;

23  152:2-5.   Plaintiff's investment in his home office, vehicle, and other expenses were incurred in

24  his own discretion to facilitate his operations for both Zimmer Biomet and the other entities he

25  serviced.  *Id.* at 304:11-23.  As set forth *supra*, Plaintiff invested in the preparation and creation

26  of various business entities to facilitate his operations, including Edge Medical, LLC.  *See*

27

28  ---
[4] The redacted commission statements in Exhibit 1012 are subject to a concurrently filed Administrative Motion to File Under Seal.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

13

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

§III(B)(2) *infra*.  Plaintiff incurred his various expenses on an Edge Medical credit card for his

sales activities for both Zimmer Biomet and others, and was unable to differentiate which

expenses (or portions thereof) were incurred selling Zimmer Biomet products versus those

incurred selling other companies' products.  Karl Depo. at 260:20-261:4.  This factor weighs in

favor of independent contractor classification.

### 4.      The Services He Rendered Required Special Skills and Knowledge

Plaintiff's ability to sell medical devices to surgeons through "solution-selling" required a

very high degree of specialized skill and knowledge regarding the technical aspects of the

devices and their usage, human anatomy, and surgical techniques and procedures - topics far

beyond the regular layperson's skillset.  Plaintiff holds a college degree in physical therapy and

worked in the medical device industry for more than seventeen years. *Id.* at 56:13-23, 61:5-

66:14. Plaintiff's special skills and knowledge were the reasons why surgeons sought him out:

> [Surgeons] come to me with a problem, and I try to figure it out for them . . . For
> instance, two, three weeks ago, a doctor came to me that uses our proximal humerus
> plate.  He said he has a problem with our long plate because it gets in the way of
> the insertion of the deltoid.  And I was able to find out our new plate has a solution
> for that and the long plates have a jog in it to go around.  He had already called the
> competitor in; the competitor was going to do the case.  And I contacted [the
> surgeon] that night and I told him, "I have a solution," sent him the technique guide.
> He looked at it and he used it.  So solution-sell.

*Id.* at 179:17-180:6.  Both inside and outside of the operating room Plaintiff consulted and

advised surgeons on implementation of medical devices.  *See, e.g.*, *id.* at 180:21-184:23

(describing his skills and knowledge based on years of experience in the medical device

industry, Plaintiff testified to "knowing every option in my bag.  If the surgeon knows I

know all the options, they're going to call me because they know I don't leave any stone

unturned.").  This factor weighs strongly in favor of independent contractor status.

### 5.      The Degree of Permanence in Plaintiff and Zimmer Biomet's Relationship.

Plaintiff does not allege that Zimmer Biomet had the power to hire or fire him.  [ECF

41].  Plaintiff was subject to his written SAS, certain portions of which he negotiated prior to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

14

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    signing. Karl Depo. 71:20-73:8; 98:25-99:20; 118:23-1; 110:9-12; 114:21-115:15; [ECF 53-1 at

2    Ex. 13].   However, the SAS was clearly not a permanent fixture, as evidenced by Plaintiff's

3    unilateral decision to restructure his relationship with Zimmer Biomet and independently

4    contract with an independent distributor (Harry Fegan) in the North Bay, while also choosing

5    to continue to work with physicians in San Francisco to provide them access to Zimmer

6    Biomet products.  Karl Depo. 88:25-90:9. Plaintiff also contracted with and sold products for

7    several other medical device companies (including some who competed with Zimmer Biomet)

8    through his Edge Medical business.  *Id.* at 263:11-280:16; Exs. 1022-32. As Plaintiff did not

9    have to sell for Zimmer Biomet and could focus his sales for other entities in his discretion, the

10   lack of permanency in the relationship favors a finding of independent contractor status.

         **6.      Whether Plaintiff's Services Are An Integral Part of Zimmer Biomet's**
11                **Business.**

12
         Zimmer Biomet designs, manufactures, and markets medical device and biologics

13   products for knees, hips, sports medicine, foot and ankle, extremities, and trauma. Ritter Decl. ¶4.

