MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Jason P. Brown, Bar No. 266472
jason.brown@morganlewis.com
Joseph R. Lewis, Bar No. 316770
joseph.lewis@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001

Attorneys for Defendants
ZIMMER BIOMET HOLDINGS, INC.; ZIMMER US, INC.; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET BIOLOGICS, LLC; and BIOMET, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES KARL, on behalf of himself, and on behalf of a class of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ZIMMER BIOMET HOLDINGS, INC., a Delaware corporation; ZIMMER US, INC., a Delaware Corporation; BIOMET U.S. RECONSTRUCTION, LLC, an Indiana limited liability company; BIOMET BIOLOGICS, LLC, an Indiana limited liability company; and BIOMET, INC., an Indiana Corporation,<br><br>Defendants. | Case No. 18-cv-04176-WHA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        October 24, 2019<br>Time:       8:00 A.M.<br>Courtroom: 12<br>Judge:      Hon. William H. Alsup |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ON REPLY ........................................................................................................ 1

    A. Plaintiff Failed to Raise a Triable Issue of Fact As to His Status As An Independent Contractor Under the FLSA's "Economic Reality" Test. .................. 1

        1. Plaintiff Has Not Raised a Triable Issue Re: Lack of Control by ZB. ......... 1

        2. Plaintiff Has Not Raised a Triable Issue Re: His Opportunity for Profit or Loss Being Dependent Upon His Managerial Skill. ..................... 4

        3. Plaintiff Has Not Raised a Triable Issue Re: His Investment in Equipment or Ability to Independently Retain Others to Help Him. ......... 5

        4. Plaintiff Has Not Raised a Triable Issue About His Special Skills and Knowledge. ............................................................................................ 6

        5. Plaintiff Has Not Raised a Triable Issue Re: the Length of His Relationship with ZB. .................................................................................. 6

        6. Plaintiff Has Not Raised a Triable Issue of Fact About Whether His Services Are Integral to ZB's Business. ........................................................ 6

    B. Plaintiff Failed to Raise a Triable Issue of Fact Re: His Status As An Exempt Outside Salesperson Under the FLSA. ....................................................... 7

    C. Plaintiff Failed to Raise a Triable Issue of Fact Re: His Status As An Exempt Outside Salesperson Under California Law. ............................................ 10

    D. Plaintiff Failed to Raise a Triable Issue of Fact Re: Whether He Was Provided With the Opportunity to Take Meal Periods and Rest Breaks. .............. 11

    E. Plaintiff Failed to Raise a Triable Issue of Fact As to His Claim For Expense Reimbursements Under the California Labor Code. ............................... 12

    F. Plaintiff Failed to Raise A Triable Issue of Fact As to His UCL Claim. ............... 13

    G. Plaintiff Failed to Raise A Triable Issue of Fact Sufficient to Show Defendants ZB Holdings and Biomet Inc. Jointly Employed Him. ....................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*
    765 F.3d 981 (9th Cir. 2014)................................................................................................1

*Arnold v. Mut. of Omaha Ins. Co.*
    135 Cal. Rptr. 3d 213 (Cal. Ct. App. 2011) .........................................................................2

*In re Barker*
    839 F3d 1189 (9th Cir. 2016)..............................................................................................13

*Benjamin v. B & H Educ., Inc.*
    877 F.3d 1139 (9th Cir. 2017)..............................................................................................15

*Benton v. Telecom Network Specialists, Inc.*
    220 Cal. App.4th 701, 163 Cal. Rptr. 3d 415 (2013)...........................................................12

*Bonnette v. Cal. Health & Welfare Agency*
    704 F.2d 1465 (9th Cir. 1983).............................................................................................15

*Bradley v. Networkers Internat., LLC*
    211 Cal.App.4th 1129 (2012)...............................................................................................12

*Brinker Restaurant Corp. v. Sup. Ct.*
    53 Cal.4th 1004 (2012) .......................................................................................................12

*Christopher v. SmithKline Beecham Corp.*
    567 U.S. 142 (2012)........................................................................................................9, 10

*Cole v. CRST Van Expedited, Inc.*
    932 F.3d 871 (9th Cir. 2019)...............................................................................................12

*D'Este v. Bayer Corp.*
    2007 WL 6913682 (C.D. Cal. Oct. 9, 1997).................................................................10, 11

*Dailey v. Sears, Roebuck & Co.*
    214 Cal.App.4th 974 (2013), *as modified* (Mar. 27, 2013)..................................................11

*Deal v. State Farm Cty. Mut. Ins. Co.*
    5 F.3d 117 (5th Cir. 1993).....................................................................................................2

*Desimone v. Allstate Ins. Co.*
    No. 96-3606, 2000 WL 1811385 (N.D.Cal. Nov. 7, 2000) ..................................................2

*Flores v. Velocity Express, LLC*
    250 F. Supp.3d 468, 484 (N.D. Cal. 2017) ..................................................................2, 6, 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

**TABLE OF CONTENTS**
(continued)

Page

*Garcia v. San Antonio Metro. Transit Auth.*
  469 U.S. 528 (1985) ...................................................................................................15

*Gonzalez v. Millard Mall Servs., Inc.*
  2012 WL 684590 (S.D. Cal. March 2, 2012) .............................................................11

