1   LOHR RIPAMONTI & SEGARICH LLP
    Jason Lohr (CA SBN 262267)
2   Alec Segarich (CA SBN 260189)
    140 Geary Street, 4th Fl.
3   San Francisco, CA 94108
    Ph: (415) 683-7266
4   Fax: (415) 683-7267
    Email: jason.lohr@lrllp.com
5   Email: alec.segarich@lrllp.com

6   SCHERER SMITH & KENNY LLP
    Denis Kenny (SBN 178542)
7   140 Geary Street, 7th Fl.
    San Francisco, CA 94108
8   Ph: (415) 433-1099
    Fax: (415) 433-9434
9   E-Mail: denis@sfcounsel.com

10  *Attorneys for Plaintiff and proposed Class Members*

11
              UNITED STATES DISTRICT COURT
12           NORTHERN DISTRICT OF CALIFORNIA
               SAN FRANCISCO DIVISION
13

14

15  JAMES KARL, on behalf of himself, and on       CASE NO.: 18-cv-04176-WHA
    behalf of a class of those similarly situated,
16                                                  **PLAINTIFF'S NOTICE OF MOTION**
           Plaintiffs,                              **AND MOTION FOR CLASS**
17                                                  **CERTIFICATION**
           v.
18
    ZIMMER BIOMET HOLDINGS, INC., a
19  Delaware corporation; ZIMMER US, INC.,          Date:        June 18, 2020
    a Delaware corporation; BIOMET U.S.             Time:        8:00 a.m.
20  RECONSTRUCTION, LLC, an Indiana                 Courtroom:   12
    limited liability company; BIOMET               Judge:       Hon. William Alsup
21  BIOLOGICS, LLC, an Indiana limited
    liability company; and BIOMET, INC., an
22  Indiana corporation;

23         Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

NOTICE OF MOTION AND MOTION ............................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................... 1

   A.    Plaintiff seeks to represent independent contractor sales representatives who predominate Zimmer's sales force. .................................................................... 1

     1.   Sales representatives contract with the Zimmer Defendants. .................................. 3

     2.   Zimmer uses standardized contracts and implements national polices. .................. 3

     3.   Sales representatives solely receive commissions and no benefits. ........................... 5

     4.   Sales representatives can be terminated for any or no reason at all. ........................ 6

     5.   Sales representatives have the same duties, and are governed uniformly. ............... 6

     6.   Sales representatives rely on Zimmer to supply the tools for their jobs. .................. 8

     7.   Zimmer determines how its products are marketed, the prices charged, and the commissions earned by sales representatives. .................................................................... 9

     8.   Plaintiff and other sales representatives had the same experiences in their work. 10

III. ARGUMENT ........................................................................................... 11

   A.    The class of sales representatives satisfies the requirements of Rule 23(a). ........... 12

     1.   The members of the class are so numerous that joinder is not practical. ............... 12

     2.   Common questions of law and fact will drive the resolution of Plaintiff's claims. 13

     3.   Mr. Karl's claims are typical of the class claims. ..................................................... 16

     4.   Mr. Karl and class counsel will adequately protect the interests of the class. ....... 16

   B.    The Putative Class Satisfies Rule 23(b)(3). .............................................................. 17

1.  **Common questions predominate over questions affecting individual class members.** ....................................................................................................... 17

    i.    **The common law tests for governing worker classification in California** ....... 18

2.  **Common issues will predominate the Court's analysis under *Borello*** .................... 19

    i.    **Common issues will predominate the Court's analysis under the ABC test.** . 21

    ii.    **Sales representatives' entitlement to reimbursements under Lab. Code § 2802 is a common question.** ............................................................................ 21

    iii.    **Common questions predominate Plaintiff's UCL claims.** ................................ 22

3.  **A class action is the superior means to address these workers' claims.** .................. 24

**IV. CONCLUSION** ................................................................................................ 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013)..............................................16

*Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012) .......................................17

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ....................................................................21

*Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522 (2014).....................................17, 24

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).......................................................................16

*Bowerman v. Field Asset Servs.*, 2018 U.S. Dist. LEXIS 84214, *50 (N.D. Cal. May 18, 2018) ........................................................................................................................................28

*Comcast v. Behrend*, 569 U.S. 27 (2013) ..................................................................................22

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) ............................27, 28

*Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555 (S.D. Cal. 2010) ....................................18, 24

*Dep't of Indus. Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084 (1997)......................28

*Dynamex Operations W. v. Sup. Ct.*, 4 Cal.5th 903 (2018) ................................................23, 24

*Ellis v. Costco Wholesale Corp.*,  657 F.3d 970 (9th Cir. 2011) ...............................................21

*Espejo v. The Copley Press, Inc.* 13 Cal.App.5th 329 (2017) ....................................................28

*Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198  (N.D. Cal. Oct. 5, 2011)................25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) .............................................17, 18, 21

*Harris v. Best Buy Stores*, L.P., 2016 WL 4073327 (N.D. Cal. Aug. 1, 2016) ........................28

*Hopkins v. Stryker Sales Corp.*, 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. May 14, 2012).......27

*In re LendingClub Secs. Litig.*, 282 F. Supp. 3d 1171 (N.D. Cal. 2017)........................21, 22, 29

*Johnson v. Serenity Transp., Inc.* 2018 U.S. Dist. LEXIS 129241 (N.D. Cal. Aug. 1, 2018) ........................................................................................................................................26

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ........................................18

*Moreno v. JCT Logistics, Inc.*, 2019 U.S. Dist. LEXIS 117342 (C.D. Cal. May 29, 2019).......23

*Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010)...............................21, 25

*O'Connor v. Uber Tech.*, 2015 U.S. Dist. LEXIS 116482 (N.D. Cal. Sep. 1, 2015) ................19

*Palacios v. Penny Newman Grain, Inc.* 2015 U.S. Dist. LEXIS 87457 (E.D. Cal. July 6, 2015) ..................................................................................................................................29

*Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008)...................................29

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989)........................23

*Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 117047 (N.D. Cal. Sept. 5, 2008) ...........................................................................................................................18

*Soto v. Diakon Logistics (Del.), Inc.* 2013 U.S. Dist. LEXIS 119028 (S.D. Cal. Aug. 21, 2013) ..................................................................................................................................18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir 2003) ...................................................................17

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ................................................23

*Villalpando v. Exel Direct Inc.* 303 F.R.D. 588 (N.D. Cal. 2014).............................................24

*Walker v. Life Ins. Co. of the SW*, 953 F.3d 624 (9th Cir. 2020)..............................................22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..............................................................18

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) .......................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)...............................21

*Zimmer, Inc. v. Nu-Med Medical Inc.*, 54 F.Supp.2d 850 (N.D. Ind. 1999)..............................20

**STATUTES**

42 U.S.C. § 1320-7b ...................................................................................................................19

Cal. Bus. & Prof. Code § 17200 ..............................................................................................6, 19

Cal. Lab. Code § 226 ...............................................................................................................6, 20

Cal. Lab. Code § 226.8 ................................................................................................29

Cal Lab. Code § 245 *et seq.* ......................................................................................19

Cal. Lab. Code § 2750.3 .............................................................................................24

Cal. Lab. Code § 2802 .................................................................................6, 19, 26

Fed. R. Civ. P. 23 ................................................................................16, 18, 21, 22

-v-

1

**NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE that, on June 18, 2020 at 8:00 a.m., or as soon thereafter as the

3  matter may be heard before the Honorable William Alsup, in Courtroom 12 of this Court, located

4  at 450 Golden Gate Ave., 19th Floor, San Francisco, California, Plaintiff James Karl ("Plaintiff")

5  will, and hereby does, move the Court to certify this class action.

6          Plaintiff seeks certification of a Class composed of:

7

8          Any person who, during the period commencing four years prior to the date of
           this lawsuit to the present, was hired or otherwise engaged as an independent

9          contractor for the purposes of solicitation or sales of Zimmer Biomet products
           and/or services in California by ZIMMER US, INC., BIOMET U.S.

10         RECONSTRUCTION, LLC, and BIOMET BIOLOGICS, LLC.

11

12         Plaintiff further requests that this Court appoint named plaintiff's counsel to serve as

   class counsel.

