LOHR RIPAMONTI & SEGARICH LLP
Jason Lohr (CA SBN 262267)
Roberto Ripamonti (CA SBN 259123)
140 Geary Street, 4th Fl.
San Francisco, CA 94108
Ph: (415) 683-7266
Fax: (415) 683-7267
Email: jason.lohr@lrllp.com
Email: roberto.ripamonti@lrllp.com

SCHERER SMITH & KENNY LLP
Denis S. Kenny (SBN 178542)
John B. Lough, Jr. (SBN 234782)
140 Geary Street, 7th Fl.
San Francisco, CA 94108
Ph: (415) 433-1099
Fax: (415) 433-9434
Email: denis@sfcounsel.com
Email: john@sfcounsel.com

*Attorneys for Plaintiff and Class Members*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES KARL, on behalf of himself, and on behalf of a class of those similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>ZIMMER BIOMET HOLDINGS, INC., a Delaware corporation; ZIMMER US, INC., a Delaware corporation; BIOMET U.S. RECONSTRUCTION, LLC, an Indiana limited liability company; BIOMET BIOLOGICS, LLC, an Indiana limited liability company; and BIOMET, INC., an Indiana corporation;<br><br>       Defendants. | CASE NO.: 18-cv-04176-WHA<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       May 6, 2021<br>Time:      2:00 p.m.<br>Courtroom:  12<br>Judge:     Hon. William H. Alsup |

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 6, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William Alsup, Plaintiff James Karl, individually and on behalf of the class, will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

1.  Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the Parties;

2.  Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

3.  Approving and directing the mailing of Settlement Notice pursuant to the proposed notice plan;

4.  Setting a Final Approval and Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This motion is supported by the accompanying memorandum of points and authorities, the declaration of Jason Lohr filed concurrently herewith; all records and pleadings on file with the Court; all further evidence and oral argument that may be presented at the hearing on this motion; and all other matters as the Court deems proper.  Defendants Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC ("Defendants") do not oppose this motion.

Dated: April 30, 2021

Respectfully submitted,
LOHR RIPAMONTI & SEGARICH LLP

/s/ Jason Lohr
Jason Lohr

Dated: April 30, 2021

SCHERER SMITH & KENNY LLP

/s/ Denis S. Kenny
Denis S. Kenny
*Attorneys for Plaintiff JAMES KARL and the Class*

-2-

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND ......................... 2

III.  THE PROPOSED SETTLEMENT TERMS ............................................... 5

   A.  The Class Definition and Class Period ........................................... 5

   B.  Monetary and Non-Monetary Settlement Relief for the Class ........................ 6

   C.  Release of Claims ........................................................... 7

   D.  Notice .................................................................... 7

   E.  Plan of Allocation .......................................................... 8

   1.  Payments to Settlement Class Members ......................................... 8

     2.   Class Counsels' Fees and Costs ............................................ 8

     3.   LWDA Payment ........................................................ 8

     4.   Settlement Administrator ................................................. 8

     5.   Class Representative Does Not Seek an Enhancement Award ..................... 9

   F.  Class Representatives and Class Counsel ......................................... 9

   G.  Plaintiff James Karl's Potential Individual Claims ................................. 9

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE 9

   A.  Plaintiff has vigorously represented the class. ................................... 11

   B.  The Settlement was Negotiated at Arm's Length After Substantial Litigation ................ 12

   C.  The Settlement Provides Significant and Appropriate Relief and is in the Range of Possible Approval .......................................................... 13

   D.  The Risks of Continued Litigation .............................................. 16

   E.  The Settlement Treats Class Members Equitably .................................. 18

-i-

F.   Experience and View of Counsel....................................................... 18

V.   THE SETTLEMENT SATISFIES THE DISTRICT'S PROCEDURAL GUIDANCE, AS WELL AS THIS COURT'S GUIDANCE FOR CLASS ACTION SETTLEMENTS ................ 18

A.   There Is No Difference Between The Settlement Class And The Class Certified In This Case (Guidance 1(a)) ........................................................................ 19

B.   The Releases Mirror the Certified Claims (Guidance 1(c)).............................. 19

C.   The Parties Request the Approval of CPT Group Who Has Already Provided Notices in this Case (Guidance 2) ........................................................................ 20

D.   The Proposed Notice Plan is the Best Practicable Notice (Guidance 3 & 5) ................... 21

E.   Attorneys' Fees and Expenses (Guidance 6) ................................................. 22

F.   Service Awards (Guidance 7) ................................................................ 22

G.   Class Action Fairness Act (Guidance 10) .................................................... 23

H.   Past Distributions (Guidance 11) ........................................................... 23

VI.  PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL .............................. 23

VII. CONCLUSION.......................................................................... 24

-ii-

# TABLE OF AUTHORITIES

**CASES**

*Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal. Jan. 17, 2017) ...................................................................................................................... 16

*Blandino v. MCM Constr., Inc.,* No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014) .......................................................................................................................... 16

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979)............................................ 16

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) ................................ 10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .............................. 10, 12

*Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) .......................................................... 13

*Dynamex Operations W. v. Sup. Ct.,* 4 Cal. 5th 903 (2018), ....................................................... 17

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ...................................... 12

*Ficalora v. Lockheed Cal. Co.* 751 F.2d 995, 997 (9th Cir. 1985)............................................... 12

*Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998)........................................................... 10

*Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020) .................................................................................................... 15, 23

*Hendricks v. Starkist* Co, No. 13-cv-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015) ...................................................................................................................................... 13

*In re Gen. Motors Corp.*, 55 F.3d 768, 806 (3d Cir.1995) .......................................................... 16

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ...................................................................................................................................... 12

*In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) .......................................................................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) .................................................. 11

-iii-

*Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)........................................ 21

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016)..................... 14

*Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008)................................ 10

*Tsyn v. Wells Fargo*, No. 14-cv-02552-LB (N.D. Cal. Nov. 1, 2018), ECF 172 ............ 15, 16, 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002)........................................ 22

**STATUTES**

28 U.S.C. § 1292............................................................................................................................5

29 U.S.C. § 1001 et seq................................................................................................................3

29 U.S.C. § 201 *et seq*.................................................................................................................3

29 U.S.C. § 213(a)(1)....................................................................................................................4

Cal. Bus. & Prof Code §17200 et seq. .........................................................................................3

Cal. Lab. Code § 245 et seq. .........................................................................................................3

Cal. Lab. Code § 925 .....................................................................................................................4

Cal. Lab. Code § 1171 ...................................................................................................................4

