UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KARL, | |
| Plaintiff, | No. C 18-04176 WHA |
| v. | |
| ZIMMER BIOMET HOLDINGS, INC., et al., | **ORDER GRANTING PRELIMINARY SETTLEMENT APPROVAL** |
| Defendants. | |

**INTRODUCTION**

In this employment classification action, plaintiffs move for preliminary approval of a class settlement agreement. The proposal appearing non-collusive and within the realm of approvable, to the extent stated below, preliminary approval is **GRANTED**.

**STATEMENT**

Prior orders lay out the facts of this case (Dkt. Nos. 127, 169). In short, defendant and parent corporation Zimmer Biomet Holdings, Inc. and its subsidiaries design, manufacture, and market biopharmaceutical and medical products. In August 2015, plaintiff James Karl signed a sales associate agreement with Zimmer classifying him as an independent contractor (*not* an

employee) and began selling orthopedic devices to physicians and hospitals as a member of "Team Golden Gate" in the San Francisco Bay Area.

Zimmer paid the team on a commission-only "pooled" arrangement. That is, defendants (1) set a "base rate" commission percentage for each product type sold, (2) pooled each team member's base rate commissions, and (3) paid each member a predetermined percentage of the pooled commissions, regardless of the amount of commissions that member personally generated. Karl himself was paid through Edge Medical, LLC, an entity he established for tax purposes. On the job, Karl typically spent 60 to 70 percent of his time on "case coverage," assisting surgeons in the operating room — including setting up Zimmer's products, informing a surgeon of a product's safety and efficacy, and fielding questions — and planning for procedures, such as designing modifications for implants. He averaged between ten to twelve hours each workday.

In July 2018, Karl filed the instant putative class action alleging primarily his misclassification as an independent contractor instead of an employee of Zimmer. Initially successful in certifying an FLSA collective (Dkt. No. 70), Zimmer's motion for summary judgment cut down several of Karl's claims (including those for overtime wages and failure to provide meal and rest periods), with the order dated October 31, 2019, finding him an exempt "outside salesperson" (Dkt. No. 127). Though the Court certified the summary judgment order for interlocutory appeal, our court of appeals declined to intervene, and Karl agreed to decertify the FLSA collective thereafter (Dkt. Nos. 131, 141). Karl then successfully certified the class under Rule 23(b)(3), and, during the pendency of an appeal of that decision per Rule 23(f) the parties engaged in settlement conferences before Magistrate Judge Donna Ryu (Dkt. No. 169).

The parties' negotiations culminated in a signed settlement agreement on April 7, 2021, and an initial motion for preliminary approval followed on April 30. In subsequent discussions, however, the parties revised several aspects of the agreement in light of certain timing and tax concerns, such as technicalities arising from a mid-year transition of health

benefits due to reclassification. Several continuances later, in June 2021, Karl filed a new preliminary approval motion (Dkt. Nos. 195, 196, 198).

**ANALYSIS**

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). A settlement purporting to bind absent class members must be fair, reasonable, and adequate. FRCP 23(e). A district court may consider and weigh a variety of factors as the particular facts of the case demand, including: the risk, expense, and complexity of further litigation; the amount offered in settlement; the strength of plaintiff's case; the stage of the proceedings; and other relevant considerations. Above all, the "primary concern" must be the "protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Just.*, 688 F.2d at 624–25. This order finds the proposed settlement adequate.

In short, the proposed settlement creates a $7,380,482.10 fund to compensate a class of approximately 246 members. Upon final approval, class members currently contracting with Zimmer will also be offered full employment as IRS form W-2 employees. In return, the class will release Zimmer from all claims arising from the facts alleged in this action. As for payments from the settlement fund beyond the class: (1) class counsel will seek a fee award of no more than 28% of the total award ($2,066,534.99); (2) class counsel will also seek costs not to exceed $25,465; (3) LWDA will be paid a fee of $83,030.42 (or 75% of the settlement amount attributed to the PAGA claim); and (4) the settlement administrator will be paid a fee of $12,500.[1] The proposed settlement does not provide Karl an enhancement award (Proposed Settlement, Lohr Decl. Exh. A, Dkt. No. 198-1).