14   Manufacturers of a wide range of products rely on other entities in the retail space to actually sell

15   the products the manufacturers design, produce and offer to the market.  Unlike traditional retail

16   products, however, medical device products are not sold in storefronts, but rather by an

17   independent network of local experts, like Edge Medical, LLC, specialized in knowing the local

18   physician market and the medical devices they need from multiple manufacturers.  Plaintiff's and

19   Edge Medical's orthopedic consulting and promotional sales practice is not an integral part of the

20   design and manufacture of medical devices, but rather is downstream as retail.

21       **C.      Plaintiff's First Claim Fails for the Separate and Independent Reason That
22               He Qualified As An Exempt Outside Salesperson Under the FLSA[5].**

23
         The FLSA does not impose overtime requirements on persons employed "in the capacity

24   of outside salesman."  29 U.S.C.§§206-207, 213(a)(1).  The exemption contains two components:

25   (1) the employee's "primary duty is making any sale, exchange, contract to sell, consignment for

26

27

28
_____

[5] Plaintiff qualifies as an independent contractor under the FLSA's economic realities test;
however, assuming *arguendo* he could prove that he was an employee, his claim for overtime still
fails because he qualified for the outside salesperson exemption under the FLSA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1                                      15                   MPA ISO MOTION
                                                                   FOR SUMMARY JUDGMENT
                                                                         18-CV-04176-WHA

1    sale, shipment for sale, or other disposition," and (2) the employee must be customarily and

2    regularly engaged away from the employer's place or places of business.  *Christopher v.*

3    *SmithKline Beecham Corp.* 567 U.S. 142, 148, 169 (2012) (citing to 29 U.S.C. § 203(k))

4    (*Christopher*) (holding that pharmaceutical sales representatives are outside salespersons under

5    the FLSA because their job "was not merely to make physicians aware of the medically

6    appropriate uses of a particular drug.  Rather, it was to convince physicians actually to prescribe

7    the drug in appropriate cases."). Plaintiff seeks only unpaid overtime under the FLSA.  [ECF 41]

8    ¶¶55-62.  Accordingly, to the extent that Plaintiff qualifies as an exempt outside salesperson,

9    Plaintiff's first claim must be dismissed.

10        Here, the undisputed evidence establishes that Plaintiff qualified as an exempt outside

11    salesperson under the FLSA.  Plaintiff *admitted* his primary job function as a sales representative

12    was selling.  Karl Depo. at 82:17-83:2.  "We are salespeople, and we are driven by sales."  *Id.* at

13    101:19-21.  The SAS expressly identified that the first duty Zimmer Biomet retained him to

14    perform was "to exercise best efforts to aggressively market and sell the Products in the

15    Territory." Ex. 1001, ¶¶ 2(a), 6(a).  Plaintiff's sales technique of "solution selling" comprised

16    essentially all of his tasks as directed toward the physicians purchasing his products.  *Id.* at 127:5-

17    17; 177:6-185:24.  Plaintiff admitted that attending surgeries was part and parcel of his solution-

18    selling sales technique, because being present at surgeries gave him the opportunity to develop a

19    relationship with the surgeon, hold on to existing sales, and develop future sales.  *Id.* at 176:20-

20    177:5; 180:21-25.  Plaintiff admitted that he spent 60-70% of his working time on an average day

21    covering cases with physicians, 15% answering calls and texts, and the remaining 15% reserved

22    for additional issues.  *Id.* at 223:7-25.  In sum, Plaintiff admitted that his primary duty is selling,

23    and under the Supreme Court's rationale in *Christopher* Plaintiff's solution-selling methodology

24    made the vast majority of his tasks directly related to his ultimate sales of medical devices.

25        With respect to the second element of the exemption, Plaintiff admitted he spent 80% of

26    his working time at various hospitals or surgery centers and "zero" time at Zimmer Biomet

27    offices near his territory.  *Id.* at 192:10-17; 213:3-11; 214:22-215:7.  It is undisputed that Plaintiff

28    was customarily and regularly engaged away from Zimmer Biomet's regular place of business.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

16

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1   *See, e.g., Christopher* 567 U.S. at 148, 169 (citing to 29 U.S.C. § 203(k) (finding that

2   pharmaceutical sales reps who spend a majority of their time selling to physicians outside of the

3   office met both prongs of the test).