*Hanslester Network v. Shalala*
  51 F.3d 1390 (9th Cir. 1995) ......................................................................................14

*Icicle Seafoods, Inc. v. Worthington*
  475 U.S. 709 (1986) .....................................................................................................8

*Iontchev v. AAA Cab Serv., Inc.*
  685 F. App'x 548 (9th Cir. 2017) .................................................................................5

*Jewel Tea Co. v. Williams*
  118 F.2d 202 (10th Cir. 1944) .....................................................................................9

*Johnson v. Serenity Transportation, Inc.*
  No. 15-CV-02004-JSC, 2016 WL 270952 (N.D. Cal. Jan. 22, 2016) .......................13

*Martinez v. Combs*
  49 Cal. 4th 35, 231 P.3d 259 (2010) ..........................................................................15

*Ordonez v. Radio Shack, Inc.*
  2013 WL 210223 (C.D. Cal. Jan. 17, 2013) ..............................................................11

*Polizos v. Boston Scientific Corp.*
  2011 WL 13225104 (C.D. Cal. May 13, 2011) ..........................................................8

*Radobanko v. Automated Equip. Corp.*
  520 F.2d 540 (9th Cir. 1975) .......................................................................................2

*Ramirez v. Yosemite Water Co. Inc.*
  20 Cal. 4th 785 (1999) ...............................................................................................10

*Real v. Driscoll Strawberry Assocs., Inc.*
  603 F.2d 748 (9th Cir. 1979) ...................................................................................4, 5

*Ruiz v. Affinity Logistics Corp*
  754 F.3d 1093 (9th Cir. 2014) ..................................................................................3, 4

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*
  48 Cal.3d 341 (1989) ............................................................................................12, 13

*Scantland v. Jeffry Knight, Inc.*
  721 F.3d 1308 (11th Cir. 2013) ....................................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

iii

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

# TABLE OF CONTENTS
(continued)

**Page**

*Taylor v. Waddell & Reed Inc.*
   No. 09-02909, 2013 WL 435907 (S.D. Cal. Feb. 1, 2013) ...................................................... 2

*Van Asdale v. Int'l Game Tech.*
   577 F.3d 989 (9th Cir.2009) ...................................................................................................... 2

*Villalpando v. Exel Direct Inc.*
   No. 12-CV-04137-JCS, 2015 U.S. Dist. LEXIS 118065 (N.D. Cal. Sept. 3,
   2015) ................................................................................................................................. 2, 5

*Yacoubian v. Ortho-McNeil Pharm. Inc.*
   2009 WL 3326632 (C.D. Cal. Feb. 6, 2009) ...................................................................... 10, 11

*Yeager v. Bowlin*
   693 F.3d 1076 (9th Cir. 2012) .................................................................................................. 2

**Statutes**

42 U.S.C.
   § 1320a-7b(b), *et seq.* .............................................................................................................. 13

Unfair Competition Law, Cal. Bus. & Profs. Code §§17200 *et seq.* ............................................. 13

**Rules and Regulations**

29 C.F.R.
   §541.500(b) ............................................................................................................................... 7
   §541.503(a) ............................................................................................................................... 7
   §541.700(a) ............................................................................................................................... 7

69 Fed. Reg. 22162 ........................................................................................................................ 9

Dept. of Labor, Wage and Hour Division, Report and Recommendations of the
   Presiding Officer at Hearings Preliminary to Redefinition, page 46 (1940) ............................ 9

IWC Wage Order 4-2001(1) (C) ................................................................................................... 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

iv

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

I.  **ARGUMENT ON REPLY**

  A.  **Plaintiff Failed to Raise a Triable Issue of Fact As to His Status As An Independent Contractor Under the FLSA's "Economic Reality" Test.**

The economic reality test is holistic, and courts look to all the factors, not any factor individually, to determine whether a triable issue of fact exists.  *See Alexander v. FedEx Ground Package Sys., Inc.,* 765 F.3d 981, 988 (9th Cir. 2014).  ("even if one or two of the individual factors might suggest [an employee relationship], summary judgment is nevertheless proper when…all of the factors [are] weighed and considered as a whole.").  Here, no triable issue of fact exists as to Plaintiff's status as an independent contractor under the "economic realities" test.

  1.  **Plaintiff Has Not Raised a Triable Issue Re: Lack of Control by ZB.**

Plaintiff argues that his contract (ECF 14-2 (hereinafter "SAS")) "severely curtails" his ability to work for companies other than ZB.[1] Opp. 13:2-3. However, he testified that he was free to, *and in fact did*, sell for several other companies at the same time he sold ZB products.  Karl Depo. 263:11-280:16; Exs. 1022-32. Plaintiff argues that ZB's requirement of certain training and oversight evidences control, however, the provisions he cites, set forth in the "Compliance" portion of his SAS at ¶¶3(h), (j), do not evidence "control" imposed by ZB over the manner and means by which he sold to surgeons, but rather reflect regulatory requirements imposed by law. Plaintiff argues that ¶6(h) of his SAS requires him to open his books and records "on demand", however, this provision only allows ZB an option to inspect such materials for compliance reasons and further guarantees that any such inspection will not interfere unreasonably with his business.  Plaintiff argues the SAS required him to attend certain compliance trainings and to follow procedures in ZB's Territory Manual relating to its products and their medical application to patients and physicians, but once again these provisions are tied directly to regulatory and/or compliance requirements imposed by law. In an industry as heavily regulated as medical device implants, many legal requirements exist. Plaintiff improperly conflates ZB's enforcement of these legal requirements with exercising the type of "control" indicative of an employment

---

[1] For ease of reference, the entities with whom Plaintiff contracted -- Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics LLC -- together are referred to herein as "ZB."