13         This Motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure, on the

14  ground that Plaintiff meets the requirements for class certification under Rules 23(a) and

15  23(b)(3). This Motion is based on this Notice of Motion and Motion, the accompanying

16  Memorandum of Points and Authorities in Support of Class Certification, declarations in support

17  thereof, any oral argument that may be heard, the complete files and record of this action, and

18  such other and further matters as the Court may properly consider.

19

20                                                    Respectfully submitted,

21

22   Dated: April 23, 2020                            LOHR RIPAMONTI & SEGARICH LLP

23                                                    */s/ Jason Lohr*

24                                                    _____

25                                                    Jason Lohr

26

27

28

-vi-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This case follows a well-worn path in California. For years, employers have classified employees as independent contractors to avoid taxes and other important employee benefits. But in April 2018, the California Supreme Court issued its decision in *Dynamex Operations West, Inc. v. Superior Court*. In that case, the court reaffirmed California's longstanding policy that most workers are employees and ought to be classified as such, and introduced a new legal test to that end. Amidst substantial lobbying to undo *Dynamex*, shortly thereafter the California legislature passed Assembly Bill 5, which codified that landmark decision and expanded its application to the full panoply of protections for employees under the Labor Code.

Defendants (hereafter Zimmer) are among many employers that chose to classify employees central to their operations as independent contractors. However, the individuals classified as independent contractors in this case work in the medical field, and their jobs literally impact the health and safety of patients who receive Zimmer's medical devices. Frankly, the notion that Zimmer does not control these individuals would be frightening. Fortunately, the evidence demonstrates that sales representatives working for Zimmer are subject to exceptional control and monitoring (as should be the case). And as a result, the proposed class here should be deemed employees utilizing either of California's common law and statutory tests.

### II.     FACTUAL BACKGROUND

Mr. Karl brought this action against Defendants alleging they misclassified him as an independent contractor. *See* ECF No. 1. He filed the operative first amended complaint on January 1, 2019. ECF No. 41. Mr. Karl now seeks to certify a class of California sales representatives under Cal. Lab. Code § 226 (seeking proper itemized statements), 2802 (seeking unpaid business expenses), and under Cal. Bus. & Prof. Code § 17200 (seeking restitution for unreimbursed business expenses and unpaid employment benefits). Each claim is predicated on a finding of employment misclassification under California statutory and common law.

### A.     Plaintiff seeks to represent independent contractor sales representatives who predominate Zimmer's sales force.

-1-

1    As described previously in this case, Zimmer designs manufactures and sells medical

2    devices. Ritter Depo at 22:4-21 (ECF# 53-1, p.13).[1] Its primary customers are surgeons, medical

3    specialists, hospitals, and other healthcare dealers. *Id*. Zimmer relies on distributors and a

4    nationwide team of sales representatives, including Mr. Karl, to sell its products. The sales force

5    has some employees, but mostly consists of independent contractors who sell exclusively for the

6    company. *Id.* at 35:2-36:5 (ECF# 53-1, p.20-21). Zimmer refers to employee representatives as

7    "W-2 reps" and independent contractors as "1099 agents." *Id.* at 26:21-27:14 (ECF# 53-1, p.16-

8    17). It chose to classify most of its sales force as independent contractors as part of a merger in

9    2015, and reclassified W-2 reps to be contractors at that time. *Id.* at 37:24-38:16 (ECF# 53-1,

10   p.37-38), 231:5-233:22 (ECF# 53-1, p.132-34); Karl Decl. ¶4, Ex. A ("Corporate will be setting

11   up presentations to help with conversion of W2 to 1099's or anyone else who might have

12   questions on incorporating, finding benefits or how to handle taxes as a 1099."); Declaration of

13   Tanner Senne, ¶2 ("I was a W2 employee, and had all the benefits attached thereto, including

14   business reimbursements, health coverage, and an employer sponsored 401K. In January of

15   2016, my role was changed to a 1099 contractor sales rep and I lost all my employee benefits,

16   while having the same work duties as my previous role.")  Zimmer classified all representatives

17   as independent contractors because it believed that classification would incentivize selling; and

18   important to this litigation, the company wanted consistency in the way sales representatives

19   were treated across its organization. Ritter Depo. at 37:12-38:16 (ECF# 53-1, p.37-38).

20   Sales representatives work in either "direct territories" or "independent territories." Ritter

21   Depo at 40:13-42:2 (ECF# 53-1, p. 25-26). In "direct territories," a Zimmer W-2 employee

22   serves as the territory general manager or "territory leader" who oversees the selling. *Id*. This

23   motion pertains to sales representatives who sell in California's three direct territories: ZB Bay

24   Area, ZB So Cal, and ZB Pacific. Within each territory, Zimmer assigns reps to teams, which are

25   responsible for subsets of products and geographic areas within each territory. For example, Mr.

26   Karl works in ZB Bay Area, on "Team Golden Gate," and reports to Zimmer's territory general

27

28   _____

[1] Excerpts from the Deposition of Person(s) Most Knowledgeable, Donald Ritter ("Ritter Depo") were previously filed. To avoid confusion or duplication, Plaintiff cites previously-filed exhibits by their prior ECF numbers.

manager, Don Quigley, who is a W-2 employee. *Id.* at 44:13-45:5 (ECF# 53-1, p.28-29), 56:10-22 (ECF# 53-1, p.57).[2] To date, there have been at least 266 sales representatives that have worked for Zimmer as independent contractors in one of these direct territories. Lohr Decl. ¶10.

### 1. Sales representatives contract with the Zimmer Defendants.

Sales representatives sign a single contract with the subsidiary Zimmer Defendants that correspond to the product lines they are hired to sell. Ex. 13 (ECF# 14-2, p. 20) and Ritter Depo at 110:10-111:6 (ECF# 53-1, p.57-58).

### 2. Zimmer uses standardized contracts and implements national polices.

When Zimmer enters into an agreement with a sales representative, it uses a form agreement. Ritter Depo at 114:2-6 (ECF# 53-1, p.61). These agreements are drafted by its legal department. *Id.* at 115:15-20 (ECF# 53-1, p.62). They are presented to potential hires on a take-it-or-leave-it basis. *See* Karl Decl. ¶3; Anderson Decl. ¶4; Baker Decl. ¶5; Kato Decl. ¶5; Senne Decl. ¶3. In the class period, Zimmer has used eight template agreements. Ritter Depo at 192:4-10. These templates set forth in detail the obligations and duties for each sales representative. *Id.* at 193:22-195:14 (ECF# 53-1, p.105). Crucially, these agreements are largely identical in their substantive terms.[3] This shows first that Mr. Karl is typical of all sales representatives for purposes of this motion, and second that the contracts are common evidence of misclassification.

For example, Mr. Karl signed a template created in 2015. Compare Ex. 13 (ECF# 14-2) *and* Ex. 26 (ECF# 53-1 p.298-325). The introductory paragraph appoints him as a sales representative for Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC, which it collectively defines as "the company." Ex. 13 (ECF# 14-2 at p.2). Each of the four subsequent templates, created in 2017 and 2018, define the parties identically. *Compare* Ex. 13 (ECF# 14-2), *and* 24 (ECF# 53-1 p.243-69), 25 (ECF# 53-1 p.270-97), 27 (ECF# 53-1 p.326-52,

---

[2] *See* Declaration of William Anderson, ¶7 (Team Golden Gate); Declaration of Eric Andrews, ¶5 ("Zimmer Biomet assigned me to be a member of a 'team' … covering the region of South Orange County"); Declaration of Aaron Baker, ¶7 ("Team East Bay"); Declaration of Jordan Kato, ¶7 ("Team Golden Gate"); Declaration of Lucas Scalzo, ¶6 (Inland Empire team); Senne Decl. ¶4 (Orange County team); Declaration of Jesse Wallace, ¶3 ("Team Central Coast North"); Declaration of Matthew Stottle, ¶5 (Southern California territory).