Cal. Lab. Code § 2699 ...................................................................................................................8

Cal. Lab. Code § 2802 ..............................................................................................................3, 15

Cal. Lab. Code § 3200 et seq. .......................................................................................................3

Cal. Unemp. Ins. Code § 100 et seq. ............................................................................................3

**Itemized Wage Statements:** Cal. Lab. Code §§ 226, 226.3 .......................................................3

IWC Wage Order 4-2001 ...............................................................................................................3

**Overtime Wages:** Cal. Lab. Code §§ 200-204, 215, 216, 226, 226.6, 510(a), 558, 1194, 1198,
and 1199.........................................................................................................................................3

**Meal and Rest Periods:** Cal. Lab. Code §§ 200-204, 215, 218.5, 218.6, 225.5, 226, 226.3,
226.6, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 2698, 2802, and 2804.... 3

-iv-

Fed. R. Civ. P. 23 ................................................................................................................ passim

**OTHER AUTHORITIES**

U.S. District Court for the Northern District of California, Procedural Guidance for Class Action
Settlements (modified Dec. 5, 2018), https://www.cand.uscourts.gov/forms/procedural-
guidance-for-class-action-settlements/ .................................................................. 10, 19, 20, 21

**TREATISES**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:41 (4th ed. 2002) .......... 12

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL            CASE NO.: 18-cv-04176-WHA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff-and-class-representative James Karl ("Plaintiff" or "Class Representative") respectfully requests the Court's preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") resolving the above-captioned action (the "Action"), which alleges that Defendants Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC ("Defendants") unlawfully misclassified California sales representatives as independent contractors.

Pursuant to the terms of the Settlement, Defendants agree to create a non-reversionary common fund and maximum settlement amount of $7,000,000.00 to compensate the Settlement Class,[1] comprising of approximately 246 members, to resolve claims under the California Labor Code, Private Attorneys General Act ("PAGA"), and Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.*, and to pay for settlement administration costs, and attorneys' fees and costs. In addition, Defendants have agreed that upon final approval of the settlement, Settlement Class Members who are currently contracting with Defendants will be offered employment as IRS Form W-2 employees. As discussed below, the Settlement represents a favorable result for the Settlement Class, and is fair, reasonable, and adequate in all respects.

In exchange for the monetary and non-monetary relief provided by the Settlement, the Settlement Class Members would release claims related to Defendants' alleged failure to reimburse business expenses, claims related to the failure to provide employment-related benefits and perquisites, claims related to the willful misclassification of Settlement Class members, claims related to unfair business practices based upon the alleged misclassification of employees, claims for statutory penalties under the Labor Code and civil penalties under the Private Attorneys General Act ("PAGA"), and claims for attorneys' fees and costs.

---

[1] Capitalized terms, not otherwise defined in this Motion, are defined in the Settlement Agreement for which Plaintiff moves for preliminary approval.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL          CASE NO.: 18-cv-04176-WHA

This Settlement is the product of extensive arm's-length negotiations between the Parties. After two-and-a-half years of hard-fought litigation, settlement negotiations occurred over a two-month period in three separate settlement conferences with the Honorable Donna M. Ryu. Class Counsel thoroughly examined both the facts and rapidly developing law involved in this case, reviewed, and analyzed thousands of documents produced by Defendants, took, and defended named party depositions, defended six Class Member depositions, spent scores of hours speaking with Class Members, and ultimately certified the California class of sales representatives. Class Counsel possess a firm understanding of both the strengths and weaknesses of the Class Representative's allegations and Defendants' potential defenses. Both prior to and during the settlement negotiations, Class Counsel faced formidable opposition from Defendants' counsel who zealously defended their clients' positions. Both sides were well-represented by seasoned and informed counsel who vigorously pursued their respective clients' interests.

In sum, the Settlement provides a process for reclassification of independent contractor sales representatives in California as employees, which is the primary objective of the litigation. In addition, the settlement provides substantial monetary relief to the Settlement Class. Moreover, the Settlement will provide monetary and non-monetary relief immediately, without the inherent risks of continued litigation within an uncertain legal landscape relating to independent contractor classification in California. The Parties reached the Settlement after conducting significant discovery and the benefit of litigating numerous litigation milestones, including conditional certification of a FLSA collective action, a motion for summary judgment, and a motion for class certification, with the Parties seeking review by the Ninth Circuit of several rulings.  Consequently, the Settlement satisfies all of the criteria for preliminary approval.

## II.      OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND

Defendants design, manufacture and distribute various medical products and devices including orthopedic reconstructive products, sports medicine, biologics, extremities, and trauma products.  (Lohr Decl. ¶ 2).  The primary customers are surgeons, other specialists, hospitals, and

other health care providers. (*Id.*)  In August 2015, Plaintiff signed a sales associate agreement with Defendants that classified him as an independent contractor. (*Id.*) Pursuant to the agreement, Plaintiff sold medical devices in the surgical field—particularly, orthopedics—such as such as replacement hips and knees.  (*Id.*)

On July 12, 2018, Plaintiff James Karl filed a class action complaint in the United States District Court for the Northern District of California asserting claims under the Fair Labor Standards Act ("FLSA"; 29 U.S.C. § 201 et seq.), the California Labor Code, and California's Unfair Competition Law ("UCL"; Cal. Bus. & Prof. Code § 17200 et seq.) arising from Defendants' decision to classify sales representatives as independent contractors. (Lohr Decl. ¶ 2, ECF 1) The lawsuit was styled as a nationwide collective action under the FLSA, and a California class action under Rule 23 of the Federal Rules of Civil Procedure ("Rule"). *Id.* On January 2, 2019, Mr. Karl filed an amended complaint adding representative claims under the PAGA also based upon Defendants' employment classification decision.[2] (Lohr Decl. ¶ 2, ECF 41).