---

[1] This amount differs from the $12,810.21 currently listed in the proposed settlement because the administrator has agreed to perform the work under a discounted flat fee (Dkt. No. 200 at 4).

*First*, the proposed settlement addresses the primary monetary and equitable goals of this suit. The proposed settlement provides for a non-revisionary gross settlement common fund of $7,380,482.10 to distribute to the 246 settlement class members on a pro-rata basis based upon bi-weekly service pay periods (of which there were approximately 21,956).[2] Breaking it down, this provides approximately $336 per bi-weekly pay period or $672 per month. Karl contends the settlement represents approximately 15.31% of Zimmer's total exposure in this suit — estimated at $48,196,516 (Br. 15–16).

The settlement amount is fair and comparable to two recent employment classification cases. In *Harvey v. Morgan Stanley Smith Barney LLC*, the court approved a settlement of $10,235,000 ($8,500,000 in cash plus $1,735,000 in future payments in business expenses) for a class of 3,297 (of which 2,989 were Rule 23 class members). No. C 18-02835 WHO, 2019 WL 4462653, at *3 (N.D. Cal. Sept. 5, 2019). The settlement in *Harvey* concerned financial advisors and represented approximately 6.6% of what plaintiff's contended was defendant's total potential exposure, and which broke down to $94.72 per work month. *Ibid*. In comparison, the settlement here breaks out to $672 per monthly pay period and covers 15.31% of Zimmer's potential exposure.

The settlement here is also comparable to another class settlement agreement regarding employee classification, *Tsyn v. Wells Fargo*, No. C 14-02552 LB (N.D. Cal.), Dkt. Nos. 159, 165-10, 172. In *Tsyn*, the approved settlement awarded approximately $44.76 per work month, less fees and costs. *Ibid.* Here, assuming full attorney's fees are approved, the settlement award breaks out to $473.02 per work month, less fees and costs.[3] The settlement in *Tsyn* represented 16% of defendants' potential exposure while the exposure here is a comparable 15.31%.

---

[2] The original proposed settlement estimated 10,412 monthly pay periods. The parties estimate the delay in final approval results in approximately 566 additional monthly pay periods (Dkt. No. 200 at 3).  10,412 + 566 = 10,978; 10,978 x 2 = 21,956 bi-weekly pay periods.

[3] 7,380,482.10 – 2,066,534.99 – 25,645 – 83,030.42 – 12,500 = 5,192,771.69 / 10,978 = 473.02.

4

Considering next the non-monetary benefits of the proposed settlement, Zimmer would also transition all direct independent contractor sales representatives to employee status. Reclassification as employees provides enhanced rights and protections under California law. Moreover, the reclassification provision provides a level of flexibility to high-income class members (earning over $300,000 per year) who *choose* to decline Zimmer's employment offer, permitting them to remain independent contracts with the rights accompanying that classification.

This order notes, however, some concern with the waiver included in the reclassification provision. Zimmer inserts a condition that independent contractors will only be reclassified to employees if they "are satisfactorily performing their expected duties under their contracts." This permits Zimmer to retain as an independent contractor (or perhaps even fire), instead of reclassify to an employee, any class member not adequately performing their duties. The agreement, however, appears to provide no recourse to independent contractors that Zimmer incorrectly labels as unsatisfactory performers (italics added):

> The retention of any Class Members as an IRS Form 1099 independent contractor shall not be considered or deemed a breach of this Settlement, and Class Counsel *waives any ability to challenge the retention of any such persons* as an IRS Form 1099 independent contractor.

(Proposed Settlement ¶ III.L.6). What if Zimmer *unreasonably* decides that an independent contractor is not performing adequately, or that *no* independent contractor is performing satisfactorily? What then? Class members may be left without a remedy.

Zimmer is also apparently under no obligation to prospectively maintain this policy beyond the current class:

> Defendants will implement a change in structure . . . whereby Class Members currently classified by Defendants as IRS form 1099 independent contractor sales representatives . . . will be offered employment as IRS Form W-2 employees . . . .