4       **D.      Plaintiff's Second Claim Fails Because He Qualified as an Exempt Outside**
        **Salesperson Under California Law.[6]**

5

6           California Labor Code section 1171 exempts from overtime "any individual employed as

7   an outside salesman." The Wage Order defines the term "outside salesperson" as any person who

8   "customarily and regularly works more than half the working time away from the employer's

9   place of business selling tangible or intangible items or obtaining orders or contracts for products,

10  services or use of facilities." Cal. Code Regs. tit. 8 §11040(2)(M); IWC Wage Order No. 7-

11  2001(2)(M). The main difference between the FLSA and the California Labor Code is that the

12  latter follows a *quantitative* approach—which focuses on whether Plaintiff was engaged in

13  exempt duties more than 50% of the time.  The FLSA analysis, *supra*, considers whether

14  *qualitatively* Plaintiff's primary duty was that of a "salesperson," regardless of how much time

15  was actually spent on sales duties. *Christopher*, 567 U.S. at 148.  Whether California's 50%

16  threshold is met turns on how the person actually spends his time, as well as the putative

17  employer's reasonable expectations thereof.  *Ramirez v. Yosemite Water Co. Inc.*, 20 Cal. 4th 785,

18  802 (1999).

19          Under California law, duties qualify as exempt (and thus count toward the 50% threshold)

20  if they constitute sales activities or "sales related activities." *Id.* at 801. Sales related activities

21  include such tasks as preparation time, travel time, and paperwork. *Id.*  Further, California courts

22  look to the FLSA for guidance in interpreting California wage/hour laws—including as to the

23  definition of exempt "sales activities." *See D'Este v. Bayer Corp.*, 2007 WL 6913682, at *4-5 &

24  n.2 (C.D. Cal. Oct. 9, 1997) (applying FLSA's definition of sales activities to determine exempt

25

26  ─────────────────────
    [6] Defendants dispute and do not concede that Plaintiff can prove he is an "employee" under the
    California Industrial Welfare Commission ("IWC") Wage Order, however, Defendants do not

27  raise that issue or make that argument in this Motion and seek no ruling from the Court in that
    regard.  Rather, Defendants assume *arguendo* solely for purposes of this Motion, that even if

28  Plaintiff could prove he was an employee under the Wage Order, his overtime claim would fail
    because he qualifies as an exempt outside salesperson under California law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1                    17              MPA ISO MOTION
                                                   FOR SUMMARY JUDGMENT
                                                   18-CV-04176-WHA

1  status of pharmaceutical sales reps under Cal. Labor Code's outside sales exemption and granting

2  summary judgment for employer); *Christopher,* 567 U.S. at 142 (broadly defining the definition

3  of sales activities performed by pharmaceutical sales reps for purposes of the FLSA's outside

4  sales exemption).

5         Time spent by a medical device sales representative on in-office checks and attending

6  implant procedures/surgeries (and all travel time related thereto) constitutes "sales" activities. *See*

7  *Polizos v. Boston Scientific Corp.*, 2011 WL 13225104, at *7 (C.D. Cal. May 13, 2011) ("Indeed,

8  doing in-office device checks and implant procedures for his physician customers would be in

9  furtherance of Plaintiff's job function of selling and promoting company products."); *Yacoubian*

10  *v. Ortho-McNeil Pharm., Inc.*, 2009 WL 3326632, at *4-6 (C.D. Cal. Feb. 6, 2009) (considering

11  sales representatives' promotional activities as "sales" activities under the Labor Code and

12  granting summary judgment on ground that sales representatives were outside salespersons under

13  both FLSA and California law).

14         Here, Plaintiff admitted that 60-70% of his working time on an average day was spent

15  covering surgeries with physicians -- which he admitted was an absolutely necessary part of the

16  sales process.  Karl Depo. 127:5-17; 177:6-185:24; 223:7-25.  Based on Plaintiff's "solution

17  selling" sales technique, all of the time he spent attending surgeries in person with physicians

18  qualified as sales and sales-related activities.  *See Christopher,* 567 U.S. at 142; *Polizos,* 2011

19  WL 13225104, at *7. Further, Plaintiff admitted he spent 80% of his working time at various

20  hospitals or surgery centers and "zero" time at Zimmer Biomet offices near his territory. Karl

21  Depo. 192:10-17; 213:3-11; 214:22-215:7.  The undisputed evidence shows that he spent more

22  than 50% of his time on exempt sales activities and more than 50% of this selling time away from

23  any Zimmer Biomet office.  *Id.* at 223:7-25.  His California overtime claim should be dismissed.

24  **E.      Plaintiff's Third and Fourth Claims Fail Because He Was Provided With the**
         **Opportunity to Take Meal Periods and Rest Breaks.**

25

26         Under California law, an employer is not obligated to ensure that an employee actually

27  takes meal periods or rest breaks; rather, an employer's obligation is only to provide employees a

28  "reasonable opportunity" to take breaks and not "impede or discourage them from doing so."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

18

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1  *Brinker Rest. Corp.,* 53 Cal. 4th at 1040.  The employer "is not obligated to police . . . breaks."

2  *Id.* at 1040-41.  Only when an employer knew or reasonably should have known an employee was

3  being denied a break is a premium payment owed.  *Id.* at 1040 n.19; *see also Furry v. E. Bay*

4  *Publ'g, LLC* 30 Cal. App. 5th 1072, 1082-83 (2018), *reh'g denied* (2019) (rejecting plaintiff's

5  meal break claim because plaintiff failed to show the company knew or reasonably should have

6  known that he worked during some of his meal breaks).

7       Here, Plaintiff could take breaks whenever he wanted, in any frequency or duration, as his

8  schedule was not controlled by, *or even known by*, Zimmer Biomet.  Plaintiff was on his own in

9  working away from any Zimmer Biomet office, and scheduled his day with the physicians to

10  whom he was selling Zimmer Biomet products.  Plaintiff clearly had the opportunity to take the

11  30-minute meal periods and 10-minute rest breaks specified under California law, and he cannot

12  present any evidence that Zimmer Biomet implemented a schedule or mandated any activities to

13  which he needed to adhere that would have prevented him from taking a meal period by the end

14  of his fifth hour of work or prevented him from taking a rest break for every four hours worked

15  (or major fraction thereof).  Quite simply, over the course of a day Zimmer Biomet did not even

16  know where Plaintiff was, what specifically he was doing, or how much he planned to work or

17  not work.  Given the undisputed lack of strictures over his daily activities, Plaintiff cannot prove

18  that Defendants prevented him from taking any applicable breaks established under California

19  law.  To the extent he chose not to take any such breaks, the evidence shows that this resulted

20  from his own choices and he never informed Zimmer Biomet that he could not take breaks.

21       The fact that Zimmer Biomet did not have a written policy for meal and rest breaks for its

22  independent contractor sales representatives does not help Plaintiff's argument.  *See Dailey v.*

23  *Sears, Roebuck & Co.,* 214 Cal. App. 4th 974, 1001 (2013), *as modified* (Mar. 27, 2013).  The

24  plaintiffs in *Dailey* argued that Sears had no written policy for meals and rest breaks, and that

25  employees were never told they were allowed meal or rest breaks.  The court rejected that

26  argument, stating: "[n]othing in Dailey's evidence indicates that Sears *prohibits* class members

27  from taking uninterrupted meal and rest breaks, or that it has a uniform policy of *requiring* 'on-

28  duty' meal and rest breaks."  *Id.*  To show a violation under California law Plaintiff must show "a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

19

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1  uniform corporate policy *denying* employees the opportunity to take breaks." *Gonzalez v. Millard*

2  *Mall Servs., Inc.,* 2012 WL 684590, at *8 (S.D. Cal. March 2, 2012) (emphasis added); *Ordonez*

3  *v. Radio Shack, Inc.,* 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) (that "defendant *may*

4  have an illegal, written rest break policy is insufficient.")

5        Here Plaintiff admitted that no one from Zimmer Biomet told him not to take a meal break

6  or rest break, when to take them, or in any way prevented or discouraged him from taking breaks

7  for meals or rest whenever he wanted.  Karl Depo. at 280:17-281:14; 283:22-284:10.  Zimmer

8  Biomet did not direct Plaintiff with respect to *any* of his scheduling, including scheduling surgery

9  attendance, subcontracting, etc.  As one example, after a surgery that Plaintiff scheduled with a

10  surgeon is complete, Plaintiff admitted that, in his discretion, he can take a break of 10 minutes or

11  30 minutes or longer (or even just subcontract for someone else to do the remaining work after

12  the surgeries).  *Id.* at 284:11-285:10.  Plaintiff's meal and rest break claims should be dismissed.

13     **F.**    **Plaintiff's Sixth Cause of Action Fails Because He Cannot Prove He Is An**
14         **Employee Entitled to Expense Reimbursements Under the California Labor Code.**

15       **1.**    **The *Borello* Test Applies to Plaintiff's Claim for Failure to Reimburse**
16          **Business Expenses Under California Labor Code Section 2802.**

17      The "ABC" test, articulated in *Dynamex Operations West v. Superior Court*, 4 Cal.5th 903

18  (2018), "applies only to claims arising under Industrial Welfare Commission Wage Orders." *Cal.*

19  *Trucking Ass'n v. Su*, 903 F.3d 953, 959 fn.4 (9th Cir. 2018) (finding *Dynamex* did not purport to

20  replace the *Borello* standard in every instance where a worker must be classified as either an

21  independent contractor or an employee for purposes of enforcing California's labor protections.).

22  In *Dynamex*, the California Supreme Court held that the defendant's alleged failure to comply

23  with its statutory obligation to reimburse employees for business-related expenses under Labor

24  Code section 2802 did not derive from an applicable wage order.  *Id.* at 942-43. As a result, the

25  Court should look to the common law test for employee status for Labor Code claims.  *See Ayala*

26  *v. Antelope Valley Newspapers, Inc*., 59 Cal. 4th 522, 530-31 (2014).  The applicable common

27  law test was articulated in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48

28  Cal.3d 341, 350 (1989) ("*Borello*").  Here, *Borello* applies to Plaintiff's expense reimbursement

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

20

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    claim because it is based on Labor Code § 2802, not a Wage Order.  *See* ECF 41 ¶¶ 83-88.

2            **2.      Plaintiff Qualifies as an Independent Contractor Under *Borello*.**

3            Under the common law *Borello* test, "[t]he principal test of an employment relationship is

4    whether the person to whom service is rendered *has the right to control the manner and means of*

5    *accomplishing the result desired.*" *Borello*, 48 Cal.3d at 350 (emphasis added) (quoting *Tieberg v.*

6    *Unemployment Ins. App. Bd.* 2 Cal.3d 943, 946 (1970)).  What matters is whether the hirer

7    "retains all necessary control" over the employee as relates to its operations. *Id.* at 357.  While the

8    extent of the hirer's right to control the work is the foremost consideration in assessing whether a

9    common law employer-employee relationship exists, California also recognizes secondary

10   indicia: "(a) whether the one performing services is engaged in a distinct occupation or business;

11   (b) the kind of occupation, with reference to whether, in the locality, the work is usually done

12   under the direction of the principal or by a specialist without supervision; (c) the skill required in

13   the particular occupation; (d) whether the principal or the worker supplies the instrumentalities,

14   tools, and the place of work for the person doing the work; (e) the length of time for which the

15   services are to be performed; (f) the method of payment, whether by the time or by the job; (g)

16   whether or not the work is a part of the regular business of the principal; and (h) whether or not

17   the parties believe they are creating the relationship of employer-employee." *Borello*, 48 Cal.3d at

18   351; *see also Futrell v. Payday Cal., Inc.* 190 Cal.App.4th 1419, 1434 (2010).

19           As set forth in section III(B)(1) *supra*, Zimmer Biomet did not exert control over the

20   manner and means of Plaintiff's operations.  Based on this first and primary factor, the Court

21   should find that Plaintiff cannot prove he was an employee of Zimmer Biomet.

22           The secondary *Borello* factors further confirm Plaintiff's independent contractor status.

23   First, Plaintiff is engaged in a distinct occupation or business.  Plaintiff's entity, Edge Medical

24   LLC, provides solutions to physicians that affect a wide range of medical devices of which

25   Zimmer Biomet is but one provider.  Karl Depo. at 177:6-185:24; 239:19-243:20; 256:9-17; Exh.

26   1011-1016,1020 (Zimmer Biomet pays commissions to Edge Medical when Plaintiff identifies a

27   Zimmer Biomet product as the solution for one of his physicians and their client.)  Plaintiff is also

28   a specialist in his territory who performs work without supervision.  *Id.* at 191:3-12; 199:7-17;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

21

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

223:3-6; 225:23-228:3; 228:14-230:2; 231:4-6; Exh.1011.  This structure is normal in Plaintiff's territory and for seventeen years (including thirteen years before contracting with Zimmer Biomet) Plaintiff has understood that he was an independent contractor for a series of medical device providers or distributors.  *Id.* at 61:5-71:19.

Zimmer Biomet does not provide instrumentalities, tools, or a place of work for Plaintiff, and his separate corporation - Edge Medical - pays his expenses.  *Id.* at 232:8-233:17.  Indeed, Plaintiff set up a sophisticated set of corporations to address taxation for an independent contractor who received income from multiple medical device companies.  *Id* at 71:20-73:8; 98:25-99:20; 118:23-1; 110:9-12; 114:21-115:15.  The duration of Plaintiff's engagement is undefined, but can be ended upon notice by either party.  Plaintiff dictated that Zimmer Biomet's payments be made to a separate corporation that specialized in providing consulting and solutions to physicians and that was free to sell products from multiple producers.  *Id.* at 239:19-243:20; 250:9-18; 256:9-17; Exhs. 1011-1016, 1020.  Further, Plaintiff's payment structure was for each device sold, as opposed to hours worked, Plaintiff could negotiate and adjust his commission take home, and Plaintiff's pay derived directly from his own successes or failures.  *Id.*

The primary and secondary *Borello* factors favor a finding of independent contractor status because Zimmer Biomet did not control the manner and means of Plaintiff's sales and consulting activities and Plaintiff's operations were an independent enterprise of which Zimmer Biomet was only one part.  As Plaintiff was an independent contractor under California's common law test, his expense reimbursement claim must fail.

**G.      Plaintiff's Seventh Claim Under the UCL Fails to the Extent It Is Derivative of the First, Second, Third, Fourth, and Sixth Claims.**

Plaintiff's claims under California's Unfair Competition Law, Business and Professions Code §§17200 *et seq.* ("UCL") are entirely derivative of the underlying liability alleged in his First, Second, Third, Fourth and Sixth Claims.  Because these predicate claims fail (as described *supra*), so too do his derivative UCL claims.  *See White v. Starbucks Corp.,* 497 F. Supp. 2d 1080, 1089-90 (2007) (granting summary judgment in favor of the defendant on the plaintiff's UCL claim when that claim was derivative of the plaintiff's failed meal and rest break claims).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

22

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

**H.** **Judgment on All Claims Should Be Entered In Favor of Defendants ZB Holdings and Biomet Inc. Because These Entities Did Not Jointly Employ Plaintiff.**

    **1.** **ZB Holdings Is Not Plaintiff's Joint Employer and Had No Relationship to Plaintiff**

The Ninth Circuit uses a four-factor test to determine whether a joint employment relationship exists. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *see also Campanelli v. ImageFirst Healthcare Laundry Servs., Inc.* No. 15-04556 PJH, 2019 WL 934545 (N.D. Cal. Feb. 16, 2018).  The four factors include whether the alleged joint employer (1) has the power to hire and fire the individual; (2) supervises and controls the individual's work schedules or conditions of employment, (3) determines the rate and method of payment of the individual, and (4) maintains employment records for the individual.  *Id.* The Ninth Circuit has advised that these four factors serve merely as guidelines; "they are not etched in stone and will not be blindly applied" and that "the determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity'", so as to determine the economic reality of the relationship. *Bonnette*, 704 F.2d at 1469 (quoting *Rutherford Food Corp.*, 331 U.S. at 730).

Here, ZB Holdings does not control and is not involved in the day-to-day sales operations or business of Zimmer Biomet (also referred to here as "the Orthopedics Entities").  Ritter Decl. at ¶5.  The persons who manage the sales operations of the Orthopedics Entities are not ZB Holdings employees; ZB Holdings exerts no direction or control over them; rather, Zimmer US employs them.  *Id.* at ¶¶5, 7.  In particular, ZB Holdings does not determine whether persons who sell the Orthopedics Entities' products are classified as W-2 employees or 1099 independent contractors, classified as exempt or non-exempt, or given any primary duty or specific day-to-day duties.  *Id.*  ZB Holdings does not control and is not involved in determining the specific amount of time persons who sell the Orthopedics Entities' products spend performing their activities away from any business location or office or how much time they spend engaging in sales activities (as opposed to other types of activities).  *Id.*  ZB Holdings does not hire or fire any sales

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

23

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA

1    employees, let alone those who contract with or are employed by the Orthopedics Entities.  *Id.* at

2    ¶6.  ZB Holdings does not contract with any independent contractor sales representatives like

3    Plaintiff Karl, and does not set or influence any method or amount of of payment to such

4    contractors.  *Id.*  ZB Holdings also maintains no employment records for any sales

5    representatives, including Plaintiff Karl.  *Id.*

6           As applied, each of the *Bonnette* factors demonstrates that ZB Holdings exerts no control

7    over its subsidiaries, and that its role solely as a parent company does not give rise to a

8    determination of joint employment.  Because no genuine issue of material fact exists regarding

9    ZB Holdings' lack of relationship with Plaintiff, summary judgment should be entered as to all

10   claims in its favor and against Plaintiff.

11                    **2.    Biomet, Inc. Is Not Plaintiff's Joint Employer and Had No
                              Relationship to Plaintiff.**

12

13          Biomet, Inc. is a wholly separate corporation from Zimmer US and the Orthopedics

14   Entities and had no relationship to Plaintiff at any time from June 2015 onwards.  Ritter Decl. ¶3.

15   From 2008 to August 2015, Plaintiff contracted as an independent contractor sales representative

16   with two independent distributors – Synergy and Motion Medical -- and in that role he sold

17   Biomet, Inc. products, but he never contracted directly with Biomet, Inc.  Karl Depo. at 63:10-

18   66:16 ("I had never been in contract with either Zimmer or Biomet directly…Before August

19   2015.")  After the Zimmer and Biomet merger, Biomet, Inc. was a completely separate corporate

20   entity from Zimmer US and the Orthopedic Entities.  Ritter Decl. at ¶3.   Plaintiff contracted only

21   with the Orthopedics Entities effective August 10, 2015, not with Biomet.  *See* Ex. 1001.

22          Similar to ZB Holdings, application of the *Bonnette* factors to the relationship (or lack

23   thereof) between Biomet, Inc. and Plaintiff demonstrates that Biomet, Inc. exerts no control over

24   the Orthopedic Entities, and that its existence as a "sister corporation" to Zimmer Us does not

25   give rise to a determination of joint employment.  Because no genuine issue of material fact exists

26   regarding Biomet, Inc.'s lack of relationship with Plaintiff, summary judgment should be entered

27   as to all claims in its favor and against Plaintiff.[7]

28   ───────────────────
     [7] It is also noteworthy that Plaintiff allegations of independent contractor misclassification pertain
     only to the period post-August 10, 2015, as evidenced by his testimony regarding his favorable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                    24                    MPA ISO MOTION
                                                       FOR SUMMARY JUDGMENT
DB2/ 37165861.1                                        18-CV-04176-WHA

1

2   IV.    **CONCLUSION**

3         The undisputed evidence and applicable law together demonstrate that the Court should

4   grant Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants and

5   against Plaintiff; and order all further relief in favor of Defendants that the Court finds

6   appropriate.

7   Dated:  September 5, 2019                    MORGAN, LEWIS & BOCKIUS LLP

8

9                                          By    _/s/ Eric Meckley_____
                                               Eric Meckley
10                                             Jason P. Brown
                                               Joseph Lewis
11
                                               Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  view of his contractor status when he was selling for distributors Synergy and Motion Medical
    prior to the merger.  Karl Depo. 70:23-71:19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37165861.1

25

MPA ISO MOTION
FOR SUMMARY JUDGMENT
18-CV-04176-WHA