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  relationship under the economic realities test. *See Desimone v. Allstate Ins. Co.*, No. 96-3606, 2000 WL 1811385, at *13 (N.D.Cal. Nov. 7, 2000) (meetings and trainings mandated to ensure compliance with state and federal law are not evidence of employment); *see also Deal v. State Farm Cty. Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993); *Taylor v. Waddell & Reed Inc.*, No. 09-02909, 2013 WL 435907, at *6 (S.D. Cal. Feb. 1, 2013) ("allegations of 'control' pursuant to legal requirements are not employment indicia"); *Arnold v. Mut. of Omaha Ins. Co.*, 135 Cal. Rptr. 3d 213, 220 (Cal. Ct. App. 2011) (finding no significant right to control where agents were required to attend trainings offered for compliance with law). The cases Plaintiff cites are distinguishable because the trainings/procedures in those cases were not related to compliance. *See Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 U.S. Dist. LEXIS 118065, at *45 (N.D. Cal. Sept. 3, 2015) (none of the trainings considered as evidence of control were related to compliance), *See Flores v. Velocity Express, LLC,* 250 F. Supp.3d 468, 484 (N.D. Cal. 2017) (use of mandatory "standard operating procedures" relating to building control and customer service expectations evidenced control where none were mandated by law or implemented for compliance reasons).

Plaintiff cites to ¶5(c) of the SAS, which requires him upon termination of his relationship with ZB to assign phone numbers and e-mail accounts used in connection with his business on behalf of ZB. This provision, which clearly has *never been invoked* given Plaintiff's ongoing relationship with ZB, applies only to ZB-related numbers and accounts, is not unusual in the context of two independent businesses winding up their business relationship, and does not suggest the existence of any employment relationship.

Plaintiff states in his declaration that ZB "assigned" him to a territory, but this contradicts his deposition testimony that he specifically chose to sell within the Golden Gate territory on terms he negotiated and that had the freedom to and did sell in other territories. Karl Depo. 87:19-90:9; 110:18-111:5.  Plaintiff cannot create an issue of fact by contradicting his prior deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.2009).  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Radobanko v. Automated  Equip. Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975). Also, ZB has a catalogue of products available for sale, but it

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

2

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

does not "assign" them to Karl, who admitted he remained free to sell "the complete bag" (i.e., any and all types of products) to "enhance" his sales. *Id.* at 181:1-19.

While Plaintiff argues that "he is required to use several ZB platforms" to log his sales of ZB products, such usage does not evidence any material type of "control." As Plaintiff admitted, ZB's systems served solely as a platform to communicate whether a surgery was scheduled, cancelled or completed, and simply allowed ZB to know what types of devices/products were needed in inventory for surgeries. Karl Depo. 153:3-13; 154:3-155:24. Specifically, SMS was used to schedule "cases" and order existing inventory, while the PMI system was used "to communicate with [ZB] and the doctor…in order to design and order a modified version of a Zimmer Biomet product." Opp. 7:6-9. Both systems simply communicated information to ZB – none of which constitutes "control" over how he chose to sell to surgeons. Plaintiff also testified that he frequently did not even use ZB systems. Karl Depo. 207:23-209:17; Ex. 1010 (explaining his scheduling system was "a combination of your mind, emails from schedulers the doctors send you, your own personal calendar," and regarding use of a Google Calendar "I tried to appease [Team Golden Gate] as much as I could, but, you know, I have my own system.")

Plaintiff's remaining arguments that ZB "controlled" his work are flatly contradicted by his own deposition testimony. Plaintiff makes the vague and unsupported claim that ZB "follows up with sales reps on outstanding matters to ensure tasks are done on its schedules" and that "Don's watching," but he admitted in his deposition that he kept his own schedule, scheduled surgeries directly with the doctors he serviced, only used ZB's software to order products, and that Don Quigley did not control or dictate any of it. *Id.* at 228:10-231:4. He also admitted he did not have to cover other team members' cases or manage accounts for which he never made a sale. *Id.* at 227:4-228:3. And, while ZB sets the prices for its products, Plaintiff admitted he is not provided any training, guidance, or any other rules when it comes to sales, marketing, client relationships, or dealing with competitors. *Id.* at 186:24-187:5; 231:11-25.

Plaintiff cites *Ruiz v. Affinity Logistics Corp,* 754 F.3d 1093, 1096 (9th Cir. 2014) for the proposition that a worker can have his own company and bank account and still be under control of the employer, yet *Ruiz* actually illustrates the lack of control in Plaintiff's relationship with

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

3

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

ZB.  In *Ruiz*, the defendant *required* its contractors to take the steps to incorporate and set up corporate formalities, and *required* its contractors to have helpers (which defendant had to approve before hire).  Here, in contrast, ZB did not require Plaintiff to create either his corporate entity JWK Management or limited liabilty company Edge Medical -- he chose to do so entirely on his own.  Similarly, ZB did not require Plaintiff to retain helpers -- he had the independent discretion to hire or contract with whomever he wanted to help with his operation.

**2.  Plaintiff Has Not Raised a Triable Issue Re: His Opportunity for Profit or Loss Being Dependent Upon His Managerial Skill.**

Plaintiff argues that because his commissions were a percentage of Team Golden Gate's overall sales commission pool, his opportunity for profit or loss did not depend on his managerial skill.  His argument contradicts his deposition testimony and basic common sense. First, Plaintiff had the opportunity to negotiate his commission rates with ZB and/or other sales representatives on Team Golden Gate, but regrettably chose not to do so.  Karl Depo. 114:4-115:20. Second, he received a percentage of all of the sales commissions in the Team pool (to which his sales contributed) and thus he admitted that the commission pooling system incentivized him to increase his own business and that his profit and loss were proportional to his success in selling to doctors. *Id.* at 177:11-178:18.  His personal profits fluctuated (*see* Ex. 1012) because, as he testified, if you "increase your business, you and others on the team receive more compensation because of that." Karl Depo. 177:21-178:18. Plaintiff identified only two situations where the TGM Mr. Quigley supposedly influenced compensation by (1) divvying up "leftover" commissions when a team member left, and (2) choosing to reimburse certain business expenses. The former is ancillary to the overall commission structure and has no relationship to the industry or ambition of any party.  Plaintiff's "relative investment" and expenses are addressed *infra*.

Plaintiff cites *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) to argue that the managerial skills of ZB ultimately determined his commissions, rather than his own judgment and industry.  In *Real*, the employer argued unsuccessfully that a strawberry picker's "judgment and industry in weeding, dusting, pruning and picking" impacted commissions more than the company's "developing fruitful varieties of strawberries, in analyzing

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB2/ 37363096.1

4

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

soil and pest conditions, and in marketing." Here, the contrast with *Real* is not simply "apples to oranges"; it is the obvious difference between picking strawberries and selling orthopedic implants. As he testified in deposition, Plaintiff took home *more money* when he found ways to *sell more* ZB products to surgeons. Plaintiff's attempt to distinguish *Iontchev v. AAA Cab Serv., Inc.,* 685 F. App'x 548, 550 (9th Cir. 2017) falls flat because, like the drivers in that case, Plaintiff here admitted that (1) he had his own clientele of surgeons, and (2) he directly profited from increasing his sales.

### 3. Plaintiff Has Not Raised a Triable Issue Re: His Investment in Equipment or Ability to Independently Retain Others to Help Him.

Plaintiff's Opposition cannot negate his testimony affirming his investment in his sales practice and Zimmer's lack of involvement in or reimbursement thereof. Plaintiff in his own discretion invested in his home office, vehicle, cell phones, and other items and expenses to facilitate his sales for Zimmer Biomet and the other entities he serviced. Karl Depo. 304:11-23. He invested in creating various business entities to facilitate his sales, including Edge Medical, LLC. He chose to use an Edge Medical credit card for expensing sales-related activities for both Zimmer Biomet and others. *Id.* at 260:20-261:4. Plaintiff also independently contracted with others to assist him and paid these helpers without ZB's knowledge, let alone "control." Plaintiff admitted that he could and did subcontract to others a variety of different tasks, such as assistance with surgery coverage and post-operation cleaning. Karl Depo. 143:23-144:10; 144:23-145:1; 146:16-148:21; 152:2-5. While Plaintiff argues incorrectly that retaining someone to assist him is "like any team of employees," he omits the fact that when he made those arrangements, ZB "didn't have any say in that." *Id.* at 144:16-147:17. The cases cited in his Opposition are distinguishable because, unlike ZB, the defendants in those cases exerted control and discretion over any hiring decisions by the contractor. *See Villalpando,* 2015 US. Dist. LEXIS 118065 at *45. (defendant decided on all hires, not contractor); *Scantland v. Jeffry Knight, Inc.*, 721, F.3d 1308, 1317 (11th Cir. 2013) (any hires first had to be contracted with the employer). Contrary to Plaintiff's unfounded arguments, ZB did not require him to cover surgeries on behalf of other sales representatives, a fact illustrated by his unilateral decision to remove himself from the Team

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

5

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

Golden Gate call schedule and remove himself from working on any other sales rep's cases and limit his work to those surgeries performed by his network of loyal surgeons. *Id.* at 227:4-228:3 (which ZB neither objected to nor prohibited).

### 4. Plaintiff Has Not Raised a Triable Issue About His Special Skills and Knowledge.

Plaintiff's argument that his services do not require any particular education or training defies common sense and the undisputed facts. Plaintiff holds a college degree in physical therapy and worked in the medical device industry for more than 17 years. *Id.* at 56:13-23, 61:5-66:14. He testified that his special skills and knowledge allowed him "solution sell" to physicians and set him apart from competitors. *Id.* at 179:9-180:6. The case he cites, *Flores v. Velocity Express, LLC,* involved delivery drivers who had to lift boxes and unload trucks, duties quite unlike Karl advising orthopedic surgeons about the safe and effective implantation of artificial hips and knees during complex surgeries.

### 5. Plaintiff Has Not Raised a Triable Issue Re: the Length of His Relationship with ZB.

Plaintiff's Opposition fails to address his unilateral decision to restructure his relationship with ZB and contract with an independent distributor (Harry Fegan in the North Bay), while choosing simultaneously to work with physicians in San Francisco to provide them access to Zimmer Biomet products. Karl Depo. 88:25-90:9. His Opposition also fails to address the fact that through his Edge Medical business, he contracted with and sold products for other medical device companies (including some of ZB's competitors). *Id.* at 263:11-280:16; Exs. 1022-32. Plaintiff's citation to ¶7(a) of the SAS is misleading because that provision is limited in scope and relates only to selling products that compete with ZB products (a prohibition that Plaintiff admittedly chose not to abide by).

### 6. Plaintiff Has Not Raised a Triable Issue of Fact About Whether His Services Are Integral to ZB's Business.

ZB designs, manufactures, and markets medical device and biologics products, but like other manufacturers of a wide range of products, ZB relies on other entities to actually sell the

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB2/ 37363096.1

6

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

products it designs.  Plaintiff/Edge Medical's sales business exists to sell orthopedic products of a variety of companies. The relationship is not exclusive: Plaintiff's business would survive irrespective of Zimmer Biomet, and vice versa.

> **B.     Plaintiff Failed to Raise a Triable Issue of Fact Re: His Status As An Exempt Outside Salesperson Under the FLSA.[2]**

Plaintiff argues that his "primary duty" is not "sales."[3] Opp. 16:7.  This argument withers in the light of his unequivocal testimony that his primary job function as a sales representative was selling.  Karl Depo. 82:17-83:2. His testimony describing his role as a sales representative -- astutely summarized by his statement "We are salespeople, and we are driven by sales." (*Id.* at 101:19-210) -- should be dispositive of his overtime claim.  Under the FLSA, the "primary duty" is "the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. §541.700(a). In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences. 29 C.F.R. §541.500(b). Exempt outside salesperson work also includes "promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations." 29 C.F.R. §541.503(a). Here, Plaintiff testified under penalty of perjury:

> Q.: So given what you described in terms of the, you know, the doctors you work with and as well as the way you're compensated, do you think it's fair to say that getting doctors to use more Zimmer products is really, like, one of your main goals as a sales rep?
> A.: Yes.
> Q.: Do you think it's fair to say that that's your most important goal as a sales rep?

---

[2] Plaintiff initially argues the Court should deny summary judgment because there has been no showing that he is an employee, however, he provides no support for this odd argument and it contradicts the very purpose of summary judgment to weed out non-meritorious claims.
[3] Plaintiff concedes the second criteria to qualify as an outside salesperson (*i.e.*, the majority of work performed outside of the workplace) has been met here.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

7

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

A.: Yes.  Karl Depo. 185:15-24

The ultimate decision regarding whether a person's activities qualify as "exempt" is a question of law to be resolved by the Court. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (whether particular activities excluded plaintiff from "overtime benefits of the FLSA is a question of law"). Here, Plaintiff admitted the time he spent with physicians during surgeries was the *sine qua non* of his "solution selling" sales technique and that essentially all of his activities, including attending surgeries, were part of selling ZB products to his surgeon customer base. Karl Depo. 127:5-17; 177:6-185:24. Attending surgeries constituted exempt sales and promotional work for Plaintiff because he testified that being present at surgeries allowed him to develop relationships with surgeon, hold on to existing sales, promote new ZB products, keep out competitors, and develop future sales. *Id.* at 175:17-177:5; 180:21-181:5.  Plaintiff failed to distinguish the holding in *Polizos v. Boston Scientific Corp.*, 2011 WL 13225104, at *7 (C.D. Cal. May 13, 2011) that attending implant procedures is in furtherance of the primary job function of selling and promoting the sale of medical device products.  Thus, the 60-70% of his time attending surgeries with surgeons (Opp. 17:1-2; Karl Depo. 223:7-25) clearly qualified as exempt outside sales duties under the FLSA.

Plaintiff argues that his communications with doctors during surgeries do not constitute exempt sales activities supposedly because they occur after the sale has been made.  Opp. 17:5-8. This argument is factually incorrect -- a final sale occurs when a product is used (*i.e.*, implanted) during a surgery. Regarding the process, Plaintiff requests that multiple products be delivered to the hospital for the surgery, yet many products shipped to the hospital are never used.  For example, ZB will provide different sizes of hip implants to accommodate potential differences in a patient's anatomy that may only become apparent during surgery. Items that are not opened and implanted are not used, not "sold," and are returned to inventory. After the surgery, Plaintiff provides ZB with information regarding the products actually used, and ZB generates a "Purchase Order Request Form" that is sent to the hospital.  The hospital reconciles the Purchase Order Request Form with its own record of the products actually used during surgery, and to the extent the products match, the hospital then issues a Purchase Order and ZB invoices the hospital for

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB2/ 37363096.1

8

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

1  payment. Thus, Karl attends surgeries *before* the sale, not after. Plaintiff's argument is also
2  incorrect for the separate and perhaps more important reason that attending surgeries with doctors
3  is critical to promoting ZB products to ensure continuing and future sales of ZB products, as he
4  admitted in his deposition. Karl Depo. 127:5-17; 177:6-185:24; 223:7-25.

Plaintiff also failed to distinguish the United States Supreme Court holding in *Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142, 151 (2012), which broadly interpreted the applicability of the outside sales exemption, finding that pharmaceutical sales representatives whose "primary objective was to obtain a nonbinding commitment from the physician to prescribe [the employer's] drugs in appropriate cases" qualified as exempt outside salespersons. The Supreme Court in *Christopher* relied upon the Dept. of Labor, Wage and Hour Division, Report and Recommendations of the Presiding Officer at Hearings Preliminary to Redefinition, page 46 (1940) and the preamble to the 2004 regulations, 69 Fed. Reg. 22162, which made clear that the requirement of "sales" is met whenever an employee "in some sense make[s] a sale." The Supreme Court also commented that pharma sales reps who earned more than $70,000 per year and worked 50-60 hours per week on work within their assigned sales territory "are hardly the kind of employees that the FLSA was intended to protect." 567 U.S. 166.

That same statement could hardly be more true for James Karl, who regularly earned in excess of $130,000 annually, who kept his own schedule and did not report to any ZB office, who operated independently using his own corporate and LLC companies, and whose sales to surgeons were far more direct and tangible than the pharma reps in *Christopher*. Karl Depo. 178:9-18. Plaintiff cites dicta from *Jewel Tea Co. v. Williams,* 118 F.2d 202, 207-208 (10th Cir. 1944) to argue that he is not an outside salesperson because of the Team Golden Gate commission pooling arrangement. Unlike the situation in *Jewel*, however, Plaintiff admitted he received commissions as his sole source of compensation and his commission arrangement incentivized him to sell more, because the more commissions he generated from his own sales, the larger the Team Golden Gate overall commission pool, and thus the higher dollar amount of commission money he would receive. This dicta in *Jewel* fails to support Plaintiff's argument.[4]

---

[4] In addition, Plaintiff's argument that he did not sign Purchase Orders is irrelevant and immaterial to whether he qualifies as an exempt outside salesperson, given the Supreme Court's

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

9

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

### C.  Plaintiff Failed to Raise a Triable Issue of Fact Re: His Status As An Exempt Outside Salesperson Under California Law.

The reasoning behind the creation of the outside sales exemption in California is clear:

> Outside salesman have historically been exempt because it's very difficult to control their hours and working conditions. They set their own time, and they're on the road, they call on their customers . . . Rarely do you know what they're doing on an hour-to-hour basis."

DLSE Opn Letter, Sept. 8, 1998, p. 2.

The exemption requires a person spend more than 50% of his time engaged in exempt sales duties. Whether Plaintiff met this threshold depends upon how he spent his time, as well as ZB's reasonable expectations thereof. *Ramirez v. Yosemite Water Co. Inc.*, 20 Cal. 4th 785, 802 (1999). Activities qualify as exempt (and count toward the 50% threshold) if they constitute sales activities or "sales related activities." *Id.* at 801. "Sales related activities" under California law include such tasks as preparation time, travel time, and paperwork. *Id.* The federal district court in *D'Este v. Bayer Corp.*, 2007 WL 6913682, at *4-5 & n.2 (C.D. Cal. Oct. 9, 1997), applied the FLSA's definition of incidental sales activities to hold that pharmaceutical sales reps are outside salespersons *under California law*. Likewise, in *Yacoubian v. Ortho-McNeil Pharm. Inc.,* 2009 WL 3326632 (C.D. Cal. Feb. 6, 2009), the federal district court held that California's outside sales exemption largely mirrors the FLSA and that pharmaceutical sales reps were outside salespersons because they "spent their time outside the office, visiting physicians to convince them to prescribe certain drugs," and because there is "no evidence to show that Plaintiffs' efforts were directed toward anything else." *Id*. at *6 ("They were not researchers or accountants or distributors or delivery drivers who sold some of their employers' product while they performed their other duties.  Plaintiffs were sales people…")  The federal court in *Yacoubian* considered as "sales related" activities the time spent "establishing relationships with physicians," "discussing the 'scientific basis' for prescribing Ortho drugs"; and "highlighting to physicians the superiority

---

statement in *Christopher* that "the DOL has made it clear that '[e]xempt status should not depend' on technicalities, such as 'whether it is the sales employee or the customer who types the order into a computer system and hits the return button,' Preamble 22163, or whether 'the order is filled by [a] jobber rather than directly by [the employee's] own employer,' 1949 Report 83." 567 U.S. at 149.

DB2/ 37363096.1

10

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of Ortho's drugs over competitive brands" among others. *Id.* at *1. Given the holdings *D'Este* and *Yacoubian*, Defendants submit that it is impossible to read Plaintiff's deposition testimony regarding his sales and sales-related activities and not conclude that he qualified as an exempt salesperson under California law.

Plaintiff's Opposition fails to distinguish *Yacoubian*, making only the irrelevant point that the sales reps in that case promoted pharmaceuticals to doctors, while he sold orthopedic implants to surgeons. Opp. 20:27-28, fn2. As set forth above and in Defendants' moving papers, Plaintiff testified that he is a salesman, attending surgeries to interact with surgeons is a critical part of the overall sales process, and everything he does with surgeons is related to making a sale. It is undisputed that the 60-70% of Plaintiff's time interacting with physicians during surgery qualifies as exempt sales and sales-related duties. Accordingly, summary judgment is warranted here.

### D. **Plaintiff Failed to Raise a Triable Issue of Fact Re: Whether He Was Provided With the Opportunity to Take Meal Periods and Rest Breaks.**

California's meal and rest period requirements do not apply to outside sales employees (*see* Wage Order 4-2001(1) (C)) and thus his claims should be dismissed. Apart from his exempt status, his claims still fail. Notably, his Opposition does not assert any *unlawful* meal or rest break policy, but instead argues that the *absence* of a policy proves his claims. Yet Plaintiff ignores *Dailey v. Sears, Roebuck & Co.,* 214 Cal. App. 4th 974, 1001 (2013), *as modified* (Mar. 27, 2013), which addressed a situation in which defendant had no written policy for meals and rest breaks and did not communicate anything in this regard to its exempt employees (who, akin to Plaintiff here, were alleging misclassification). The court in *Dailey* rejected plaintiff's argument that the absence of a formal policy constituted a violation, stating: "[n]othing in Dailey's evidence indicates that Sears *prohibits* class members from taking uninterrupted meal and rest breaks, or that it has a uniform policy of *requiring* 'on-duty' meal and rest breaks." *Id.* Plaintiff similarly failed to address the other cases Defendants cited wherein federal courts found that plaintiffs must show "a uniform corporate policy *denying* employees the opportunity to take breaks." *Gonzalez v. Millard Mall Servs., Inc.,* 2012 WL 684590*,* at *8 (S.D. Cal. March 2, 2012) (emphasis added); *Ordonez v. Radio Shack, Inc.,* 2013 WL 210223, at *11 (C.D. Cal. Jan. 17, 2013) (in the absence

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB2/ 37363096.1

11

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

of evidence of a written policy, whether a "defendant *may* have an illegal, written rest break policy is insufficient.")

Plaintiff relies on two decisions, neither of which reached the merits of the dispute. *Benton v. Telecom Network Specialists, Inc.,* 220 Cal. App. 4th 701, 727, 163 Cal. Rptr. 3d 415, 435 (2013) ("TNS's assertion that it was not required to adopt the sort of meal and rest break policy envisioned by plaintiffs goes to the merits of the parties' dispute. The question of certification, however, is "'essentially a procedural one that does not ask whether an action is legally or factually meritorious.'"); *Bradley v. Networkers Internat., LLC*, 211 Cal.App.4th 1129, 1150 (2012) (at class certification "the court must focus on the plaintiff's theory of recovery…Although an employer could potentially defend these claims.")  Plaintiff correctly notes that the Ninth Circuit recently certified to the California Supreme Court the question of whether the absence of a formal policy regarding meal and rest breaks violates California law. *Cole v. CRST Van Expedited, Inc*., 932 F.3d 871, 873 (9th Cir. 2019), however, has no bearing on the present resolution of Plaintiffs claims, particularly given his admissions that he can take breaks in his discretion.  Karl Depo. 284:11-285:10. Quite simply, no one at ZB discouraged him or prevented him from taking meal or rest breaks or scheduling his own breaks at whatever frequency or duration he wanted.  *Id.* at 280:17-281:14; 283:19-284:25.  It is undisputed that ZB did not exercise any coercion to deprive him of breaks as required by *Brinker.  See Brinker Restaurant Corp. v. Sup. Ct.,* 53 Cal.4th 1004, 1031 (2012). Plaintiff essentially concedes in his Opposition that, to the extent he does not take a meal or rest break, it is a matter of personal choice (i.e., he "feels a *personal* obligation to do whatever it takes to assist a patient in the operating room") Opp. 21:17-18 (emphasis added).  Plaintiff also contends that once a surgery begins, he chooses not to leave until it concludes, but he provides no admissible evidence regarding the length of any surgery and thus fails to raise a triable issue as to whether he even became eligible to take a meal or rest break during the course of any surgery.

E. **Plaintiff Failed to Raise a Triable Issue of Fact As to His Claim For Expense Reimbursements Under the California Labor Code.**

The parties agree that the applicable common law test articulated in *S.G. Borello & Sons,*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

12

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

1  *Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 350 (1989) ("*Borello*") applies here.
Defendants have established *supra* and in their moving papers that there is no genuine issue of material fact that Plaintiff was not under ZB's control in the performance of his duties.  Based on this primary factor, the Court should rule that Plaintiff was not a ZB employee under *Borello*.

Plaintiff argues that incorporation of the FLSA control analysis into the *Borello* test is incorrect, yet he is mistaken. "California's common law test is so similar to federal law that at least one court in this District has declined to apply the California rules separately and instead applied the FLSA test even to state law labor claims." *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2016 WL 270952, at *15, n. 9 (N.D. Cal. Jan. 22, 2016); *see also Flores v. Velocity Express*, LLC, 250 F. Supp. 3d 468, 479 (N.D. Cal. 2017).  Indeed, the analysis of control is interchangeable between the FLSA and the California common law *Borello* test, and as applied, Plaintiff qualifies as an independent contractor under California law.

As to the secondary *Borello* factors, Plaintiff testified to his skill and independence of performing his work, his work performed with other entities apart from ZB, his payment of his own expenses, his receipt of solely commissions derived from his sales efforts, and his express classification under this SAS as an independent contractor.  The secondary *Borello* factors further confirm Plaintiff's independent contractor status and his expense reimbursement claim fails.

### F.   Plaintiff Failed to Raise A Triable Issue of Fact As to His UCL Claim.

Plaintiff's UCL claims are entirely derivative of the underlying claims alleged in this action.  Plaintiff's reliance upon the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), *et seq.*, is misplaced for numerous reasons.  First, neither in his UCL claim nor elsewhere in his operative Complaint does Plaintiff even mention the AKS law, let alone allege directly or by implication that Defendants have violated it. Thus, he cannot now assert the AKS as a basis for his UCL claim.  *In re Barker*, 839 F3d 1189, 1195 (9th Cir. 2016) (party is conclusively bound by factual allegations in his pleadings in the current litigation). Second, the AKS is immaterial to his claims for alleged unpaid overtime, meal and rest periods, etc. under the FLSA and California Labor Code, because these different laws employ different legal standards and speak to entirely different issues, e.g., whether the government could prove a criminal violation of the AKS simply

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

13

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

has no bearing on whether, for example, Plaintiff qualified for the outside sales person exemption and would not be entitled to overtime. Third, the UCL allows only restitutionary relief, not damages, and Plaintiff has failed to explain how, for example, he would be entitled to restitution based on any supposed violation of the AKS, which is a criminal statute.  Fourth, Plaintiff's argument that retaining him as a commission-based independent contractor sales representative is per se illegal under the AKS is simply not accurate.  Both Ninth Circuit case law and U.S. Department of Health and Human Services Office of Inspector General ("OIG") Advisory Opinions indicate that proving a violation of the AKS's prohibitions against "arranging for or recommending" the purchase of covered items requires evidence of actual "bad intent," meaning an intent to exert improper influence over the ultimate decision maker.  Specifically, in *Hanslester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995), the Ninth Circuit held that the inducement requirement of the AKS requires some intent to "exercise influence over the reason or judgment of another."  Similarly, in Advisory Opinion 98-10 (August 31, 1998), the OIG did not impose AKS sanctions related to a marketing arrangement in which a manufacturer of medical supplies paid commission-based compensation to an independent sales agent to market the manufacturer's products, where the independent agent was not in a position to exert improper influence over a person's decision to order the products.  The OIG reiterated this position in Advisory Opinion 99-3 at 5.1 (March 16, 1999) and in both opinions outlined a multi-factor review of the criteria relevant to proving any violation.[5] Here, Plaintiff has not even attempted to present any evidence to demonstrate violation of the AKS based on these criteria.  Finally, Plaintiff's citation to *Zimmer, Inc. v. Nu Tech Medical, Inc.* is inapposite because that case involved a contract with a distributor that was different than the direct contractor agreement with Plaintiff at issue in this case (including, specifically, the provisions that prohibited Karl from making payments to doctors to induce them to order ZB products (SAS ¶¶ 5(b)(i), 6(c), 13(a)) and, most importantly, the *Nu Tech* case did not speak at all to the issues of independent contractor classification or applicability of the outside salesperson exemption.

---

[5] Both OIG Advisory Opinions are attached as exhibits to Defendants' Request for Judicial Notice filed in support of this Reply.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

14

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA

### G. Plaintiff Failed to Raise A Triable Issue of Fact Sufficient to Show Defendants ZB Holdings and Biomet Inc. Jointly Employed Him.

Plaintiff argues in his Opposition that ZB Holdings and Biomet share liability because they are parties to Mr. Karl's contract, *not because they are joint employers*. Opp. 25:2-3. With his reframing of this issue, both entities should be dismissed because they are not parties to the SAS, not defined as the "Company" in the SAS, and are not signatories to the SAS. Plaintiff claims that because these entities were described as "affiliates" to the entities that did contract with him, this makes all such affiliates parties to the contract, yet he provides no support for such a conclusion. To the extent the Court analyzes whether a joint employment relationship exists, summary judgment nonetheless remains warranted. Plaintiff bears the burden to present facts establishing joint employment. Other than arguing that both entities are corporate "affiliates" to the contracting parties in the SAS (Opp. 25:26-26:1), he has failed to present any evidence to show that either ZB Holdings or Biomet (1) had the power to hire and fire him; (2) supervised and controlled his work schedule or conditions of employment; (3) determined the rate and method of payment of the individual; or (4) maintained any of his "employment" records. *See Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *Martinez v. Combs*, 49 Cal. 4th 35, 72, 231 P.3d 259, 284 (2010), as modified (June 9, 2010).

Plaintiff cites *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017) for the proposition that the joint employer test under California law, "is a little different," but that court likewise found a lack of evidence showing control by the alleged joint employer, and that the "California state law claim thus fails for the same reasons as the federal law claim fails." Here, the evidence about these corporate entities lack of involvement in any of the relevant criteria is undisputed, and ZB Holdings and Biomet are entitled to judgment on all of Plaintiff's claims.

Dated: September 26, 2019          MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Eric Meckley*
Eric Meckley
Attorneys for Defendants

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 37363096.1

15

REPLY ISO MOTION
FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-04176-WHA