[3] *Compare* Exs. 21 (ECF# 53-1 p.183-203) 22 (ECF# 53-1 p.204-26), 23 (ECF# 53-1, p.227-42), 24 (ECF# 53-1 p.243-69), 25 (ECF# 53-1 p.270-97), 26 (ECF# 53-1 p.298-325), 27 (ECF# 53-1 p.326-52, and 28 (ECF# 53-1 p.353-79).

and 28 (ECF# 53-1 p.353-79). As noted, Zimmer drafted the language this way so contractors could sell all of its products. Ritter Depo at 114:7-19 (ECF# 53-1, p.61). Beyond the parties, these templates are identical in virtually every way. There is no difference in these five templates' language regarding:

- classification of the sales representative as an independent contractor (¶1);
- that Zimmer has sole control over representatives' territory and products sold (¶2);
- that representatives are paid solely by commissions and that the company will not withhold any taxes on their behalf (¶3(a) and 3(b));
- that representatives are solely responsible for all business expenses (¶3(c));
- that representatives will receive no benefits (¶4);
- grounds for Zimmer to terminate the agreement (¶5);[4]
- representatives' duties and obligations (¶6), including attending required trainings (¶6(e)) and complying with Zimmer's sales policies (¶6(f));
- Zimmer's non-competition and non-solicitation covenants (¶7);[5]
- that representatives will follow all of Zimmer's compliance policies (¶13(a) and (b)), attend required compliance trainings (¶13(c)), disclose the identities of relatives that may have conflicts of interest (¶13e); and open their books and records to Zimmer for inspection (¶13(h) to 13(j)).
- the contracts' governing law and venue (¶28); and
- how representatives must provide notice of termination (¶29).

These standardized contracts are common evidence that sales representatives are similarly situated with regard to their classification as independent contractors (*See* FAC ¶1, 2, 16); that Zimmer controls where, what, and how representatives sell (FAC ¶16, 17, 18); that Zimmer's territory leaders control representatives' work (FAC ¶19, 20); and that representatives

---

[4] Subsection 5(b)(13), one of thirteen reasons Zimmer may terminate a representative in the template Mr. Karl signed is not in the 2017 and 2018 templates. Subsection 5(c) in Mr. Karl's template also requires him to assign all phone numbers and email addresses used in connection with his business upon termination; that is not required in the 2017 and 2018 agreements.

[5] Subsections 7(a)(2), 7(b), 7(c), and 7(f) of the 2017 and 2018 agreements provide clarifying language that successor companies may enforce the contracts' non-compete clauses.

have substantially the same job duties, regardless of territory (FAC ¶24). Not only do these agreements outline the obligations and responsibilities between the parties, but the contracts also reliably show what independent contractors actually do day to day. Ritter Depo at 193:22-195:14 (ECF# 53-1, p.106-08). ([Q.] "do Zimmer Biomet Sales Representatives actually do the things, the duties and obligations that are articulated here in Paragraph 6? … [A.] Yes, I believe they do, and we expect them to.") Finally, the evidence shows Zimmer unilaterally sets (and changes) the terms of Sales Representatives' commissions and expense deduction schedules under their contracts. Ex. 20 (ECF# 53-1 p.178-82); Ritter Depo at 186:13-187:15 (ECF# 53-1, p.103-04).

In sum, the agreements are common evidence of sales representatives' opportunities for profit and loss, the permanence of the working relationship, relative investments of the employer and workers, and other factors relevant to the classification question.

### 3.   Sales representatives solely receive commissions and no benefits.

As set forth in the contracts, sales representatives are compensated only by commission. Ritter Depo at 164:15-165:22 (ECF# 53-1, p.95-96). Zimmer calculates commissions based on data loaded onto its information classification and management system ("ICM"). *Id.* at 182:4-18 (ECF# 53-1, p.99); Ex. 17 (ECF# 55-3). Also, Zimmer can and does assess a fee that is deducted from a commission if, for example, the sales representative keeps too much inventory, or fails to collect invoices in a timely manner. Ritter Depo at 156:19-157:9 (ECF# 53-1, p.87-88); *see* Kato Decl. ¶8-9. Sales representatives are also subject to various deductions determined at Zimmer's discretion, including percentages paid to other team members, "awards," and other deductions not based on the declarants' contracts.[6] Many of these deductions are not itemized for sales representatives, so they cannot readily determine if they have actually been properly paid under their commission terms.[7]

Similarly, Zimmer provides a schedule for expense reimbursements and deductions, stating how much it will or will not reimburse, which is an "exhibit" to each template contract.

---

[6] Karl Decl. ¶7, 12; Anderson Decl. ¶7; Andrews Decl. ¶4-5; Baker Decl. ¶7; Kato Decl. ¶7; Scalzo Decl. ¶11; Senne Decl. ¶8.
[7] Karl Decl. ¶16; Anderson Decl. ¶13; Andrews Decl. ¶13; Baker Decl. ¶14; Kato Decl. ¶13; Scalzo Decl. ¶11; Senne Decl. ¶8; Stottle Decl. ¶10.

Ritter Depo at 186:13-187:15 (ECF# 53-1, p.103-04). Zimmer determines in its sole discretion the expenses that it will reimburse. *Id.* at 122:3-127:16; Ex. 20 [Changes to Deductions] (ECF# 53-1 p.179). For example, in 2018, Zimmer required all sales representatives to pay a $10 monthly "Technology Fee" for the (required) use of SMS and email domains. Ex. 27 (ECF# 53-1 p.346). Sales representatives are also 100% responsible for "unapproved discount pricing penalties," credentialing, and "admin fees." *Id.* The same was true in 2019. (ECF# 53-1 p.374). These contract terms also reflect another component of Zimmer's control: sales representatives are contractually penalized for "unapproved discounts," limiting their ability to act as true independent businesses. In sum, while the amounts of sales representatives' expenses and deductions vary, the reason those expenses are unpaid is the same: Zimmer's uniform contract denies reimbursements for expenses, because it classifies sales representatives as contractors.

### 4. Sales representatives can be terminated for any or no reason at all.

Next, the template agreements allow Zimmer to terminate the contract "at any time . . . with or without cause" on "ten (10) days' written notice." (ECF# 127, 11:22-23 citing ECF# 14-2 ¶ 5(a); Karl Decl. ¶5(d); Baker Decl. ¶6(d)). These agreements also include thirteen specific causes for termination, including violation of Zimmer's non-compete and non-solicit covenants; filing for bankruptcy; requesting payment directly, rather than to Zimmer; and failing to meet sales goals Zimmer sets.[8] *Compare* Paragraph 5(b) in Exs. 21 (ECF# 53-1 p.185) 22 (*id.*, p.207) 24 (*id.*, p.246), 25 (*id.*, p.273), 26 (ECF# 53-1 p.301), 27 (*id.*, p.329), and 28 (*id.*, p.6).

### 5. Sales representatives have the same duties, and are governed uniformly.

Sales representatives' fundamental obligations and duties are articulated in Zimmer's standard contracts. Ritter Depo at 93:11-94:3 (ECF# 53-1, p.53-54). Besides the contracts, other policy documents set rules for sales representatives' duties and obligations in more detail, further illustrating the control Zimmer has over sales representatives' work on a common basis. These policies are contractually mandated for all sales representatives, and failure to comply is grounds

---

[8] This final basis is omitted from the 2018 versions. *Compare* ¶5(b) in Ex. 26 (including the term in 2017) and Ex. 27 and 28 (omitting it in 2018). However, all versions require representatives to use "best efforts to aggressively market and sell," and breach of that term is a basis for termination. *Compare* ¶ 6(a) in Ex. 26, Ex. 27, and 28.

MOTION FOR CLASS CERTIFICATION
CASE NO.: 18-cv-04176-WHA

for termination. *Id.* at 193:22-195:14 (ECF# 53-1, p.106-08), 199:4-14 (*id.*, p.112), 210:19-211:11 (*id.*, p.118-19); *see* Ex. 13 (ECF# 14-2), 24-28 (ECF# 53-1) at ¶6(f) ("Representative shall operate in accordance with the compliance and sales policies and procedure(s) as the same are established or revised by the Company from time to time"); and at ¶5(b)(1) (the company may terminate the representative "if Representative fails to operate in accordance with any and all compliance policies, including, but not limited to, those set forth in Company's then-current Code of Business Conduct and Ethics, Fraud and Abuse Policy); Ex. 23 at ¶4(a) ("The Company expects Representative to operate in accordance with Biomet's respective policies and procedure(s) as the same are established or revised by Biomet from time to time, and Representative's failure to operate in accordance with such policies and procedures may result in the termination of the relationship between Representative and Company).

     The primary policy all of Zimmer's Sales Representatives are required to comply with is the "U.S. Sales Independent Distributor and Direct Territory Compliance Manual," which sets out policies governing how representatives may do their jobs. Ex. 29 [2017 compliance manual] (ECF# 53-1 p.384); Ex. 30 [2019 compliance manual] (ECF# 53-1 p.391-407); Ritter Depo at 196:4-21 (ECF# 53-1, p.109), 210:3-6 (*id.* p.118), 216:13-18 (*id.* p.123); Blevins Depo at 167:2-168:10. The manual governs topics down to the level of forbidding sales representatives from using social media or otherwise advertising Zimmer's products. Ex. 29 (ECF# 53-1 p. 388); Ritter Depo at 206:18-208:5 (ECF# 53-1, p.115-17). This particular policy evidences not only the degree of Zimmer's control generally, but is an example of common evidence that sales representatives are prevented from actually operating an independent business selling Zimmer products. Indeed, in light of the strict regulatory environment for medical sales, the reality is that independent sales are impossible.

     Sales representatives are also required to attend trainings on Zimmer's compliance rules. *See* Ritter Depo at 149:1-150:11 (ECF# 53-1, p.81-82), 211:23-212:12 (*id.*, p.119-20). Separate from compliance with the law, failing to complete these unpaid trainings is grounds for termination of representatives' contracts. *See* Ex. 13 (ECF# 14-2), 22, 24-28 (ECF# 53-1) at

¶5(b)(ix) (termination "if Representative fails to attend required compliance or regulatory training programs upon written notice, if such failure remains uncured for a period of five (5) days after the required attendance date set forth in such notice;)[9] *and* Ex. 23 ("Representative shall: (i) comply with Biomet's Compliance Program(s), including any and all required training related to the applicable federal and state statutes; (ii) comply with all rules and procedures as may be required form time to time by Company; and (iii) fully cooperate with and meet with Company to assure such compliance").

Representatives must also attend unpaid trainings on Zimmer's products and sales techniques. Ritter Depo at 76:25-77:7. Zimmer maintains a learning management system to track these trainings. ("LMS"). Ritter Depo at 147:13-150:12 (ECF# 53-1, p.79-82). For example, Mr. Karl's LMS records show he completed trainings on two dozen topics ranging from basic anatomy to bone screw fundamentals. *See* Ex. 16 [Karl LMS Record] (ECF# 53-1 p.174-77). Critically, Zimmer's product trainings are not mandated by law, but Zimmer has the contractual right to order sales representatives to attend them —without pay— or risk termination.[10] In sum, the evidence shows that Zimmer requires sales representatives to shoulder the cost of attending trainings, and give up time they could otherwise be working, and does so on a statewide basis.

### 6. Sales representatives rely on Zimmer to supply the tools for their jobs.

Zimmer provides substantially all of the tools sales representatives use day to day. Specifically, a key part of the job is surgical case-coverage, which all sales representatives do. Ritter Depo at 67:1-19 (ECF# 53-1, p.40), 69:22-70:7 (*id.* p.42-43); Blevins Depo at 62:25-63:9. Broadly speaking, this work involves attending surgeries in the operating room and providing information on the safe and effective use of Zimmer products, answering questions from a surgeon, and making sure Zimmer's products are prepared and in the operating room on time. *Id.* at 68:17-69:3. To accomplish this, representatives rely on an online tool called "SMS." Ritter Depo at 138:13-140:24 (ECF# 53-1, p.75-77). This tool is Zimmer's order management system

---

[9] Paragraph 5(b)(ix) in Exhibit 21 is identical except for providing a ten-day notice period.
[10] *See* Anderson Decl. ¶10; Andrews Decl. ¶11; Baker Decl. ¶11; Kato Decl. ¶10; Scalzo Decl. ¶9; Senne Decl. ¶6; Stottle Decl. ¶8; Wallace Decl. ¶16.

-8-

and is used to track the details related to all cases (surgeries) scheduled. *Id*. Sales Representatives use this tool to schedule and manage a medical case, and to close the case, among other activities. *Id*.; *see* Ex. 15 (ECF# 53-1, p.168-73); Andrews Decl. ¶8, Wallace Decl. ¶15. Zimmer mandates that Sales Representatives accurately enter and track each of their cases in SMS. Indeed, Zimmer terminated a Sales Representative because it accused the representative of inaccurately reporting a case in SMS. Baker Depo. 122:8–126:8, attached to Lohr Decl. Ex. 1). Strikingly, while Zimmer requires Sales Representatives to use SMS, in 2018 it began charging a monthly fee for its use, as set out in their expense schedules. Ex. 20 (ECF# 53-1 p.178-82).

Case coverage also includes more menial tasks, including delivering "trays" (containing the medical devices and related equipment and instruments sold by representatives) to operating rooms —medical tools that Zimmer provides to cover a case. Delivery requires loading from personal vehicles and driving to and from the surgery locations. Sales Representatives are not reimbursed for the cost of travelling to and from surgeries, or for any travel they complete at Zimmer's behest. *See e.g.* Ex. 27 (ECF# 53-1 p.346) (Zimmer reimburses 0% of auto travel); Scalzo Decl. ¶8(a), Senne Decl. ¶5(a); Stottle Decl. ¶7(a); Wallace Decl. ¶¶ 6, 8.

Sales Representatives are also required to use Zimmer-provided email addresses to communicate (subject to a monthly fee) and business cards identifying them as Zimmer representatives.[11] Zimmer also monitors and tracks teams' and territories' sales growth and amount. Ritter Depo at 151:10-153:20 (ECF# 53-1, p.83-85); Blevins Depo at 39:13-40:15, 41:15-20. In sum, the necessary tools for the job are provided by Zimmer.

**7. Zimmer determines how its products are marketed, the prices charged, and the commissions earned by sales representatives.**

Although Zimmer expects each territory to sell all of its products, the company determines what products a sales representative may actually sell. Ritter Depo at 87:16-88:19 (ECF# 53-1, p.50-51), 90:16-23 (*id.*, p.52). The company also retains the right to assign sales representatives to territories. *Id.* at 193:7-21 (ECF# 53-1, p.106). In addition, representatives

---

[11] Karl Decl. ¶8; Anderson Decl. ¶7; Baker Decl. ¶7; Stottle Decl. ¶9; Kato Decl. ¶7, Ex. C.

1   have no control over pricing and discounts. *Id.* at 221:17-223:1 (ECF# 53-1, p.125-27). Any

2   change in pricing must be approved by Zimmer, and the template contracts penalize

3   unauthorized discounts. *Id.* at 224:18-25 (ECF# 53-1, p.128); *see* Wallace Decl. ¶11.

4        Further, sales representatives are subject to strict controls on how products are marketed

5   and sold. Zimmer controls the content of any advertising that is used for its products, including

6   statements made by sales representatives on their own social media accounts.[12] Zimmer also sets

7   the commission rates it pays, and can (and does) change those amounts. *Id.* at 127:17-128:14

8   (ECF# 53-1, p.71-72). In addition, because representatives work on teams, their earnings depend

9   not only on their own abilities, but also that of their team, because each person is paid a

10  percentage of their team's commissions, rather than rising or falling on their own entrepreneurial

11  skill. Ritter Depo. at 117:9-119:22 (ECF# 53-1, p.63-65), 154:14-25 (*id.*, p.86); Karl Decl. ¶8;

12  Baker Decl. ¶7; Kato Decl. ¶7.

13        **8.   Plaintiff and other sales representatives had the same experiences in their work.**

14        Plaintiff and other current and former sales representatives submit declarations in support

15  of this motion that unambiguously confirm that all representatives at Zimmer are treated in the

16  same manner, and that Mr. Karl's experiences are typical of any California representative. Each

17  declarant was hired as an independent contractor or was reclassified from a W2 rep to 1099 agent

18  in the class period.[13] And each declarant was governed by Zimmer's form agreement.[14]

19        Further, all of the declarants engaged in similar work for Zimmer.[15] Mr. Karl testifies that

20  beyond actual selling, his work consists of assisting during surgeries; including providing the

21  products and tools for the surgery, answering questions during surgery, and cleaning the surgical

22  tools and other post-surgery tasks. Karl Decl. ¶8-9. Outside of surgery, he spends time managing

23

24

25  [12] Karl Decl. ¶8-9; Anderson Decl. ¶12; Andrews Decl. ¶12; Baker Decl. ¶13; Kato Decl. ¶8; Scalzo Decl. ¶10; Senne Decl. ¶7; Wallace Decl. ¶4-5.

26  [13] Karl Decl. ¶2-4, 6; Anderson Decl. ¶2-4; Andrews Decl. ¶2-3; Baker Decl. ¶2, 4; Kato Decl. ¶3; Scalzo Decl. ¶3-4; Senne Decl. ¶2-3; Stottle Decl. ¶2-3; Wallace Decl. ¶2.

27  [14] Karl Decl. ¶3; Anderson Decl. ¶4, Ex. A; Andrews Decl. ¶4; Baker Decl. ¶5-6; Kato Decl. ¶4; Scalzo Decl. ¶5; Senne Decl., ¶3; Stottle Decl. ¶4.

28  [15] Karl Decl. ¶8; Anderson Decl. ¶3, 7; Andrews Decl. ¶3, 5; Baker Decl. ¶3, 7; Kato Decl. ¶3; Scalzo Decl. ¶2-5; Senne Decl. ¶3-4; Stottle Decl. ¶2, 4-5; Wallace Decl. ¶3, 7-10, 12-14.

-10-

inventory, and performing other administrative tasks including reporting information in SMS. *Id.* Mr. Karl's experience is not unique; rather, the evidence shows his experience is the norm.[16]

Mr. Karl testifies that the Company limits how, when, and if he can contact potential new clients. Karl Decl. ¶10. Each declarant testifies similarly that Zimmer had tight rein on their work activities.[17] And each declarant had to document their work in various ways, including the use of SMS and other online tools required by Zimmer.[18] Each had significant work-related expenses; some were reimbursed at Zimmer's discretion, and others were not, all based on their standard contract terms.[19] Finally, these representatives were not covered by company-provided workers' compensation insurance, sick leave, disability insurance, 401(k) matching, health insurance and other benefits, and each was also forced to pay the employer's share of payroll taxes.[20]

In sum, the testimony from these declarants is entirely consistent with the documents produced by Zimmer, and the testimony of Mr. Ritter. The testimony shows that Sales Representatives are uniformly classified as independent contractors, and that Zimmer has the right to control their work by its uniform contracts, policies, and procedures.

## III.    ARGUMENT

Class certification is appropriate if a plaintiff meets all the prerequisites of the Federal Rules of Civil Procedure ("Rule" or "FRCP") 23(a) and at least one condition of FRCP 23(b). *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). "The court is bound to take the substantive allegations of the complaint as true" in determining whether to certify a class action. *Blackie v. Barrack*, 524 F.2d 891, 900–01, n.17 (9th Cir. 1975). In addition, the court must only "determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence" in making its decision. *Wang v. Chinese Daily*

---

[16] Karl Decl. ¶3-4, 7-10; Anderson Decl. ¶7; Baker Decl. ¶7; Kato Decl. ¶7, 11; Scalzo Decl. ¶2, 4, 7; Senne Decl. ¶4; Stottle Decl. ¶6; Wallace Decl. ¶3, 7-10, 12-14.
[17] Karl Decl. ¶3; Anderson Decl. ¶7, 11; Baker Decl. ¶9-10; Kato Decl. ¶4-6, 12; Scalzo Decl. ¶6, 7, 10; Senne Decl. ¶7; Stottle Decl. ¶5, 6, 9; Wallace Decl. ¶4, 11, 13, 15
[18] Karl Decl. ¶8; Andrews Decl. ¶8; Baker Decl. ¶7, 9; Kato Decl. ¶7, 9; Scalzo Decl. ¶7; Senne Decl. ¶4; Stottle Decl. ¶6; Wallace Decl. ¶8, 9, 15.
[19] Karl Decl. ¶12; Anderson Decl. ¶8-9; Andrews Decl. ¶10; Baker Decl. ¶8; Kato Decl. ¶8; Scalzo Decl. ¶8; Senne Decl. ¶5; Stottle ¶7, Wallace Decl. ¶6.
[20] Karl Decl. ¶17; Anderson Decl. ¶14-15; Andrews Decl. ¶14-15; Baker Decl. ¶15-16; Kato Decl. ¶14-15; Scalzo Decl. ¶4, 11; Senne Decl. ¶9; Stottle Decl. ¶11.

MOTION FOR CLASS CERTIFICATION
CASE NO.: 18-cv-04176-WHA

*News, Inc.*, 231 F.R.D. 602, 605 (C.D. Cal. 2005); *see Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir 2003) ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." (internal quotations and citation omitted)).

Furthermore, and relevant to the present case which alleges the misclassification of employees as independent contractors, the California Supreme Court has held that certification "generally does not depend upon deciding the actual scope of a hirer's right of control over its hires"; instead, "whether the scope of the right of control, whatever it might be, is susceptible to classwide proof." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522, 537 (2014). And in this case, as was the case in *Ayala*, the determination of whether sales representatives were properly classified as independent contractors "is likely the crux of the case's merits." *Id.* Indeed, Mr. Karl's claims for relief all stem from this single common question.

Accordingly, Mr. Karl seeks to certify the following class of sales representatives in California:

> Any person who, during the period commencing four years prior to the date of this lawsuit to the present, was hired or otherwise engaged as an independent contractor for the purposes of solicitation or sales of Zimmer Biomet products and/or services in California by ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, and BIOMET BIOLOGICS, LLC.

**A. The class of sales representatives satisfies the requirements of Rule 23(a).**

**1. The members of the class are so numerous that joinder is not practical.**

To certify the proposed class, Plaintiff must show "'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (quoting FRCP 23(a)(1)). That standard is generally met when the proposed class contains at least 40 members. *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012). Here 266 individuals worked as independent sales representatives in California during the class period. These individuals have been identified, and Plaintiff has the contact information for each proposed class member. The class is therefore sufficiently numerous and ascertainable to satisfy

1  Fed. R. Civ. P. 23(a)(1).

2      **2.   Common questions of law and fact will drive the resolution of Plaintiff's claims.**

3          To satisfy commonality, class claims must share common questions of law or fact that are

4  "capable of class wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A

5  contention is capable of class wide resolution if "the determination of its truth or falsity will

6  resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. But,

7  commonality poses a "limited burden" because it "only requires a single significant question of

8  law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).

9  Furthermore, "Rule 23(a)(2) has been construed permissively" such that "[a]ll questions of fact

10  and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. Instead, "'[t]he

11  existence of shared legal issues with divergent factual predicates is sufficient, as is a common

12  core of salient facts coupled with disparate legal remedies within the class.'" *Smith v. Cardinal*

13  *Logistics Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 117047, at *15 (N.D. Cal. Sept. 5, 2008).

14          Here, the central issue common to all class members is whether Zimmer legally classified

15  Sales Representatives as independent contractors. Courts throughout the Ninth Circuit "have

16  found that commonality is met when the proposed class of plaintiffs asserts that class members

17  were improperly classified as independent contractors instead of employees." *Soto v. Diakon*

18  *Logistics (Del.), Inc*., 2013 U.S. Dist. LEXIS 119028, at *11 (S.D. Cal. Aug. 21, 2013)

19  (collecting cases). In *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 559 (S.D. Cal. 2010), the

20  court determined that the classification question was a "significant issue common to the class

21  sufficient to warrant certification." (internal quotation and citation omitted). It noted that "[a]ll

22  class members had similar contracts with Defendant, all had similar duties, and all had similar

23  pay structures." *Id*. Similarly, as Judge Chen noted in *O'Connor v. Uber Tech*., "given the

24  threshold and determinative nature of the employment classification question, it should come as

25  no surprise that district courts 'throughout this circuit have found that commonality is met when

26  the proposed class of plaintiffs asserts that class members were improperly classified as

27  independent contractors instead of employees.'" *O'Connor v. Uber Tech*., 2015 U.S. Dist.

28  LEXIS 116482, at *26–27 (N.D. Cal. Sep. 1, 2015).

-13-

1    Beyond the central misclassification question, the merits of Mr. Karl's claims are

2    susceptible to common proof. For example, as to his claim for unreimbursed business expenses,

3    section 2802 requires an employer to "indemnify his or her employee[s] for all necessary

4    expenditures or losses incurred by the employee[s] in direct consequence of the discharge of

5    [their] duties." Cal. Lab. Code § 2802(a). Plaintiff and members of the proposed class are

6    engaged in the same job, performing the same tasks, that require them to regularly incur a

7    common set of expenses which principally include: gas, car maintenance, car wear and tear,

8    parking, insurance, phone data charges, and marketing expenses. Common proof of Zimmer's

9    liability on this claim comes directly from its contracts and policy documents which establish

10   that its policy is not to reimburse Sales Representatives for these expenses. Thus, whether

11   Zimmer's policy related to expense reimbursements violates § 2802 is a question common to the

12   entire class that can be answered by common evidence.

13   In addition, Plaintiff's claim under the UCL (Cal. Bus. & Prof. Code § 17200 *et seq.*)

14   fundamentally derives from the misclassification claim. Beyond restitution for business expenses

15   (in addition to "fees" reps had to pay to work for Zimmer), California requires employers to

16   provide certain benefits to employees. For example, most employees who work in California for

17   30 or more days within a year are entitled to paid sick leave. Cal Lab. Code § 245 *et seq.*

18   (Healthy Workplace Healthy Family Act of 2014). Therefore, whether class members may

19   recover the value of the paid sick leave benefit under California's unfair competition law is a

20   common question. Similarly, there are other benefits that are not required by law in California,

21   but if they are provided, are considered wages under California law. Whether or not class

22   members are entitled to the value of these benefits as restitution is a common question.

23   And relatedly, whether classifying sales representatives as independent contractors is

24   lawful under the Medicare Anti-Kickback statute is also a common question under the UCL. 42

25   U.S.C. § 1320-7b(b) (the "AKS"). This law prohibits health care companies from paying any

26   form of "remuneration" for referring or arranging for the furnishing of any item or service

27   covered by a federal healthcare program. *Id.* Pertinent to this case, paying independent

28   contractors commissions for the sales of medical devices constitutes a kickback under the AKS.

-14-

1    Ironically, one of Zimmer's predecessor companies successfully escaped liability for not

2 paying an independent contractor under the terms of an otherwise-valid contract based on the

3 AKS, by arguing that the contract was illegal. *See Zimmer, Inc. v. Nu-Med Medical Inc.*, 54

4 F.Supp.2d 850, 854–55, 863 (N.D. Ind. 1999) (agreement that called for independent contractor

5 to receive a percentage of its medical product sales violated the law). Whether the AKS applies

6 to the arrangement between Zimmer and independent contractors in California is also a common

7 question, and resolving that question can potentially resolve the classification question itself.

8    Likewise, the question of whether Zimmer must provide itemized wage statements to its

9 Sales Representatives and if so, whether they received statements that satisfy statutory

10 requirements can be decided in the aggregate. California requires employers to provide

11 employees with wage statement that satisfy stringent requirements.[21] Such statements must be

12 provided even to otherwise-exempt outside sales employees. *Garnett v. ADT LLC*, 139 F. Supp.

13 3d 1121, 1131 (E.D. Cal. 2015) ("While plaintiff likely qualifies as an outside salesperson, Wage

14 Order 4-2001 does not provide an additional exception, not enumerated in the statute, to

15 California Labor Code section 226(a)(2)"); *Del Thibodeau v. ADT Security Servs.*, 2018 U.S.

16 Dist. LEXIS 16094 (S.D. Cal. Jan. 31, 2018) (outside sales exemption precluded Plaintiff from

17 bringing overtime claims, but allowing §226(a) claim to proceed). Zimmer admits all putative

18 class members received the same type of "direct compensation statement" with their pay. Ritter

19 Depo at 156:13-159:4 (ECF# 53-1, p.87-88), Ex. 17 (ECF# 55-3). Whether these statements

20 meet the requirements of Section 226 is therefore a question that can be answered classwide.

21    Again, each of Mr. Karl's claims hinge on the propriety of classifying representatives as

22 independent contractors. If the classification is improper, then the class as a whole will be

23 entitled to reclassification, a determination of whether they are entitled to unpaid expenses, the

24 value of unpaid benefits as restitution, and penalties under the Labor Code related to these issues.

25

26 [21] Cal. Lab. Code § 226 requires employers to provide employees, at the time their wages are paid, with "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . (3) the

27 number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . .(5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification

28 number other than a social security number, (8) the name and address of the legal entity that is the employer."

MOTION FOR CLASS CERTIFICATION
CASE NO.: 18-cv-04176-WHA

1

### 3.   Mr. Karl's claims are typical of the class claims.

2    Typicality requires that "the claims or defenses of the representative parties are typical of

3 the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

4 class member's claim arises from the same course of events, and each class member makes

5 similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849,

6 868 (9th Cir. 2001) (internal quotations and citation omitted). "'The test of typicality is whether

7 other members have the same or similar injury, whether the action is based on conduct which is

8 not unique to the named plaintiff[ ], and whether other class members have been injured by the

9 same course of conduct." *In re LendingClub Secs. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal.

10 2017) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

11 "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably

12 coextensive with those of absent class members; they need not be substantially identical."

13 *Hanlon,* 150 F.3d at 1020.

14    In the present case, there are no factual distinctions between Mr. Karl's claims and those

15 of the proposed class. The claims alleged here are based entirely upon three practices that

16 uniformly effected class members: (1) misclassifying sales representatives as independent

17 contractors, (2) failing to reimburse sales representatives for business expenses, and (3) failing to

18 provide benefits and wage statements due to the misclassification. To be clear, Mr. Karl's claims

19 are not merely typical of the claims of the proposed class but are, in fact, identical. *See Norris-*

20 *Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 605 (S.D. Cal. 2010) ("The injuries alleged—a

21 denial of various benefits—and the alleged source of those injuries—a sinister classification by

22 an employer attempting to evade its obligations under labor laws—are the same for all members

23 of the putative class."). Therefore, the typicality requirement is satisfied here.

24    ### 4.   Mr. Karl and class counsel will adequately protect the interests of the class.

25    To determine whether representative plaintiffs will adequately represent a class, the Court

26 must resolve two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of

27 interest with other class members and (2) will the named plaintiffs and their counsel prosecute

28 the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*,  657 F.3d 970,

-16-

985 (9th Cir. 2011). Here, neither Mr. Karl, nor his counsel, have any conflicts of interest with the Class. Indeed, their interest in providing a remedy for Zimmer's continued misclassification of employees directly align with the interests of the Class.

Furthermore, Mr. Karl and his counsel have demonstrated they will vigorously prosecute this action on behalf of the Class. Mr. Karl has demonstrated his commitment to the Class throughout this litigation by answering document requests and interrogatories, appearing for his deposition, and advising counsel throughout the litigation. Karl Decl. ¶18-20. Similarly, Mr. Karl's counsel have prosecuted this action vigorously, including litigating a motion to transfer or dismiss the action, defending and then seeking a writ in the Ninth Circuit, successfully opposing Zimmer's Petition for a writ of certiorari in the U.S. Supreme Court, as well as engaging in extensive class-wide discovery. Counsel has competently and rigorously litigated this case, and will continue to do so. Lohr Decl. ¶4.

Further, counsel have extensive experience in litigating employment class actions, including cases involving misclassification of employees, and will continue to commit the time and resources to represent this Class. Lohr Decl. ¶11-13; Kenny Decl. ¶3-4.

**B. The Putative Class Satisfies Rule 23(b)(3).**

**1. Common questions predominate over questions affecting individual class members.**

"Class certification under Rule 23(b)(3) is proper when common questions represent a significant portion of the case and can be resolved for all members of the class in a single adjudication." *In re LendingClub Secs. Litig.*, 282 F. Supp. 3d at 1182–83 (citing *Comcast v. Behrend*, 569 U.S. 27 (2013)). A court evaluating predominance must determine whether "'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication'; if so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Walker v. Life Ins. Co. of the SW*, 953 F.3d 624, 630 (9th Cir. 2020). "Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less

-17-

1    significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th

2    Cir. 2016) (citation omitted).

3           Common questions regarding liability plainly predominate in this case because all of

4    Plaintiff's claims turn on whether Zimmer's practice of classifying Sales Representatives as

5    independent contractors is lawful. If the Court determines that sales representatives are properly

6    classified under both the *Borello* (right of control) test, as well as the stricter ABC test, the case

7    would be resolved on that basis in favor of defendants. But, if the classification fails either test,

8    then the class will be entitled to a determination as to whether they are entitled to damages

9    arising from the misclassification as articulated in the specific causes of action pleaded.

10          **i.      The common law tests for governing worker classification in California**

11          Two tests conceivably govern the worker classification issue in this case. Since 1989, the

12   common law test for determining whether a worker is an employee had been governed by *S. G.*

13   *Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989). "Under *Borello*, '[t]he

14   principal test of an employment relationship is whether the person to whom service is rendered

15   has the right to control the manner and means of accomplishing the result desired[.]'" *Moreno v.*

16   *JCT Logistics, Inc*., 2019 U.S. Dist. LEXIS 117342, at *9 (C.D. Cal. May 29, 2019) (quoting

17   *Borello,* 48 Cal.3d at 350). Under that test, the court considers the following factors:

18   > (a) whether the one performing services is engaged in a distinct occupation or
19   > business; (b) the kind of occupation, with reference to whether, in the locality, the
     > work is usually done under the direction of the principal or by a specialist without
20   > supervision; (c) the skill required in the particular occupation; (d) whether the
     > principal or the worker supplies the instrumentalities, tools, and the place of work
21   > for the person doing the work; (e) the length of time for which the services are to
     > be performed; (f) the method of payment, whether by the time or by the job; (g)
22   > whether or not the work is a part of the regular business of the principal; and (h)
     > whether or not the parties believe they are creating the relationship of employer-
23   > employee.

     *Borello*, 48 Cal.3d at 351.

24          However, in 2018, the California Supreme Court adopted the "ABC" test for claims

25   arising under California's Wage Orders. *Dynamex Operations W. v. Sup. Ct.*, 4 Cal.5th 903, 957

26   (2018). Under the ABC test, the burden is shifted to the employer to prove that an employee is an

27   independent contractor by proving <u>all</u> of the following three factors:

28

                                                  -18-

1
2
3

(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

4
5
6
7
8

*Id.* Since then, Assembly Bill (AB) 5 took effect on January 1, 2020. AB5 codified the ABC test, and expanded its application to all Labor Code claims. *See* Cal. Lab. Code § 2750.3. Therefore, Zimmer's liability under Labor Code sections 226 and 2802 will be determined by the ABC test from January 1, 2020, to the date of decision in this case.

9

       **2.**        **Common issues will predominate the Court's analysis under *Borello***

10
11
12
13
14
15
16
17
18

      The California Supreme Court has made clear that for purposes of deciding whether to certify a class on the issue of misclassification utilizing the *Borello* test, the relevant inquiry is not the right of control per se, but the evidence of that right. Specifically, "at the certification stage, the relevant inquiry is not what degree of control [Zimmer] retained over the manner and means of [sales representatives' work]. It is, instead, a question one step further removed: Is [Zimmer]'s right of control over its [sales representatives], whether great or small, sufficiently uniform to permit classwide assessment." *Ayala*, 59 Cal.4th at 533. Given the common independent contractor agreement, and uniform policies that apply to all sales representatives in the present case, the answer here is clearly yes. And this reasoning is consistent with many other cases with similar common policies.

19
20
21
22
23
24
25
26
27
28

      For example, in *Villalpando v. Exel Direct Inc*., the court considered delivery drivers' misclassification claims and found that common issues predominated because "drivers are required to sign the same contracts," and defendant's "policies as to safety, vehicle maintenance, grooming, the assignment of delivery routes, and communications with customers, among other things, [] show that the degree of control [it] exercised over the class members makes them employees rather than independent contractors." *Villalpando v. Exel Direct Inc*. 303 F.R.D. 588, 608 (N.D. Cal. 2014). Similarly in *Dalton*, 270 F.R.D. at 563, the court considered certifying misclassification claims and found that "[t]he primary factor, the right to control, is [] susceptible to common proof . . . because the rights and obligations of the class members and Defendant are

-19-

1   set forth in two sets of substantially identical contracts."

2       Likewise, in *Norris-Wilson*, the court found that a common contract satisfied the

3   predominance inquiry relating to misclassification. *Norris-Wilson*, 270 F.R.D. at 608 ("But the

4   parameters of the relationship between DTG and the members of the putative class are spelled

5   out in the same contract, and there is no apparent need to look at each putative class member to

6   make an independent, factual finding as to whether his or her work was controlled by DTG, and

7   if so to what degree."). Also, in *Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198, at *1,

8   *12 (N.D. Cal. Oct. 5, 2011), the court found that a class of massage therapists satisfied the

9   predominance requirement because "[t]he central question to be resolved—whether Perfect Day

10  has the right to control the massage therapists—will be determined based on evidence common

11  to the class" such as the "[independent contractor agreement] signed by every massage therapist"

12  and "the policies and procedures that apply to all massage therapists" and further noting that

13  "common proof also likely resolves [secondary factors such as ] whether the employer retains the

14  right to discharge at will; the kind of occupation, . . . the skill required in the particular

15  occupation; whether the principal or the worker supplies the instrumentalities, tools, and the

16  place of work . . . the method of payment . . . and whether or not the work is a part of the regular

17  business of the principal."

18      In the present case, Plaintiff can similarly rely upon the common agreements, Zimmer's

19  numerous policies and procedures, as well as the testimony of Zimmer personnel and putative

20  class members. And in fact the independent contractor agreement alone speaks to each of the

21  relevant factors under *Borello*. The contract confirms the classification of independent sales

22  representatives; that representatives are paid solely by commissions and that representatives are

23  solely responsible for all business expenses and will receive no employment benefits. The

24  contract establishes that Zimmer requires all employees to agree that they will not sell competing

25  products. The agreement articulates myriad grounds for Zimmer to terminate sales

26  representatives. It articulates the representatives' duties and obligations which include attending

27  required trainings and complying with Zimmer's sales policies. Sales representatives must agree

28  to Zimmer's non-competition and non-solicitation covenants, and must agree to follow all of

-20-

1   Zimmer's compliance policies including attending required compliance trainings. Furthermore,

2   sales representatives must agree to open their books and records to Zimmer for inspection, and

3   ultimately must agree to transfer their business in the event they leave Zimmer. In sum, there is

4   clearly sufficient common evidence to satisfy predominance with respect to Plaintiff's claims

5   under *Borello*.

6        i.      **Common issues will predominate the Court's analysis under the ABC test.**

7        Common questions also predominate under the ABC test. Under the ABC test, Zimmer

8   must prove that sales representatives (1) are free from control in their work, (2) perform work

9   outside of Zimmer's usual course of business, and (3) are customarily engaged in an independent

10  business or trade. Cal. Lab. Code § 2750.3. As discussed above relating to the "right to control"

11  analysis under *Borello*, Zimmer's contract and policies are common evidence of Zimmer's

12  control over sales representatives. Second, Zimmer's usual course of business (the manufacture

13  and sale of medical devices), and the role the proposed class plays in that course of business (an

14  ongoing function, without which Zimmer could not operate) will be proved with common

15  evidence. And finally, because sales representatives "perform the same work, the question of

16  whether [sales representatives] are customarily engaged in an independently established trade,

17  occupation, or business can also be resolved on a class-wide basis." *Johnson v. Serenity Transp.,*

18  *Inc.* 2018 U.S. Dist. LEXIS 129241, at *33 (N.D. Cal. Aug. 1, 2018).

19      ii.      **Sales representatives' entitlement to reimbursements under Lab. Code §**

20               **2802 is a common question.**

21      Common evidence will also drive the analysis of whether sales representatives are

22  entitled to unreimbursed business expenses under Section 2802 which provides: "An employer

23  shall indemnify his or her employee for all necessary expenditures or losses incurred by the

24  employee in direct consequence of the discharge of his or her duties..." Cal. Labor Code §

25  2802(a). Common evidence will determine whether sales representatives are properly classified.

26  And in the event sales representatives are held to be employees, common evidence will

27  demonstrate the kinds and types of expenses that are compensable. As described, Zimmer

28  incorporates a schedule of expense reimbursements and deductions into each sales

-21-

representative's contract. As a result, the parties have a predetermined roadmap as to what expenses sales representatives incur without reimbursement. Furthermore, the same addendum identifies what portion of an expense, if any, that Zimmer will reimburse.

In a similar case, involving sales representatives working for Zimmer's competitor Stryker, employee sales representatives sought to recover unreimbursed business expenses under section 2802. The court found that "common questions predominate in the inquiry as to whether Stryker's business expense reimbursement policy violated Cal. Lab. Code § 2802." *Hopkins v. Stryker Sales Corp*., 2012 U.S. Dist. LEXIS 67101, at *28 (N.D. Cal. May 14, 2012). The court found that Stryker's own policies and documents demonstrated the types of expenses incurred by sales representatives: "here, as discussed above, Stryker's own documents list the categories of 'the more *common* expenses incurred by sales rep in the course of business.'" *Id* at 32 (citation to declaration omitted). Zimmer's documents demonstrate precisely the types of expenses Sales Representatives are likely to incur, and the reimbursement rate, if any, Zimmer provides. Therefore, the parties can easily determine expenses compensable under Section 2802.

### iii.      Common questions predominate Plaintiff's UCL claims.

Common questions also predominate Plaintiff's claims under the UCL. Plaintiff contends that Zimmer misclassified sales representatives under common law, and alternatively, that Zimmer is barred from classifying sales representatives as independent contractors under the Medicare Anti-Kickback statute (again, AKS). If either proposition is true, the class is entitled to the restitution of unreimbursed business expenses and unpaid wages under the UCL.

"A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 173 (2000). In California, wages may be recovered under the UCL. *Id*. And for clarity under the UCL, "'wages' should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which [Plaintiff] is entitled as a part of his compensation. [Citations.]'" *Dep't of Indus. Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084, 1091 (1997). In addition, an "employee's recovery of unlawfully withheld expenses under section

1    2802 is a proper restitutionary remedy under the UCL." *Bowerman v. Field Asset Servs.*, 2018

2    U.S. Dist. LEXIS 84214, *50 (N.D. Cal. May 18, 2018) (quoting *Espejo v. The Copley Press,*

3    *Inc.* 13 Cal.App.5th 329, 367–68 (2017) *and* citing *Harris v. Best Buy Stores*, L.P., 2016 WL

4    4073327, at *10 (N.D. Cal. Aug. 1, 2016)).

5          As discussed previously in the analysis of commonality, Plaintiff's misclassification

6    claim also involves the common question of whether Zimmer can lawfully classify its sales

7    representatives as independent contractors at all. As Zimmer concedes, it operates in a heavily

8    regulated industry. Defs.' Reply Supp. Summ. J. 1:24–:25 (ECF# 100). This regulatory

9    environment includes limitations under the AKS.

10         Therefore, the three predominant issues controlling Plaintiff's UCL claims are (1)

11   whether sales representatives were lawfully classified under either the ABC test, or the Borello

12   test, (2) whether sales representatives can be lawfully classified as independent contractors under

13   the Medicare Anti-Kickback statute, and (3) whether class members were harmed. Furthermore,

14   "plaintiff need not show that a UCL defendant intended to injure anyone through its unfair or

15   unlawful conduct. The UCL imposes strict liability when property or monetary losses are

16   occasioned by conduct that constitutes an unfair business practice." *Cortez*, 23 Cal.4th at 181.

17         Each of these three questions can be resolved using common evidence. First, a

18   determination under the ABC test and alternatively the *Borello* test, can be made with reference

19   to Zimmer's independent contractor agreements, policies governing independent contractors,

20   testimony from Zimmer personnel, and representative testimony from class members. Whether

21   sales representatives in medical device sales can be classified as independent contractors at all

22   under the AKS is largely a question of law that can be resolved with reference to a handful of

23   largely undisputed facts. Finally, the harm suffered by the class can be demonstrated by

24   evaluating the schedule of business expenses Zimmer admits sales representatives incur, as well

25   as the benefits package sales representatives had prior to being converted to independent

26   contractors (as well as examining the benefits package currently available to W2 sales

27   representatives at Zimmer). Therefore, common questions predominate the disposition of

28   Plaintiff's UCL claims.

-23-

1

**3.      A class action is the superior means to address these workers' claims.**

2

"'The purpose of the superiority requirement is to assure that the class action is the most

3

efficient and effective means of resolving the controversy.'" *In re LendingClub Secs. Litig.*, 282

4

F. Supp. 3d at 1184. In weighing the superiority inquiry, "the court should consider class

5

members' interests in pursuing separate actions individually, any litigation already in progress

6

involving the same controversy, the desirability of concentrating in one forum, and potential

7

difficulties in managing the class action . . . ." *Palacios v. Penny Newman Grain, Inc*. 2015 U.S.

8

Dist. LEXIS 87457, at *14 (E.D. Cal. July 6, 2015) (citation omitted). Each of these

9

considerations favor resolution of the issues here on a class-wide basis.

10

First, it would be grossly inefficient to require each sales representative to bring a case

11

challenging Zimmer's practices individually. Doing so would result in increased expense,

12

duplication of discovery, and potential for inconsistent results. Even if damages issues require

13

individualized assessments, the efficiencies gained by the central issue of liability will ultimately

14

benefit all of the class members, as well as Zimmer, by substantially reducing litigation

15

expenses. In addition, the threshold issue of worker misclassification will under any

16

circumstances be decided in this case. Plaintiff has also brought a claim under the Labor Code

17

Private Attorney General Act seeking civil penalties related to the misclassification of workers

18

pursuant to Lab. Code § 226.8. Therefore this court will be required to determine whether

19

similarly aggrieved workers were classified properly, which will presumably include all class

20

members as similarly aggrieved workers.

21

Further, class actions are generally favored in the employment context, especially where,

22

as here, many of the class members are currently employed by Zimmer. Indeed, courts have

23

acknowledged that class actions are superior in wage cases because of the prospect of retaliation.

24

*See e.g.*, *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).

25

As to the remaining factors, there are no other pending cases against defendants relating

26

to the claims alleged here. Furthermore, this case involves a class that has already been identified

27

who live in a limited geographical area (California).

28

-24-

And regarding manageability, the following proposed trial plan demonstrates how this case may be efficiently litigated as a class action.

### Stage 1:  Liability on Labor Code Claims

Plaintiff will present his case-in-chief to the jury. Plaintiff will rely on common proof derived directly from Zimmer's own documents and witnesses, as well as representative testimony from class members. The burden will then shift to Zimmer to present whatever defenses it wishes to advance. Plaintiff will then present his rebuttal case. Unless a directed verdict is appropriate at the close of evidence, the jury will be asked to determine whether Zimmer misclassified sales reps under the ABC test, whether Zimmer misclassified sales reps under the *Borello* test, whether Zimmer failed to reimburse business expenses under Section 2802, and whether Zimmer failed to provide proper itemized wage statements. If the jury returns a verdict against Plaintiff, the trial will end as to the Labor Code claims.

### Stage 2:  Liability on UCL and PAGA Claims

Plaintiff will then present his claims under the UCL and PAGA to the Court. The burden will then shift to Zimmer to present whatever defenses it wishes to advance. Plaintiff will then present his rebuttal case. Again, Plaintiff will rely on common evidence. Unless a directed verdict is appropriate at the close of Plaintiff's presentation, the Court will first be asked to determine whether Zimmer violated the Medicare Anti-Kickback statute for the purposes of the UCL, and whether Plaintiff and the Class are entitled to restitution under the UCL. The Court will then determine whether Zimmer is liable for penalties under PAGA. If during either phase of the trial there is a verdict in favor of Plaintiff, the presentation will move to Phase 3.

### Stage 3:  Damages

In the third phase, the Court (or special master) will hold *Teamsters* hearings, or alternatively may use written questionnaires, to narrow and/or adjudicate issues around the amount of individual class members' relief utilizing tax and accounting records provided by class members, and data provided by Zimmer regarding the cost of benefits it provides to W2 employees, including W2 sales representatives.

-25-

IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification should be granted.

Respectfully submitted,

*/s/ Jason S. Lohr*

Dated: April 23, 2020         _____

Jason S. Lohr
LOHR RIPAMONTI & SEGARICH LLP

-26-