Shortly after the initiation of the case, Defendants moved to have the case transferred to Indiana based upon a forum selection provision in Mr. Karl's sales representative agreement. (Lohr Decl. ¶ 3, ECF 14). The district court declined to transfer the case due to the (relatively)

---

[2] In his amended complaint, Plaintiff alleged the following claims against Defendants: (1) violation of Fair Labor Standards Act ("FLSA"); (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 200-204, 215, 216, 226, 226.6, 510(a), 558, 1194, 1198, and 1199, IWC Wage Order 4-2001); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512, 516, IWC Wage Order 4-2001); (4) Failure to Provide Rest Periods (Cal. Lab. Code §§ 226.7, 516, IWC Wage Order 4-2001); (5) Failure to Provide Itemized Wage Statements (Cal. Lab. Code §§ 226, 226.3, IWC Wage Order 4-2001); (6) Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802); (7) Unfair Business Practices (Cal. Bus. & Prof. Code §17200 et seq) with predicate unlawful violations of 29 U.S.C. § 201 et seq., Cal. Lab. Code §§ 226, 226.7, 226.8, 510, 512, 1182.12, 1194, 1197, 1197.1, 1198, and 2802, the Healthy Workplaces, Healthy Families Act of 2014, Cal. Lab. Code § 245 et seq.; the Worker's Compensation Act, Cal. Lab. Code § 3200 et seq.; the Unemployment Insurance Code, Cal. Unemp. Ins. Code § 100 et seq.; the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 et seq.; and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.; (8) California Private Attorney General Act (Cal. Lab. Code §§ 200-204, 215, 218.5, 218.6, 225.5, 226, 226.3, 226.6, 226.7, 510, 512, 516, 558, 1174, 1194, 1194.2, 1197, 1197.1, 2698, 2802, and 2804).

1    recent enactment of Labor Code § 925 prohibiting enforcement of non-California forum-

2    selection clauses in employment contracts.  (Lohr Decl. ¶ 3, ECF 27). Defendants disagreed with

3    the district court's analysis and filed a petition for a writ of mandamus in the Ninth Circuit. (ECF

4    33).  Defendants argued that mandamus was warranted because the district court failed to apply

5    the reasoning in the United State Supreme Court's decision in *Atlantic Marine*. (9th Cir. Case

6    No. 18-73216, ECF 1-2). The Ninth Circuit denied Defendants' mandamus petition. (*Id.* at ECF

7    2).  Defendants then filed a petition for a writ of certiorari in the United States Supreme Court.

8    (U.S. Case No. 18-1484 at ECF 1). Class Counsel filed a brief in opposition with the assistance

9    of Public Citizen Litigation Group counsel. (*Id.* at ECF 2).  That writ was also denied. (*Id.* at

10   ECF 3).

11         On May 5, 2019, Plaintiff moved to conditionally certify a collective action under the

12   FLSA. (Lohr Decl. ¶ 4, ECF 53). The Court conditionally certified the collective and ordered

13   notice be delivered to the putative collective action members so they could opt-in to the action.

14   (Lohr Decl. ¶ 4, ECF 70). However, shortly after the FLSA opt-in notice period began,

15   Defendants moved for summary judgment as to Plaintiff's individual claims. (Lohr Decl. ¶ 4,

16   ECF 85). The Parties briefed and argued the dispositive motion during the FLSA opt-in notice

17   period. (Lohr Decl. ¶ 4, ECF 85, 97, 100). On October 25, 2019, the Court issued its Order on

18   Defendants' Motion for Summary Judgment. (Lohr Decl. ¶ 4, ECF 118). In that Order, the Court

19   found that it need not decide whether Defendants misclassified Plaintiff as an independent

20   contractor as to certain claims because even assuming that Plaintiff was an employee, he

21   qualified as an exempt outside salesperson under California and Federal law, and was therefore

22   not eligible to receive overtime under the FLSA or under California law, and not eligible for

23   meal periods or rest breaks under California law. (Lohr Decl. ¶ 4, ECF 118). On that basis, the

24   Court granted summary judgment against Plaintiff on his FLSA claim for unpaid overtime, and

25   Labor Code claims for unpaid overtime, and meal and rest period premiums. (ECF 118 at 4–10).

26         However, due to questions regarding the application of 29 U.S.C. § 213(a)(1) and

27   California Labor Code § 1171 to the outside salesperson analysis, the Court certified its

28

                                             -4-

summary judgment order for appeal pursuant to 28 U.S.C. § 1292(b)(b). (Lohr Decl. ¶ 5, ECF 127) Class Counsel filed a petition for permission to appeal in the Ninth Circuit Court of Appeals. (Lohr Decl. ¶ 5, ECF 129). Defendants opposed that petition. Ultimately, the Ninth Circuit declined to hear that appeal (Lohr Decl. ¶ 5, ECF 131), and shortly thereafter, Plaintiff agreed to decertify the collective action under the FLSA (Lohr Decl. ¶ 5, ECF 139).

Plaintiff then moved to certify the class under Rule 23(b)(3). (Lohr Decl. ¶ 6, ECF 142). On July 28, 2020, the Court issued an order certifying the class and directing the Parties to prepare a notice to the class. (Lohr Decl. ¶ 6, ECF 169). However, shortly after the Court's decision, Defendants requested permission to appeal the decision granting class certification pursuant to Rule 23(f). (Lohr Decl. ¶ 6, ECF 170).

During the pendency of that Petition, the Parties entered into a series of settlement conferences before Magistrate Judge Donna M. Ryu. (Lohr Decl. ¶ 7). As a result of the framework developed during the settlement discussions, the parties engaged in further settlement efforts in an effort to finally resolve this litigation. The Parties were ultimately successful, and on April 7, 2021, signed an agreement settling this matter for which the Parties now seek approval. *Id.*[3]

### III.     THE PROPOSED SETTLEMENT TERMS

#### A.  The Class Definition and Class Period

Subject to Court approval, the parties have stipulated to certify a Settlement Class defined as "any person who, during the period commencing June 24, 2015 through the date on which preliminary approval of the class settlement is granted by the Court, was hired or otherwise engaged as an independent contractor for the purposes of solicitation or sales of Zimmer Biomet products and/or services in California by Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC, or any one of them." (Lohr Decl. ¶ 8, Ex. 1, Section I.(E)). The Parties anticipate that approximately 246 individuals fit that definition. *Id.*

---

[3] A copy of the proposed settlement agreement is submitted as Exhibit A to the declaration of Jason Lohr.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL          CASE NO.: 18-cv-04176-WHA

The class period is defined as the time period between June 24, 2015 through the Preliminary Approval Date ("Class Period"). *Id.* The claims release period is defined as the time period between June 24, 2015 through the Final Approval Date.

### B.  Monetary and Non-Monetary Settlement Relief for the Class

The Settlement provides both a monetary and non-monetary component. In return for a release of all claims that were asserted in the action (excluding claims made under the FLSA), Defendants shall create a non-reversionary $7,000,000.00 gross settlement common fund. *Id.* Because this is not a claims-made settlement, Class Members will not be required to submit a claim to participate in the Settlement. *Id.* Of the $7,000,000.00 gross settlement fund, $105,000.00 is attributable to the PAGA claims. ("PAGA Settlement Amount") The California Labor and Workforce Development Agency will receive 75% of the PAGA Settlement Amount and Settlement Class participants will receive 25% of the PAGA Settlement Amount, which, shall be included in the Net Settlement Amount to be distributed to Participating Class Members. *Id.*

After deducting requested attorneys' fees and costs, the amount due to the California Labor Workforce Development Agency, and the amount due to the third-party administrator for the cost of settlement administration, each class member who does not opt out will be paid a pro rata share of the Settlement Amount based on the number of pay periods that the Class Member performed services as a direct independent contractor sales representative in California during the Class Period. Class members will be responsible for paying any taxes arising from the settlement payments. *Id.*[4]

In addition to the monetary component, the Settlement also provides a process for the reclassification of sales representatives from independent contractor to employee status. *Id.* No later than either July 1, 2021, or thirty days after the Effective Date of the Settlement, whichever date is later, Defendants will implement a change in the structure of their California sales

---

Settlement checks not cashed within 180 days will be voided and the funds will be sent to the California State Controller's Office's Unclaimed Property Division. There will be no designated *cy pres* recipient or reversion of funds to Defendants. Settlement Agreement ¶ III(C)(3).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL          CASE NO.: 18-cv-04176-WHA

operations whereby Class Members currently classified by Defendants as IRS Form 1099 independent contractor sales representatives in direct territories within California will be offered employment as IRS form W-2 employees (either directly with Defendants or with one or more third-party distributor entities).[5] *Id*.

### C. Release of Claims

In exchange for the consideration described above, the Settlement provides that the Settlement Class will release all claims arising from the facts alleged in this action (excluding Plaintiff's FLSA and California Labor Code claims that were summarily adjudicated. *Id*.

### D. Notice

Subject to Court approval, the parties seek to approve CPT Group as the Settlement Administrator. After updating address information provided by Defendants through the National Change of Address database, the Settlement Administrator will mail the Class Notice to each class member. *Id*. The Settlement Administrator will also email the notice to the last known email addresses of Settlement Class Members. *Id*. The Class Notice shall include a "Benefit Form" identifying the number of work periods that will be used to calculate the Class Member's respective Settlement Share, as well as a means for contesting the number of work periods. The form will also include a pre-printed change of address form. *Id*. The Class Notice will include instructions in English on how to opt-out of, or object to, the settlement; as well as information on how to contact Class Counsel and the Settlement Administrator. *Id*. The Settlement Administrator will establish a website for class members to view and download the important documents such as the Complaint, Settlement Agreement, Class Notice, opt-out form, motion for approval and attorneys' fees, and related orders in this case. *Id*.

---

[5] The Settlement allows an exception to reclassification for highly compensated sales representatives. In the event a class member whose average annual income exceeds $300,000 (the "Highly Compensated Group") declines the employment offer, then Defendants reserve the right to continue to engage that person as a non-employee IRS Form 1099 independent contractor. Defendants estimate the total number of persons eligible for the Highly Compensated Group at approximately 18 to 20 individuals. (Lohr Decl. ¶ 16). The Settlement also requires that sales representatives must also be performing their job in a satisfactory manner to be offered employment.

With the exception of remailings due to returned Class Notices and a reminder card for Settlement Class Members who have not cashed their checks by the applicable deadline (stale date), no other materials will be sent to Settlement Class Members. *Id*. Because this is not a claims-made settlement, Class Members will not be required to make a submission to participate in the settlement. *Id*.

### E. Plan of Allocation

#### 1. Payments to Settlement Class Members

From the cash portion of the settlement fund, payments to individual Settlement Class Members shall be calculated and apportioned based on the number of bi-weekly pay periods of work during the Class Period after deducting attorneys' fees and costs, the cost of settlement administration, and payment to the LWDA. *Id*.

#### 2. Class Counsels' Fees and Costs

Pursuant to the parties' agreement, Class counsel will seek a fee award not to exceed $1,960,000 or 28% of the Maximum Settlement Amount. Class Counsel will also seek reimbursement of costs in an amount not to exceed $25,645. Because this is a non-reversionary, common fund settlement, any portion of the requested fees and costs that are not approved by the Court would be distributed to the class members. *Id*.

#### 3. LWDA Payment

The Parties have agreed to pay the LWDA $78,750 (or 75% of the $105,000 attributed to the PAGA claim) per Labor Code § 2699 (i) to settle this claim, and the Parties have submitted or will submit this settlement to the California Labor Workforces Development Agency ("LWDA") per California Labor Code § 2699(l)(2). *Id*. This payment to the LWDA provides real value to the LWDA and will assist the State in enforcing California's labor laws and regulations.

#### 4. Settlement Administrator

The Settlement Administrator, CPT Group, has agreed to a cap for its services in the amount of $12,500. (Lohr Decl. ¶ 9). Class Counsel solicited bids from two other well-known

-8-

settlement administrators. CPT Group's bid was competitive, and the parties believe that it is better to continue using CPT Group as settlement administrator in this case. *Id*.

### 5. Class Representative Does Not Seek an Enhancement Award

Plaintiff is not seeking an enhancement award and therefore the settlement pool will not be reduced by any special payments to the Class Representative. (Lohr Decl. ¶ 19).

### F.  Class Representatives and Class Counsel

Subject to Court approval, the Parties have stipulated that Plaintiff James Karl be appointed Class Representative. (Lohr Decl. Ex. 1, Settlement Agreement section III(L)(7)(b)).

Also subject to Court approval, the Parties have stipulated that Jason Lohr and Roberto Ripamonti of Lohr, Ripamonti & Segarich LLP, and Denis Kenny and John Lough of Scherer, Smith & Kenny LLP be appointed Class Counsel for the Settlement Class. (Lohr Decl. Ex. 1, Settlement Agreement section I(F)).

### G.  Plaintiff James Karl's Potential Individual Claims

Plaintiff continues to work as a sales representative for Defendants and has potential individual, non-class claims against Defendants. Plaintiff and Defendants are separately negotiating a possible resolution of these individual, non-class claims. However, while these potential claims have not yet been resolved, they will not impact the proposed Settlement. (Lohr Decl. ¶ 19).

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

Rule 23(e) of the Federal Rules of Civil Procedure requires a preliminary evaluation of a proposed class action settlement, the first step in a three-stage process. At this stage, the Court must initially determine whether it "will likely be able to" (i) approve the settlement as fair, reasonable, and adequate; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Then, after potential class members are given notice and an opportunity to object, the Court must hold a hearing to consider whether to approve the settlement and certify the settlement classes. *See* Fed. R. Civ. P. 23(e)(2), (4), (5). In this case the

Court has already certified a 23(b)(3) class (ECF 169), and since the settlement class is identical to the class already certified, at this stage the Court need only determine whether it will likely be able to approve the settlement as fair, reasonable, and adequate.

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998). At the same time, public policy "strong[ly] … favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Therefore, in exercising its discretion, the Court should give "proper deference to the private consensual decision of the parties because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

Here, the factors articulated in Rule 23(e)(2) weigh in favor of approving the settlement. The Class Representative has thoroughly and vigorously litigated this case. The settlement was the product of lengthy, adversarial negotiations facilitated by Judge Ryu, a Magistrate Judge in this district. And most importantly, the settlement provides substantial relief including both monetary relief and an agreement to transition direct independent contractor sales representatives to employee status. Furthermore, the factors identified in this District's Procedural Guidance, as well as this Court's standing order also support approval. *See* U.S. District Court for the Northern District of California, Procedural Guidance for Class Action Settlements (modified Dec. 5, 2018), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ ("Guidance"); Notice and Order re Putative Class Actions and Factors to Be Evaluated for Any Proposed Settlement, ECF 12.

1

**A.  Plaintiff has vigorously represented the class.**

2        At preliminary approval, courts look for indications that the parties carefully investigated

3   the claims before reaching a resolution, including propounding, and reviewing discovery. *In re*

4   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC),

5   2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[E]xtensive review of discovery materials

6   indicates [Plaintiffs have] sufficient information to make an informed decision about the

7   Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal*

8   *Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

9   Here, the settlement is proposed only after significant discovery and numerous substantive

10  litigation milestones have been concluded.

11       Class Counsel has performed extensive investigation, research, and analysis of the

12  Class's claims through multiple requests for production of documents and interrogatories,

13  intensive meet and confers, and significant discovery motion practice in this Court. Defendants

14  produced over six thousand pages of fact-related material for review. Class Counsel has taken

15  the deposition of Defendant's corporate representative as well as the individual responsible for

16  Defendant's West-Coast sales organization. In addition, Class Counsel has interviewed

17  approximately 41 members of the class and defended the depositions of 6 class members who

18  submitted declarations in support of Plaintiff's Motion for Class Certification. Further,

19  Defendants produced substantial employment and pay data in advance of the Parties' Mandatory

20  Settlement Conference. In sum, this discovery allowed Plaintiff to adequately evaluate the merits

21  and value of the class claims.

22       Moreover, the Settlement in this case occurred after numerous substantive litigation

23  milestones with little discovery remaining to be done prior to trial. At the outset of this litigation,

24  the Parties litigated threshold issues in this case including where the litigation should occur and

25  subject to what jurisdiction's law. Plaintiff performed adequate discovery to conditionally certify

26  a FLSA collective, as well as a California class under Rule 23. And the Parties conducted

27  discovery necessary to fully brief and litigate to conclusion Defendants' Motion for Summary

28

-11-

Judgment that challenged all claims in this case with the exception of Plaintiff's claims under the

Private Attorneys General Act. Moreover, this case has included three separate attempts to

appeal the District Court's rulings in the Ninth Circuit, and a petition for review in the United

States Supreme Court. As a practical matter, the Parties have achieved all of the litigation

milestones short of trying the case.

### B.  The Settlement was Negotiated at Arm's Length After Substantial Litigation

     "'Before approving a class action settlement, the district court must reach a reasoned

judgment that the proposed agreement is not the product of fraud or overreaching by, or

collusion among, the negotiating parties.'" *Class Plaintiffs*, 955 F.2d at 1290  (quoting *Ficalora

v. Lockheed Cal. Co.* 751 F.2d 995, 997 (9th Cir. 1985)). Where a settlement is the product of

arm's-length negotiations conducted by capable and experienced counsel, the court begins its

analysis with a presumption that the settlement is fair and reasonable. *See* 4 Alba Conte &

Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *In re Heritage Bond

Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *Ellis v. Naval

Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

     Here, the Settlement was reached after extensive arm's-length negotiations informed by

substantial formal and informal discovery. First, the Settlement was reached after a thorough

investigation into and discovery of the legal and factual issues in the Action. Class Counsel

conducted an extensive investigation into the factual underpinnings of the practices challenged,

as well as the applicable law. The parties exchanged over 22,170 documents in this case. As

indicated above, Class Counsel deposed Defendants' corporate representative as well as the

individual responsible for Defendants' west-coast sales organization. Further, Class counsel has

interviewed approximately 41 members of the Class and defended the depositions of 6 class

members who submitted declarations in support of Plaintiff's Motion for Class Certification. In

addition, Defendants produced substantial employment and pay data in advance of the Parties'

-12-

Mandatory Settlement Conference, including pay and work data for each individual class member.

Moreover, the Settlement was reached only after the parties participated in three separate settlement conferences before the Honorable Donna Ryu. Throughout the settlement conferences, counsel vigorously advocated for their respective clients' positions. However, notwithstanding the contentious nature of the settlement conferences, the parties were able to come to an agreement in principle with the assistance Judge Ryu and were later able to negotiate the details of the settlement.

In sum, the Settlement was reached only after Class counsel conducted an extensive factual investigation and discovery into the Class's misclassification claims and after substantial litigation including conditional certification of a FLSA collective, summary judgement, and class certification under Rule 23. As a result, Class counsel had an in-depth understanding of the claims and damages and had the necessary information before entering into settlement negotiations, which allowed Class counsel to adequately assess the strengths and weaknesses of the case and to balance the benefits of settlement against the risks of further litigation. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt the Settlement's fairness.

### C.  The Settlement Provides Significant and Appropriate Relief and is in the Range of Possible Approval

To grant preliminary approval of the proposed Settlement, the Court need only find that the settlement falls withing the range of possible approval. *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). Evaluating whether a proposed settlement falls within this spectrum entails focus "on substantive fairness and adequacy," and weighing "Plaintiffs' expected recovery … against the value of the settlement offer." *Hendricks v. Starkist Co*, No. 13-cv-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015) (quotation omitted). And "[i]n determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery

balanced against the value of the settlement offer." *Id.; see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120–21 (N.D. Cal. 2016).

Here, the Settlement provides substantial relief to the class. First, the Settlement provides for a common fund that will be distributed to the class based upon length of service. And second, the Settlement provides a process for the reclassification of independent contractors to employees. In sum, the Settlement compensates each Settlement Class member for past business expenses and potential employment-related benefits and ensures that future business expenses will be paid by Defendants and Settlement Class Members will be eligible for employment-related benefits in the future.

### *Monetary benefits*

The monetary benefits under this settlement are significant. The settlement provides for the creation of a $7,000,000.00 common fund for distribution to the Settlement Class members on a pro rata basis based upon bi-weekly service pay periods.  There are approximately 10,412 monthly pay periods covered by this case and approximately 246 sales representatives who provided covered services during the class period. The gross settlement represents $336 per bi-weekly pay period or $672 per month. While Settlement Class members will receive varying amounts based upon length of service, if a Settlement Class member had worked during the entire class period, that class member would receive approximately $47,040. Further, the gross settlement amount represents a recovery that is approximately 6.9% of what Plaintiff contends is Defendants' total potential exposure (excluding amounts that might be recovered under PAGA that will be discussed below).

Specifically, in the event that the Class prevailed on all claims, the Class would be entitled to recover damages under Lab. Code § 2802 (business expense reimbursement), Lab. Code § 226 (itemized statement penalties), and Bus. & Prof. Code § 17200 (restitution of the value of unpaid employment benefits an perquisites). (Lohr Decl. ¶ 11). In the event that the Class was able to recover the maximum amount of damages alleged, the Class would recover $15,618,000 in business expense reimbursements, $1,024,750 in itemized statement penalties,

-14-

and $31,553,766 in restitution under the UCL. Therefore, the maximum potential award in this case (excluding PAGA penalties) is estimated to be $48,196,516. (*Id.*)

The $7,000,000 settlement amount here exceeds on a per person/work period basis two recent cases involving sales representatives seeking reimbursement for business expenses under Labor Code § 2802. In *Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020), the Court approved a settlement of $10,235,000 ($8,500,000 in cash plus $1,735,000 in future payments for business expenses) for a class of 3,297 California Financial Advisors. In that case, the gross settlement represented $94.72 per monthly pay period or $3,595 on average per individual. Here, in total, the gross settlement represented a recovery that was approximately 6.6% of the Defendant's total potential exposure.

Similarly, this settlement also exceeds the recovery in another recent case seeking reimbursement for business expenses: *Tsyn v. Wells Fargo*, No. 14-cv-02552-LB (N.D. Cal. Nov. 1, 2018), ECF 172. In *Tsyn*, plaintiffs (also financial advisors) sought to recover unpaid business expenses under Labor Code 2802, as well as overtime compensation based upon claims of misclassification. Magistrate Judge Beeler approved a settlement in the amount $9,500,000. The settlement in *Tsyn* equated to approximately $94.72 per work month where the settlement in this case is approximately $672 per month. The present settlement is also superior in terms of total exposure. The settlement here represents 6.9% of Defendants total exposure (excluding PAGA claims) while the settlement in *Tsyn* represented 5.75% of Wells Fargo's total exposure.

And for the purposes of this comparison, Plaintiff is calculating total verdict value including all claims without regard to the likelihood of success. For example, it is nearly certain that the Settlement Class is not entitled to compensation for unpaid employment benefits and perquisites due to ERISA preemption. And if the calculation of total exposure in this case excluded amounts relating to unpaid benefits and perquisites (amounts that are unlikely to be recovered), the percentage of recovery would be even higher. If the total verdict value excluded claims relating to unpaid benefits the Settlement Amount would represent approximately 42% of Defendants' exposure relating to unpaid business expenses and itemized statement penalties.

-15-

*Nonmonetary benefits*

If the Settlement consisted solely of the monetary relief previously discussed, it would represent an excellent result for the class. However, the Settlement also ensures that Defendants' California sales representatives will have the opportunity to be reclassified as employees and will therefore benefit from the rights and protections afforded to employees under California law. While it is difficult to quantify a value of this benefit, it certainly has significant value and must be taken into consideration in determining the reasonableness of the settlement.

*PAGA Payment*

The payment to the Labor and Workforce Development Agency to compromise the PAGA claims is well within the range awarded by other courts both in terms of a relative amount and absolute amount. In *Tsyn v. Wells Fargo Advisors* discussed above, Judge Beeler approved a $20,000 allocation to the LWDA from a $9,500,000 gross settlement representing 0.2% of the total settlement. In *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal. Jan. 17, 2017), a FLSA case, the Court approved a payment of $30,000 to the LWDA from a $4,900,000 settlement representing 0.6% of the total settlement. In *Blandino v. MCM Constr., Inc.,* No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014), a wage and hour class action, this Court approved a $25,000 payment to the LWDA from a $865,000 settlement representing 2.9% of the total settlement. In the present case, the parties have allocated $105,000 (1.5% of the settlement amount) to the PAGA payment. This amount is well within the range of allocation approved in the Northern District.

### D.  The Risks of Continued Litigation

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re Gen. Motors Corp.*, 55 F.3d 768, 806 (3d Cir.1995) ("The present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

1    The law governing employment classification in California is in a period of flux and

2    reconsideration. Specifically, litigating the impact of the California Supreme Court's decision in

3    *Dynamex Operations W. v. Sup. Ct.,* 4 Cal. 5th 903 (2018), including what exactly is required for

4    Plaintiffs to prevail under that standard (including Prong B), and whether it applies to all of

5    Plaintiffs' claims, would be a complicated and uncertain endeavor. This is all the more true given

6    the history of the present litigation where three of this Court's decisions have been brought

7    before the Court of Appeals for reconsideration.

8        This uncertainty also includes the question of whether the *Dynamex* "ABC" test applies

9    to expense reimbursement claims (Plaintiffs' primary claim for damages). And in the present

10   case—simply due to timing—the likelihood that both the "ABC" test and the *Borello* test apply

11   to different time periods for the same claims. And in the event that some portion of the claims

12   are governed by the *Borello* test, Plaintiff recognizes that, under the multi-factor *Borello* test

13   (which the California Supreme Court recognized in *Dynamex* has led to uncertainty regarding the

14   employee status question, *see id.* at 33–34), there is a risk that a jury would not find that Class

15   Members were employees.

16       Moreover, there is an ongoing debate in the California legislature regarding how

17   employee classification should be treated in California. This debate includes corporate use of the

18   referendum process to pass legislation that exempts certain workers from the ABC test. For

19   example, recently California voters approved Proposition 22, a ballot measure that allows gig

20   economy companies to continue treating drivers as independent contractors notwithstanding

21   *Dynamex*.

22       Therefore, the legal landscape for independent contractors in California is uncertain. Due

23   to recent changes in the law, it is difficult to know how a jury (or court) would decide a given

24   issue. And due to legislative action in this area, and the likelihood that businesses will continue

25   to utilize the ballot initiative process, there is a possibility of continued changes during this

26   litigation. With these points in mind, given the unusual amount of uncertainty in this area of law,

27   Plaintiff and his counsel believe that the Settlement is in the best interest of the Settlement Class.

28

-17-

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL          CASE NO.: 18-cv-04176-WHA

### E.  The Settlement Treats Class Members Equitably

This Settlement fundamentally treats all Class Members equally. The monetary component benefits all Class Members equally by providing reimbursement based upon the amount of time each Settlement Class member has worked in a sales representative position. That is to say, each Settlement Class member will receive the same compensation for the same periods of time worked. Similarly, all Settlement Class members will either be reclassified, or have the opportunity to be reclassified. And the only difference among Class Members is the fact that a handful of highly compensated individuals may continue to work as independent contractors, but only if those individuals choose to do so. Therefore, this factor supports preliminary approval.

### F.  Experience and View of Counsel

While the recommendations of counsel proposing the settlement are not conclusive, the Court can take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and significant discovery has been completed. In this case, Plaintiff and the class are represented by competent and highly experienced counsel who have expertise in misclassification cases and are deeply familiar with the employment claims at issue here. Given the significant monetary compensation to each class member, the additional benefit of being reclassified as employees on the one hand and the significant uncertainty in a rapidly changing area of the law on the other, Plaintiff's counsel recommends the proposed settlement as fair, adequate, and reasonable to the class members and in their best interests. (Lohr Decl. ¶ 20).

## V.    THE SETTLEMENT SATISFIES THE DISTRICT'S PROCEDURAL GUIDANCE, AS WELL AS THIS COURT'S GUIDANCE FOR CLASS ACTION SETTLEMENTS

The Northern District of California has adopted guidance for the approval of class actions cases which is applicable to this Action. We set forth below, in the order of the Guidance for the Court's convenience, a discussion of how the Guidance applies to the Settlement.

-18-

**A.  There Is No Difference Between The Settlement Class And The Class Certified In This Case (Guidance 1(a))**

Section 1 of the Guidance requires a discussion of any differences between the Settlement Class and that proposed in the operative complaint, as well as any differences between the claims to be released and the claims to be certified for class treatment. Here, there are none. There is no difference between the settlement class definition and the class definition previously approved for certification in this case.

**B.  The Releases Mirror the Certified Claims (Guidance 1(c))**

The release articulated in the Settlement mirrors the claims in the operative complaint with a single exception: the addition of claims for breach of contract relating solely to the failure to provide employment-related perquisites and benefits. This release essentially mirrors Plaintiff's claims under California's Unfair Competition Law utilizing a different legal theory and is therefore appropriate to dismiss in this case. Moreover, the release does not include claims alleged under the California Labor Code and FLSA that were originally alleged but dismissed following Defendants' Motion for Summary Judgment.

Plaintiff's claim for Unfair Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq*.)—which this Court certified for resolution on a class-wide basis—encompassed numerous claims for employment-related benefits and perquisites that come within two general categories.  The first category includes benefits required to be paid to employees by law. *Id.*  These benefits include healthcare (under the Affordable Care Act), Paid Sick Leave (under Lab. Code, §§ 245.5(a) and 246(a)), and Workers Compensation Insurance (Lab. Code §§ 3700 *et seq*.).  *Id.* The second category includes the restitution of the value of discretionary employment benefits that Defendants offer to their employees. These benefits include Defendants' various employee-welfare plan benefits, such as Defendants' Vision Plan, Dental Plan, Savings and Investment 401(k) Program, Life and AD&D Insurance Plan, Disability Plan, Paid Time Off (25 days), and Paid Holidays (8 days).

"Similarly, because of their misclassification, Plaintiff and the California Class members were denied access to a variety of statutorily mandated benefits and

-19-

social insurance programs accessed via employee status, including employer-provided *health insurance, Defendants' 401(k) plan, sick leave, unemployment insurance, disability insurance, and workers' compensation*. Plaintiff and the California Class were unable to participate in these benefits, and were also denied the matching 401(k) contributions that they would have received had they been properly classified. These predicate unlawful business acts and/or practices are violations of the Healthy Workplaces, Healthy Families Act of 2014, Cal. Lab. Code § 245 et seq. Compensation Act, Cal. Lab. Code § 3200 et seq.; the Unemployment Insurance Code, Cal. Unemp. Ins. Code § 100 et seq., the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 et seq., and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. business acts and/or practices within the meaning of California Business and Professions Code."

*See* ECF 41, ¶ 93.

Because these claims were certified by the Court for resolution on class-wide basis under the UCL, the Settlement's release of such claims appropriately corresponds with and "mirrors" the Court's certification ruling.

### C. The Parties Request the Approval of CPT Group Who Has Already Provided Notices in this Case (Guidance 2)

The Parties ask the Court to approve CPT Group ("CPT") as Settlement Administrator. CPT is a nationally recognized notice and claims administration firm and has extensive experience in class actions and performing notice. Moreover, CPT Group was approved by this Court on two prior occasions during this case and administered the initial notice following conditional certification to the FLSA collective, and then again to inform the FLSA collective that claims under the FLSA in this case had been dismissed. On both occasions, CPT performed notice without any problems or issues. (Lohr Decl. ¶ 21).

Based on the data provided by Defendants, it will cost $12,500 for CPT to fully administer the Settlement in this Action. *Id*. This amount represents .0018% of the gross settlement amount. As the parties agreed, the settlement administration costs will be deducted from the gross settlement amount. Furthermore, Class counsel solicited bids from two additional settlement administrators, and have determined that CPT's bid is comparable to the bids received by the additional settlement administrators. *Id*. And since CPT has already provided notice in this case, the Parties believe it makes sense that it continues to do so.

-20-

1

**D.  The Proposed Notice Plan is the Best Practicable Notice (Guidance 3 & 5)**

2

Rule 23(c)(2)(B), requires that notice be "the best notice that is practicable under

3

the circumstances, including individual notice to all members who can be identified through

4

reasonable effort." See also Rule 23(e)(1) ("The court must direct notice in a reasonable manner

5

to all class members who would be bound by the propos[ed settlement].").  Notice "must

6

generally describe[] the terms of the settlement in sufficient detail to alert those with adverse

7

viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d

8

811, 826 (9th Cir. 2012) (citation omitted). The proposed notice here does so.

9

The proposed individual notice (the "Class Notice") to class members and the

10

information will be posted on a Settlement Website that meets the requirements under Rules

11

23(c)(2)(B) and 23(e)(1). Specifically, Defendants will provide the Settlement Administrator

12

with the name, physical address, and email address of record for each member of the Settlement

13

Class. Settlement Agreement ¶ III(E)(2).  The Settlement Administrator will then mail and email

14

a copy of the Class Notice, together with a Benefit Form that will individually identify the

15

number of work periods for each Settlement Class member. The Benefit Form will provide a

16

means to update contact information, as well as a means to correct misinformation related to the

17

number of work periods worked. A copy of the Class Notice, together with relevant Court orders

18

and other filings (including the Settlement Agreement), will be posted and available for

19

download on the Settlement Website. *See* Exhibit B to Settlement Agreement.

20

The proposed Class Notice describes the proposed Settlement and sets forth, among other

21

things: (1) the nature, history, and status of the litigation; (2) the definition of the Settlement

22

Class and who is excluded from the Settlement Class; (3) the reasons the Parties propose the

23

Settlement; (4) the Maximum Class Settlement Amounts (5) a way of estimating reimbursement

24

per individual; (6) a plain language discussion of the claims being released; (7)  a discussion of

25

the Parties' disagreement over damages and liability; (8) the plan for allocating the Settlement

26

proceeds to the Settlement Class; and (9) the date, time, and place of the Final Hearing. See *Id.*

27

28

1    Moreover, the proposed Class Notice provides appropriate notice of Class counsel's

2    request for attorneys' fees. Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys'

3    fees] must be served on all parties and, for motions by class counsel, directed to class members

4    in a reasonable manner." The proposed Class Notice satisfies this requirement because it notifies

5    Settlement Class Members that Class counsel will apply to the Court for attorneys' fees and costs

6    as a percentage of the Minimum Class Settlement Amount and alerts Class members the amount

7    requested will be awarded from the gross settlement amount. *See* Exhibit B to Settlement

8    Agreement.

9    Therefore, the notice plan proposed in connection with the Settlement and the form and

10   content of the Class Notice and Benefit Form satisfy the requirements of Rule 23. Accordingly,

11   in granting preliminary approval of the Settlement, Plaintiff also requests that the Court approve

12   the proposed form and method of giving notice to the Settlement Class.

13   ### E.  Attorneys' Fees and Expenses (Guidance 6)

14   As set forth in the proposed Notice, Class Counsel anticipate seeking attorneys' fees up

15   to 28% of the common fund, or $1,960,000, plus out-of-pocket expenses of up to $25,645. As of

16   April 1, 2021, Class Counsel has devoted approximately 4,076 hours to litigating this Action, for

17   a lodestar of $2,763,641. *See* Lohr Decl. ¶ 8, 13. Class Counsel's request for a fee up to 28% of

18   the Minimum Class Settlement Amount therefore represents a negative multiplier of class

19   counsel's current lodestar where it is common to award a multiplier of greater than 1. *See*

20   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting multipliers of

21   between 1.0 and 4.0 are "frequently awarded") Therefore, the fee request by counsel falls within

22   the range of possible approval.

23   ### F.  Service Awards (Guidance 7)

24   The Class Representative is not seeking a service award and therefore there is no

25   preferential treatment to the named plaintiff.

26

27

28

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL            CASE NO.: 18-cv-04176-WHA

### G.  Class Action Fairness Act (Guidance 10)

CAFA notice is required under the Settlements, and Defendants are coordinating compliance with 28 U.S.C. § 1715 at their own cost. *See* Proposed Order § 5 (CAFA Notice).

### H.  Past Distributions (Guidance 11)

Pursuant to Section 11 of the Guidance, Class Counsel submits that the settlements in *Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020), and *Tsyn v. Wells Fargo*, No. 14-cv-02552-LB (N.D. Cal. Nov. 1, 2018) (discussed previously in Section IV(C) of this motion) provide useful comparisons to this Settlement.

## VI.    PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

Class Counsel has submitted a proposed order regarding preliminary approval concurrently with this Motion, pursuant to Local Civil Rule 7.2(c), setting forth the proposed schedule of events from here through final approval. In that proposed order, the Parties propose the following schedule:

| Date | Event |
|---|---|
| Deadline for Defendants to provide names, mailing addresses, and email addresses to Settlement Administrator. | Not later than ten (10) days following entry of the Preliminary Approval Order (see Preliminary Approval Order, pp. 7-8). |
| Deadline for Settlement Administrator to complete mail and email notice (the "Notice Date"). | Not later than five (5) days of receipt of information from Defendants. *Id.* |
| Deadline for Class Members to submit corrections via the Benefit Form. | Postmarked or submitted no later than thirty (30) days from the Notice Date. *Id.* |
| Deadline for objectors to either deliver written objections by hand or postmarked/sent by First Class Mail. | Postmarked or submitted no later than sixty (60) days from the Notice Date. *Id.* |

-23-

| Deadline for Class Members to submit a Request for Exclusion, if desired. | Postmarked or submitted no later than sixty (60) days from the Notice Date. *Id.* |
| --- | --- |
| Deadline to submit opening briefs and supporting documents in favor of Final Approval of Settlement. | Not later than thirty-five (35) days before the Final Hearing. *Id.* |
| Deadline to submit opening briefs and supporting documents for motion for attorneys' fees and incentive awards. | Not later than thirty-five (35) days before the Final Hearing. *Id.* |
| Final Hearing | Approximately 120 days following preliminary approval at Court's discretion. *Id.* |

## VII.   CONCLUSION

Plaintiff respectfully request the Court (1) find it will likely approve the Settlements; (2) authorize retention of CPT Group as settlement administrator; (3) approving and directing the mailing of Settlement Notice pursuant to the proposed notice plan; (4) direct notice to the settlement class; and (3) set a final approval hearing.

Dated: April 30, 2021

Respectfully submitted,
LOHR RIPAMONTI & SEGARICH LLP

/s/ Jason Lohr

_____
Jason Lohr

Dated: April 30, 2021

SCHERER SMITH & KENNY LLP

/s/ Denis Kenny

_____
Denis Kenny
*Attorneys for Plaintiff JAMES KARL and the Class*

-24-