(*Ibid.*). This portion of the settlement does not explicitly extend reclassification to new hires on a prospective basis. Only reclassifying those sales representatives currently employed at Zimmer unnecessarily limits the scope of the settlement and does not require the fundamental

5

change in policy the parties touted in their briefing. Further adjustments accordingly need still be made, but the proposed settlement still rates as reasonable at this point.

*Second*, the parties have sufficiently limited the scope of the release. The release covers only participating class members, and generally mirrors the certified claims, with two acceptable qualifications (Proposed Settlement ¶ I.W). Besides the certified claims, the release also includes breach of contract claims regarding failure to provide certain employment-related benefits. In this context, the breach of contract release merely encompasses an additional, related claim premised on the same underlying legal theories as the Section 17200 claim Karl had already proffered. So far, so good. The release provision also frees Zimmer from all claims that "reasonably arise from, the factual and/or legal allegations set forth in the operative complaint." As a previous order made clear, releasing claims that "could have been brought" is too vague and overbroad (Dkt. No. 12 at 3). The settlement is close to the line here, but this order is persuaded that the release remains adequate because it is anchored to the specific allegations in the operative complaint. The parties should consider clarifying this language.

*Third*, the proposal appears to be the product of serious, non-collusive negotiations. The parties' negotiations proceeded after vigorous advocacy. The parties engaged in a large amount of discovery — exchanging over 22,170 documents and completing depositions of Zimmer's Rule 30(b)(6) witness, its leader of west-coast sales, as well as six class members that filed declarations supporting class certification. The parties progressed towards trial, briefing certification of an FLSA collective and Rule 23 class, as well as summary judgment. Karl and Zimmer also pursued three separate appeals to our court of appeals, as well as a petition for review to the Supreme Court (Br. 12–13). During pendency of Zimmer's petition to our court of appeals seeking review of an order approving Rule 23 class certification, the parties entered into settlement discussions supervised by Magistrate Judge Donna Ryu.

With Judge Ryu's guidance, and over a period of several months, the parties negotiated, finally culminating with an initial agreement on April 7, 2021. However, the parties continued to discuss various issues regarding the timing of the settlement and produced a revised

agreement on June 3, 2021. The parties, in toto, appear to have conducted the necessary arms-length settlement negotiations.

*Finally*, notice to the class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). This order calls for two additional revisions to the employee reclassification section of the class: (1) the reclassification section should alert class members that reclassification is limited to those who have satisfactory job performance, and, if they have not satisfactorily performed their job, they will be terminated; and (2) that sales representatives that make above $300,000 have the option of retaining their status as independent contractors. With these revisions, the otherwise clear notice will be distributed primarily via email and first-class mail to the approximately 246 class members. The parties will also use the National Change of Address Database or similar services such as those provided by Experian to update or correct contact information. This rates as adequate.

## CONCLUSION

The proposed settlement is adequate at this stage, and, to the extent stated above, preliminary approval is **GRANTED** subject to final approval. In the interim:

1. Defendants shall provide names, mailing addresses, and email addresses to the settlement administrator by **AUGUST 5, 2021.**
2. The settlement administrator shall complete mail and email notice (the "Notice Date") by **AUGUST 19, 2021**.
3. The deadline to submit or postmark corrections via the benefit form shall be **OCTOBER 7, 2021**.
4. The deadline for objectors to either deliver written objections by hand or postmark the objections via first class mail shall be **NOVEMBER 4, 2021**.
5. The deadline for class members to submit a request for exclusion, if desired, shall be **NOVEMBER 4, 2021**.

7

6. The deadline to submit opening briefs and supporting documents in favor of final approval of settlement shall be **DECEMBER 2, 2021**.

7. The deadline to submit opening briefs and supporting documents for a motion for attorney's fees and incentive awards shall be **DECEMBER 2, 2021**.

The final hearing is scheduled for **JANUARY 6, 2022**.

**IT IS SO ORDERED.**

Dated: July 15, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE