1
2
3
4
5

LOHR RIPAMONTI & SEGARICH LLP
Jason Lohr (CA SBN 262267)
Roberto Ripamonti (CA SBN 259123)
140 Geary Street, 4th Fl.
San Francisco, CA 94108
Ph: (415) 683-7266
Fax: (415) 683-7267
Email: jason.lohr@lrllp.com
Email: roberto.ripamonti@lrllp.com

6
7
8
9
10

SCHERER SMITH & KENNY LLP
Denis S. Kenny (SBN 178542)
John B. Lough, Jr. (SBN 234782)
140 Geary Street, 7th Fl.
San Francisco, CA 94108
Ph: (415) 433-1099
Fax: (415) 433-9434
Email: denis@sfcounsel.com
Email: john@sfcounsel.com

11    *Attorneys for Plaintiff and Class Members*

12

13    UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

14

15

16    JAMES KARL, on behalf of himself, and on
behalf of a class of those similarly situated,

17          Plaintiffs,

18          v.

19    ZIMMER BIOMET HOLDINGS, INC., a
Delaware corporation; ZIMMER US, INC.,
20    a Delaware corporation; BIOMET U.S.
RECONSTRUCTION, LLC, an Indiana
21    limited liability company; BIOMET
BIOLOGICS, LLC, an Indiana limited
22    liability company; and BIOMET, INC., an
Indiana corporation;
23

24          Defendants.

25

26

27

28

CASE NO.: 3:18-cv-04176-WHA

**PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

Date:         January 6, 2022
Time:         11:00 a.m.
Courtroom:    12
Judge:        Hon. William Alsup

-1-

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2022, at 11:00 a.m., in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William Alsup, Plaintiff James Karl, individually and on behalf of the class, will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order: (1) finally approving the Settlement Agreement; (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) finding the class notice as implemented satisfied Rule 23 and due process; (4) finally appointing Plaintiff as the Settlement Class Representative; (5) finally appointing as Lead Counsel Jason Lohr of Lohr Ripamonti & Segarich LLP, and as class counsel Roberto Ripamonti of Lohr Ripamonti & Segarich LLP and Denis Kenny and John Lough of Scherer Smith & Kenny LLP, each as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); (6) finally appointing CPT Group as the Settlement Administrator; and (7) any other relief the Court deems just and proper.

This motion is supported by the accompanying memorandum of points and authorities, the declarations of Jason Lohr and Carole Thompson ("CPT Group") filed concurrently herewith; all records and pleadings on file with the Court; all further evidence and oral argument that may be presented at the hearing on this motion; and all other matters as the Court deems proper.

Dated: December 9, 2021      Respectfully submitted,
                            LOHR RIPAMONTI & SEGARICH LLP

                            /s/ Jason Lohr
                            Jason Lohr

Dated: December 9, 2021      SCHERER SMITH & KENNY LLP

                            /s/ Denis S. Kenny
                            Denis S. Kenny
                            *Attorneys for Plaintiff JAMES KARL and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND ......................... 3

   A.   The Settlement ................................................................................... 4

   B.   Implementation of Class Notice.......................................................... 6

III.   THE COURT SHOULD FINALLY APPROVE THE PROPOSED SETTLEMENT CLASS
     7

   A.   The Settlement Provides Significant and Appropriate Relief and Merits Final Approval
     Under Rule 23 .................................................................................. 8

     1.     The Settlement is Fair, Adequate, and Reasonable Given the Risks of Further
     Litigation....................................................................................... 9

     2.     Settlement Funds Will Be Automatically Distributed to All Class Members Based
     Upon Length of Service Shortly After the Funding of the Settlement ................................ 11

     3.     The Requested Attorney's Fees Are Reasonable and Fall Within the Guidance of the
     Northern District ............................................................................. 12

     4.     There Are No Agreements to Disclose Under Rule 23(e)(3) .................................... 13

   B.   All Class Members Will Receive the Same Relief ........................................... 13

   C.   The Settlement Notice Process Should Trigger No Concern Under the Northern District's
     Procedural Guidance ......................................................................... 13

   D.   The Court Should Approve the PAGA Settlement ........................................... 16

   E.   The Requested Payment to the Settlement Administrator Is Reasonable and Should
     Receive Final Approval ..................................................................... 16

IV.   CONCLUSION............................................................................................ 17

-i-

1

**TABLE OF AUTHORITIES**

2

3

**CASES**

4

*7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th 1135 (Cal. Ct. App. 2000) ................ 16

5

*Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24,

6
    2015) .................................................................................................................................... 13

7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................................ 9

8

*Cal. Trucking Assn. v. Bonta*, 996 F.3d 644 (9th Cir. 2021) ...................................................... 10

9

*Chu v. Wells Fargo Invs., LLC* , 2011 WL 672642 (N.D. Cal. Feb. 16, 2011) ........................... 17

10

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010).............................. 16

11

*Dynamex Operations W. v. Sup. Ct.*, 4 Cal. 5th 903 (2018) ........................................................ 9

12

*Franco v. Ruiz Food Products, Inc.* 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................. 17

13

*G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015)

14

15
    ............................................................................................................................................. 13

16

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D.

17
    Cal. Apr. 22, 2010) ............................................................................................................. 16

18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................... 9, 16

19

*Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835-WHO, 2020 WL 1031801 (N.D.

20
    Cal. Mar. 3, 2020) .............................................................................................................. 11

21

*In Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6,

22
    2014) .................................................................................................................................... 17

23

*In re Gen. Motors Corp.*, 55 F.3d 768, 806 (3d Cir.1995) ......................................................... 9

24

*Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *4 (N.D. Cal. Sept.

25

26
    10, 2012) .............................................................................................................................. 12

27

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)...................... 15

28

*Stern v. Superior Court*, 129 Cal. Rptr. 2d 275 (Cal. Ct. App. 2003) ....................................... 12

-ii-

*Tsyn v. Wells Fargo*, No. 14-cv-02552-LB (N.D. Cal. Nov. 1, 2018)........................................... 11

*Vazquez v. Jan-Pro Franchising International*, 10 Cal. 5th 944 (2021) ...................................... 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002)......................................... 13

**STATUTES**

Cal. Lab. Code § 2699 ............................................................................................................... 17

Fed. R. Civ. P. 23............................................................................................................ 14, 16, 17

**TREATISES**

Northern District of California, Procedural Guidance for Class Action Settlements (updated Dec.

5, 2018), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-

settlements/ ............................................................................................................................ 15

-iii-

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On July 15, 2021, this Court granted preliminary approval of the Amended Class Action Settlement and Release and approved distribution of Notice to all Class Members. Class Members were given 60 days to opt out or object to the Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiff James Karl is pleased to report that to date: (1) no Class Members have opted out of the Settlement Class; (2) no Class Members have objected to the Settlement; (3) and the entire Net Settlement Amount will be disbursed to all 251 Class Members (hereinafter, the "Settlement Class Members" or "Class Members").

Plaintiff now moves for final approval of the class action settlement. This motion is unopposed by Defendants. The principal terms of the Settlement provide for the following:

1.  Certification of a Settlement Class defined as: "any person who, during the period commencing June 24, 2015, through the date on which preliminary approval of the class settlement is granted by the Court [July 15, 2021, Order Granting Preliminary Settlement Approval ("Preliminary Approval Order"), ECF No. 204], was hired or otherwise engaged as an independent contractor for the purposes of solicitation or sales of Zimmer Biomet products and/or services in California by Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC, or any one of them." Settlement Agreement, Lohr. Suppl. Decl. Exh. A at ¶ I.E, ECF No.[1] 198-1 (hereinafter "Settlement Agreement").[2]

2.  The transition of sales representatives to employee status by either January 6, 2022 or thirty (30) days after the Effective Date, whichever date is later.

3.  A non-reversionary Class Settlement Amount of $7,380,482.10. The Class Settlement Amount includes:

---

[1] Per the *Bluebook*, when the imprinted ECF page number differs from the original pagination of the original documentation, this motion cites to the original pagination.

[2] For any capitalized terms not defined in this motion, those capitalized terms are defined in the Settlement Agreement, ECF No. 198-1.

-1-

a.  A Net Settlement Amount of $5,192,771.69 (the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, and the payment to the California Labor and Workforce Development Agency ["LWDA"]), which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period. The Entire Net Settlement Amount will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.

b.  Attorneys' fees in the amount of 28 percent of the Class Settlement Amount ($2,066,534.99), and litigation costs and expenses of $25,645.00,

c.  Settlement administration costs of $12,500.00, to be paid to the Court-appointed Settlement Administrator, CPT Group Inc. ("CPT").

d.  A $83,030.42 payment to the LWDA pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

The relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Magistrate Judge Donna Ryu, and the Settlement confers substantial benefits to Class Members. This relief —averaging approximately $20,688.33 per Class Member[3]— is particularly impressive when viewed against the difficulties many plaintiffs experience when pursuing claims based upon the misclassification of employees. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement by Settlement Class Members, Plaintiff respectfully requests that the Court: (1) grant this Motion for Final Approval of the Settlement Agreement; (2) finally approve the Settlement Agreement; (3) finally certify, for settlement purposes, the proposed Settlement Class

---

[3] Net Settlement Amount divided by number of class members = $5,192,771.69 divided by 251 class members.

-2-

1   under Rule 23(a), (b)(3), and (e); (4) finding the class notice as implemented satisfied Rule 23

2   and due process; (5) finally appointing Plaintiff James Karl as the Settlement Class

3   Representative; (6) finally appoint as Lead Counsel Jason Lohr of Lohr Ripamonti & Segarich

4   LLP, and as class counsel Roberto Ripamonti of Lohr Ripamonti & Segarich LLP and Denis

5   Kenny and John Lough of Scherer Smith & Kenny LLP, each as counsel for the Settlement Class

6   ("Class Counsel") under Rule 23(g); (7) approve payment to CPT Group as the Settlement

7   Administrator; and (8) any other relief the Court deems just and proper.

8   **II.    OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND**

9        The present employee misclassification case arises from Plaintiff James Karl alleging that

10  Defendants misclassified sales representatives as independent contractors, thereby violating

11  California law. Defendants[4] (Zimmer Biomet) design, manufacture and distribute various

12  medical products and devices.

13        On July 12, 2018, Plaintiff James Karl filed a class action complaint in the United States

14  District Court for the Northern District of California asserting claims under the Fair Labor

15  Standards Act, the California Labor Code, and California's Unfair Competition Law arising from

16  Defendants' decision to classify sales representatives as independent contractors (ECF No. 1).

17  The lawsuit was originally styled as a nationwide collective action under the FLSA, and a

18  California class action under Rule 23 (ECF No. 1). However, during the course of the litigation

19  the FLSA claims were dismissed (Stipulation and Order to Decertify the Conditionally Certified

20  Collection Action Under the FLSA, ECF No. 141) and the California claims proceeded with the

21  addition of claims under the Labor Code Private Attorneys General Act (PAGA) following the

22  filing of an amended complaint on January 2, 2019 (ECF No. 41).

23        After years of litigation—which included three attempted appeals in the Ninth Circuit,

24  and one attempted appeal in the United States Supreme Court—a class of California employees

25  was certified by this Court. Shortly thereafter, the parties engaged in three separate settlement

26  conferences with Magistrate Judge Donna Ryu culminating in the present settlement. The

27

28  [4] Defendants Zimmer US, Inc., Biomet U.S. Reconstruction, LLC, and Biomet Biologics, LLC, shall be referred to as "Zimmer Biomet" or "Defendants" in this motion.

proposed settlement class, which has now been conditionally approved, consists of sales representatives who worked for Defendants as independent contractors during the period June 24, 2015, through July 15, 2021 (Preliminary Approval Order, ECF No. 204).

### A.    The Settlement

The Settlement provides both monetary and non-monetary relief. In return for a release of all claims that were asserted in the action (excluding claims made under the FLSA), Defendants shall create a non-reversionary $7,380,482.10 gross settlement common fund. Settlement Agreement ¶ III.A, ECF No. 198-1.[5] Because this is not a claims-made settlement, and because there have been no opt-outs, all Class Members will participate in the Settlement. *See id.*; Decl. of Carole Thompson Regarding Class Notification and Claims Administration ("CPT Group Decl.") ¶¶ 11–13. Of the $7,380,482.10 gross settlement fund, $110,707.23 is allocated to the PAGA claims. Settlement Agreement ¶ I.T., ECF No. 198-1. And the California Labor & Workforce Development Agency will receive 75% of the PAGA Settlement Amount ($83,030.42) and Settlement Class participants will receive the rest of the PAGA allocation ($27,676.81) which will be included in the Net Settlement Amount to be distributed to all Class Members. *See id.* ¶¶ I.T, III.A–C, ECF No. 198-1.

Pursuant to the parties' agreement, Class Counsel will seek a fee award not to exceed $2,066,534.99 or 28% of the Maximum Settlement Amount. Class Counsel will also seek reimbursement of costs in an amount not to exceed $25,645.00. Because this is a non-reversionary, common fund settlement, any portion of the requested fees and costs that are not approved by the Court would be distributed to the Class Members. *Id.* ¶¶ III.A–B, ECF No. 198-1.

After deducting requested attorneys' fees and costs, the amount due to the California Labor Workforce Development Agency, and the amount due to the third-party administrator for

---

[5] *See also* Preliminary Approval Order at 3:15–24, ECF No. 204.

1    the cost of settlement administration,[6] each of the 251 Settlement Class Members will be paid a

2    pro rata share of the Settlement Amount based on the number of pay periods that the Class

3    Member performed services as a direct independent contractor sales representative in California

4    during the Class Period. During the Class Notice, Settlement Class Members had the opportunity

5    to confirm or correct the number of pay periods reflected in Zimmer Biomet's company records.

6    Class Members will be responsible for paying any taxes arising from the settlement payments.

7    *Id*. ¶¶ III.A–C, H, ECF No. 198-1; *see also* CPT Group Decl. ¶¶ 2–15.[7]

8        In addition to the monetary component, the Settlement also provides a process for the

9    reclassification of sales representatives from independent contractor to employee status.

10   Settlement Agreement ¶ III.L.6, ECF No. 198-1. No later than either January 6, 2022 or thirty

11   (30) days after the Effective Date, whichever date is later., Defendants will implement a change

12   in the structure of their California sales operations whereby Class Members currently classified

13   by Defendants as IRS Form 1099 independent contractor sales representatives in direct territories

14   within California will be offered employment as IRS form W-2 employees (either directly with

15   Defendants or with one or more third-party distributor entities) (the "Transition Plan").[8] *Id*.

16       On December 2, 2021, Defendants' counsel provided Class Counsel further details

17   regarding the Transition Plan. During the week of October 25, 2021, Defendants communicated

18   its Transition Plan to the 251 Class Members, and there have been ongoing discussions between

19   the Class Members and their Territory General Managers regarding the transition. All Class

20   Members will be offered employment as IRS Form W-2 employees except two individuals.

21   Specifically, Defendants intend to terminate their relationship with two individuals for

22

23   ---

[6] The Settlement Administrator, CPT Group, has agreed to a cap for its services in the amount of $12,500.00. Lohr

24   Dec. ¶ 21, Exh. 2; Pl's Supp. Br. At 4:18–21, ECF. No. 200; *see* CPT Group Decl. ¶ 16. Class Counsel solicited bids
     from two other well-known settlement administrators. CPT Group's bid was competitive, and the parties believe that

25   it is better to continue using CPT Group as settlement administrator in this case.
     [7] Settlement checks not cashed within 180 days will be voided and the funds will be sent to the California State

26   Controller's Office's Unclaimed Property Division. There will be no designated *cy pres* recipient or reversion of
     funds to Defendants. Settlement Agreement ¶ III.C.3, ECF No. 198-1.

27   [8] The Settlement allows an exception to reclassification for highly compensated sales representatives. In the event a
     class member whose average annual income exceeds $300,000.00 (the "Highly Compensated Group") declines the

28   employment offer, then Defendants reserve the right to continue to engage that person as a non-employee IRS Form
     1099 independent contractor.

-5-

PLAINTIFF'S MOTION FOR FINAL APPROVAL         CASE NO.: 18-cv-04176-WHA

performance before transition to employee status. There are 22 Class Members in the Highly
Compensated Group, *see* fn. 8, who could decline the offer of employment and still be retained
as IRS Form 1099 independent contractors. At the present time, it is unknown how many of the
Highly Compensated Group will accept or decline W-2 employment. Finally, effective January
1, 2022, and going forward into the future all new sales representatives in direct territories in
California will be offered employment by Defendants (except for those who would come within
the Highly Compensated Group). Lohr Decl. ¶ 4, Exh. 1.

In exchange for the consideration described above, the Settlement provides that the
Settlement Class will release all claims arising from the facts alleged in this action (excluding
Plaintiff's FLSA and California Labor Code claims that were summarily adjudicated previously
in this case). Settlement Agreement ¶ I.W, ECF No. 198-1.

**B.    Implementation of Class Notice**

The Settlement Administrator (CPT) received the Court-approved text for the Notice
Packet from Class Counsel on July 26, 2021. On August 5, 2021, counsel for Defendants
provided CPT with a list of Settlement Class Members ("Class List"). The Class List included
each Settlement Class Member's name, Social Security Number, last known address, last known
telephone number, pay period start date, pay period end date, phone number, and email address.
The Class List contained 251 Settlement Class Members. CPT Group Decl. ¶ 5.

On August 17, 2021, CPT conducted a National Change of Address (NCOA) search in an
attempt to update the Settlement Class Members' addresses as accurately as possible. A search of
that database provides updated addresses for any individual who has moved in the previous four
years and has notified the U.S. Postal Service of his or her change of address. As a result of the
NCOA search, CPT was able to locate 42 new addresses. *Id.* ¶ 6.

The Notice Packets were enclosed in envelopes with the individual Settlement Class
Member's name and last-known address visible through the envelope window. On August 19,
2021, the Notice Packets were mailed via U.S. first class mail to all 251 Settlement Class

Members. The deadline for Settlement Class Members to submit a dispute, request for exclusion, or objection to the settlement was November 4, 2021. *Id.* ¶ 7.

CPT also setup a website with the web address www.cptgroupcaseinfo.com/ZimmerSettlement and an email inbox with the email address KarlvsZimmer@cptgroup.com. The Notice Packets were emailed to 191 Settlement Class Members with email addresses provided on the Class List. *Id.* ¶ 8.

Of the 251 mailings, 25 Notice Packets were returned to CPT by the Post Office. CPT then performed a skip-trace to locate a better address using Accurint, one of the most comprehensive address databases available. Accurint utilizes hundreds of different databases supplied by credit reporting agencies, public records and a variety of other national databases. As a result of either a skip trace, request from counsel or the Settlement Class Member, a total of 30 Notice Packets have been re-mailed to date. To date there are 6 undeliverable Notice Packets with no forwarding address, where no new addresses could be found through skip trace. *Id.* ¶¶ 9–10.

At the conclusion of the notice process, and to date, CPT received no objections to the settlement, and has received no requests for exclusion. Furthermore, at the conclusion of the notice period, and, to date, CPT received no disputes relating to the number of pay periods that will be used to calculate each Settlement Class Member's share of the net common fund. *Id.* ¶¶ 11–15.

## III.    THE COURT SHOULD FINALLY APPROVE THE PROPOSED SETTLEMENT CLASS

The Court provisionally determined that the Settlement is fair, reasonable and adequate for the purposes of preliminary approval (ECF No. 204 at 7). Because no substantive changes have occurred since that finding, and no objections or other arguments have been raised in opposition to approving the Settlement, the Court's previous determination should be made final here. *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) ("Because circumstances have not changed, and for the reasons set forth in its Order of November 12, 2015,

-7-

the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).")

(citing *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, *4 (D. Ariz. 2012)

("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil

Procedure, and hereby reconfirms its order certifying a class.")).

## A.    The Settlement Provides Significant and Appropriate Relief and Merits Final Approval Under Rule 23

The settlement in this case is fair, adequate, and reasonable taking into account all of the

factors identified under Rule 23. Rule 23(e) requires judicial approval of the compromise of

claims brought on a class basis. Rule 23(e) generally identifies the factors governing final

approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable,

and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Final approval is also dependent on satisfying the factors in the Northern District's

Procedural Guidance for Class Action Settlements, as well as the specific requirements identified

in this Court's standing order (ECF No. 12) identifying specific factors that will be considered in

evaluating a class action settlement.[9]

In Plaintiff's motion for preliminary approval of the instant settlement, counsel addressed

many of the factors that are evaluated on preliminary approval that are also confirmed on final

---

[9] The Northern District Guidance, and this Court's standing order provide specific guidelines on how to apply Rule 23 consistent with the traditional factors used in this Circuit to analyze class certification including "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

-8-

approval. For purposes of economy, Plaintiff incorporates by reference all previously submitted

argument and analysis and will summarize these existing arguments while substantively

addressing new matters and factors relevant to final approval.[10]

1.      **The Settlement is Fair, Adequate, and Reasonable Given the Risks of**
        **Further Litigation**

To assess the fairness, adequacy, and reasonableness of a class action settlement, the

Court must weigh the immediacy and certainty of substantial settlement proceeds against the

risks inherent in continued litigation. *In re Gen. Motors Corp.*, 55 F.3d 768, 806 (3d Cir.1995)

("The present value of the damages plaintiffs would likely recover if successful, appropriately

discounted for the risk of not prevailing, should be compared with the amount of the proposed

settlement."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616–17 (N.D. Cal. 1979).

Here, the relief provided by the Settlement is fair, reasonable, and adequate, particularly

in light of the risks and delay trial and likely associated appeals would present. Although

Plaintiff and Class Counsel believe that the claims asserted are meritorious, continued litigation

against Defendants posed significant risks that made any recovery uncertain. At the outset, the

law governing employment classification in California is in a period of significant change.

Specifically, litigating the impact of the California Supreme Court's decision in *Dynamex*

*Operations W. v. Sup. Ct.*, 4 Cal. 5th 903 (2018), including what exactly is required for Plaintiffs

to prevail under the new ABC standard (including Prong B), and whether it applies to all of

Plaintiffs' claims, would be a complicated and uncertain endeavor. And the concern in this case

is all the more pronounced given the history of the present litigation where three of this Court's

decisions have been brought before the Court of Appeals for reconsideration.

Just this year alone, the California Supreme Court issued its opinion in *Vazquez v. Jan-*

*Pro Franchising International*, which held that *Dynamex* applied retroactively. 10 Cal. 5th 944,

---

[10] Plaintiff incorporates by reference all prior arguments regarding preliminary approval of the class action
settlement as set forth in the Motion for Preliminary Approval rather than repeating them here. ECF No. 198 at 10–
19. For example, Plaintiff discussed at length the first two factors: adequacy of representation (ECF No. 198 at 11–
13) and a fair settlement process (ECF No. 198 at pp. 13–14); because nothing has changed since those issues were
addressed, these factors will not be further discussed here.

948 (2021). The Federal Ninth Circuit Court of Appeal reversed a Southern District of California court's preliminary injunction against AB 5 as to motor carriers upholding California's authority to enforce that test against motor carriers. *Cal. Trucking Assn. v. Bonta*, 996 F.3d 644, 664–65 (9th Cir. 2021) (though the California Trucking Association currently has a petition for writ of certiorari pending before the U.S. Supreme Court, *see* Supreme Court of the United States, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21-194.html). And the California legislature extended exemptions for certain industries who do not have to follow the ABC Test including licensed manicurists and construction trucking subcontractors (AB 1561) and newspaper distributors and carriers (AB 1506). These industry-specific exemptions are in addition to other already-existing AB 5 exemptions, including the business-to-business exemption (as clarified by AB 2257), which Defendants have sought to apply in this litigation. Each of these events and legislative developments have altered the emerging understanding of the *Dynamex* decision, and there will no doubt continue to be significant decisions that alter the understanding of the ABC test as it applies to this case as time progresses.

Therefore, in light of the significant uncertainty in continuing to litigate this case, the Settlement's benefits provide meaningful relief and are fair, adequate, and reasonable. Here the settlement provides both monetary and non-monetary relief. First, the Settlement ensures that Defendants' California sales representatives have the opportunity to be reclassified as employees and therefore benefit from the rights and protections afforded to employees under California law. And while it is difficult to put a dollar figure on the value of this benefit, it clearly has significant value to the class. Moreover, the Settlement will have a beneficial impact beyond the Class because Defendants' counsel has indicated that sales representatives hired after the transition in January 2022, will be classified as W-2 employees.

It is, of course, also relevant to consider the amount of money that Settlement Class Members will recover individually. Here, the settlement provides for the creation of a $7,380,482.10 common fund for distribution to the Settlement Class members on a pro rata basis

-10-

based upon bi-weekly service pay periods. The settlement administrator has calculated that, on average, Settlement Class Members will receive $20,688.33. And as briefed in the preliminary approval motion, the gross settlement amount represents a recovery that is approximately 6.9% of what Plaintiff contends is Defendants' total potential exposure (excluding the value of reclassification). And if the calculation of total exposure in this case excluded amounts relating to unpaid benefits and perquisites (amounts that are unlikely to be recovered due to ERISA preemption), the percentage of recovery would be 42 percent of the maximum potential recovery. Pl.'s Mot. for Preliminary Approval at 15:8–17:4, ECF No. 198.

As set out in more detail in the Motion for Preliminary Approval (ECF No. 198 at 14–19; *see also* ECF No. 200 at 4), the Settlement is also well within the range of settlements approved in similar misclassification class actions involving misclassification of sales representatives, each of which achieved final approval. *See Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020) (approving settlement in which sales representatives received 6.6% of total potential recovery); *see also Tsyn v. Wells Fargo*, No. 14-cv-02552-LB (N.D. Cal. Nov. 1, 2018) (approving settlement in which sales representatives received 5.7% of total potential recovery).

The proposed total Settlement value here of $7,380,482.10 is substantial by any measure and certainly falls within a range of approval. Moreover, the non-monetary relief ensures that Class Members continue to receive substantial benefits as employees under California law. Taken together, these substantial benefits "achieve the primary objective of the lawsuit" and weigh in favor of approving the Settlement. *See Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *4 (N.D. Cal. Sept. 10, 2012); *see also Stern v. Superior Court*, 129 Cal. Rptr. 2d 275, 282 (Cal. Ct. App. 2003).

## 2. Settlement Funds Will Be Automatically Distributed to All Class Members Based Upon Length of Service Shortly After the Funding of the Settlement

Since this is not a claims-made settlement, settlement funds will be automatically distributed to Settlement Class Members. And since no Settlement Class Member has opted out,

-11-

all Settlement Class Members will receive their pro-rata share of the Settlement. Therefore, should the Court approve this settlement, 251 Settlement Class Members, representing a 100 percent participation rate, will be paid their portion of the Net Settlement Amount estimated to be $5,192,771.69 (assuming court approval of requested attorney's fees and costs). The Net Settlement Amount available to pay Settlement Class Members is based upon the following:

| | |
|---|---|
| Gross Settlement Fund: | $7,380,482.10 |
| Less Attorneys' Fees | -$2,066,534.99 |
| Less Actual Litigation Costs | -$25,645.00 |
| Less PAGA Penalties to LWDA | -$83,030.42 |
| Less Settlement Administration Costs | -$12,500.00 |
| Net Settlement Amount | $5,192,771.69 |

Upon approval, the settlement administrator will distribute individual settlement payments to Settlement Class Members. The settlement administrator estimates that the highest individual total settlement payment, including the sum of the settlement payment and PAGA payment, is approximately $38,194.58, while the average payment will be approximately $20,688.33. CPT Group. Decl. ¶¶ 11–15.

### 3.    The Requested Attorney's Fees Are Reasonable and Fall Within the Guidance of the Northern District

As further discussed in Plaintiff's Motion for Attorney's Fees and Costs filed concurrently with this motion, Class Counsel are requesting attorneys' fees of $2,066,534.99 which represent 28% of the common fund, plus out-of-pocket expenses of up to $25,645.00. Class Counsel has devoted approximately 4,348.46 hours to litigating this Action, for a lodestar of $2,890,438.70. *See* Lohr Decl. ¶ 6. Class Counsel's request therefore represents a negative multiplier of class counsel's current lodestar where it is common to award a multiplier of greater than one. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting

-12-

1    multipliers of between 1.0 and 4.0 are "frequently awarded"). Therefore, the fee request by Class

2    Counsel is reasonable and should be approved.

3        **4.    There Are No Agreements to Disclose Under Rule 23(e)(3)**

4        Apart from the Settlement Agreement that has already been submitted to this Court as

5    part of the preliminary approval process, the attorneys and parties have entered into no other

6    agreements relating to this settlement.

7        **B.    All Class Members Will Receive the Same Relief**

8        The Court must also examine whether the Settlement provides preferential treatment to

9    any class member. This analysis turns, among other things, on whether there is any disparity

10   among what Class Members are poised to receive and, if so, whether the Settlement

11   "compensates class members in a manner generally proportionate to the harm they suffered on

12   account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG,

13   2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *G.F. v. Contra Costa Cty.*, No. 13-CV-

14   03667-MEJ, 2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) (analyzing whether settlement

15   "appears uniform").

16       Here, Plaintiffs seek final certification of a single class and all members of the proposed

17   Settlement Class are entitled to the same benefits based upon length of service. And since no

18   Settlement Class Member has asked for exclusion from the settlement, all Settlement Class

19   Members will receive their proportional distribution under the Settlement. While the amounts

20   each Settlement Class Member will vary depending on the length of time Settlement Class

21   Members worked as sales representatives, each Settlement Class Member will nevertheless

22   receive the same benefit amount per work period. Therefore, each Settlement Class Member will

23   be paid proportionate to the harm they suffered based upon length of service. *See* Preliminary

24   Approval Order at 4:1–7, ECF No. 204; CPT Group Decl. ¶¶ 14–15.

25       **C.    The Settlement Notice Process Should Trigger No Concern Under the**
26            **Northern District's Procedural Guidance**

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL          CASE NO.: 18-cv-04176-WHA

1  For classes certified under Rule 23(b)(3), "the court must direct to class members the best

2  notice that is practicable under the circumstances, including individual notice to all members

3  who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under amended

4  Rule 23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail,

5  electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (effective Dec. 1,

6  2018).

7  During preliminary approval, this Court approved the form and content of the Class

8  Notice used to inform Settlement Class Members of their rights relating to this Settlement,

9  though the Court requested two additional revisions: (1) alerting class members that

10  reclassification is limited to those who have satisfactory job performance and those not

11  satisfactorily performing will be terminated and (2) the Highly Compensated Group will have the

12  option of retaining their independent contractor status. Preliminary Approval Order at 7:3–:14,

13  ECF No. 204. Each of these changes were made the Class Notice that was ultimately approved

14  and delivered to all Class Members as outlined below. The Court appointed CPT Group to act as

15  the Claims Administrator. *See* ECF No. 204. And pursuant to the Court's Preliminary Approval

16  Order, the Claims Administrator mailed Class Notice and related forms to Settlement Class

17  Members on August 19, 2021. CPT. Decl. ¶¶ 2–8.

18  At this stage of the proceedings, the Northern District of California's Procedural

19  Guidance for Class Action Settlements directs that a motion for final approval include:

20  
21  information about the number of undeliverable class notices and claim packets,
    the number of class members who submitted valid claims, the number of class
    members who elected to opt out of the class, and the number of class members

22  who objected to or commented on the settlement. In addition, the motion for final
    approval should respond to any objections.

23  

24  Northern District of California, Procedural Guidance for Class Action Settlements (updated Dec.

25  5, 2018), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-

26  settlements/ (hereinafter "District Guidance").[11]

27  
28  
_____
[11] Plaintiffs Motion for Preliminary Approval analyzed the District's Guidance related to preliminary approval, and that analysis is incorporated by reference here. *See* ECF No. 198 at 20–24.

-14-

PLAINTIFF'S MOTION FOR FINAL APPROVAL          CASE NO.: 18-cv-04176-WHA

1       After CPT provided notice, 25 notices were returned to CPT by the Post Office as

2   undeliverable. With each of the returned notices, CPT performed a skip-trace to locate a better

3   address using Accurint, one of the most comprehensive address databases available. Accurint

4   utilizes hundreds of different databases supplied by credit reporting agencies, public records and

5   a variety of other national databases. CPT. Decl. ¶ 9.

6       As a result of either a skip trace, or a request from counsel or a Settlement Class Member,

7   a total of 30 Notice Packets have been re-mailed to date. To date, there are only 6 undeliverable

8   Notice Packets with no forwarding address or email address, where no new addresses or email

9   address could be found through skip trace.[12] CPT Decl. ¶ 10.

10      And, as of December 9, 2021, CPT has not received any objections to the settlement, has

11  received no requests for exclusion from the settlement, or received any disputes relating to class

12  member pay period data. In summary, the Notice Packet was successfully delivered to 98 percent

13  of Settlement Class Members, and there have been no requests for exclusion, opt-outs, or

14  disagreements with the data that will be used to calculate settlement distributions. *See* CPT Decl.

15  ¶¶ 10–13.

16      Here, the results of the notice process heavily favor final approval of this settlement. In

17  evaluating the fairness of a Settlement, the "absence of a large number of objections to a

18  proposed class action settlement raises a strong presumption that the terms of a proposed class

19  settlement action are favorable to the class members." *National Rural Tele. Coop. v. DIRECTV,*

20  *Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, no Class Members have opted out or objected

21  to the Settlement to date. CPT Decl. ¶¶ 11–13. The Class's response is therefore

22  "overwhelmingly positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair*

23  *Franchising*, 85 Cal. App. 4th 1135, 1152–53 (Cal. Ct. App. 2000) (finding support for the

24  settlement where 80 out of 5,454 class members elected to opt out and nine class members

25  objected); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)

26

27  _____

    [12] CPT has requested to be provided with additional contact information for these six individuals in an effort to
28  determine a physical address for dissemination of settlement proceeds. Defendants have been able to identify
    potential additional email addresses for two of these individuals.

-15-

PLAINTIFF'S MOTION FOR FINAL APPROVAL                    CASE NO.: 18-cv-04176-WHA

(finding zero objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement). In more measured words, "[t]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

### D.    The Court Should Approve the PAGA Settlement

Pursuant to the Settlement Agreement, $110,707.22 from the Class Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($83,030.42) will be paid directly to the LWDA, and the remaining 25% ($27,676.80) will be paid to Participating Class Members. Settlement Agreement ¶ I.T, ECF No. 198-1.

As noted in Plaintiff's motion for preliminary approval, this payment to the Labor and Workforce Development Agency to compromise the PAGA claims is well within the range awarded by other courts both in terms of a relative amount and absolute amount. In the present case, the parties have allocated 1.5 percent of the settlement amount to the PAGA payment which is in the range of permissible settlements in the Northern District. *See In Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014) (a wage and hour class action, where this Court approved a $25,000.00 payment to the LWDA from a $865,000.00 settlement representing 2.9% of the total settlement); *see also Chu v. Wells Fargo Invs., LLC* , 2011 WL 672642, *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500.00 to the LWDA out of $6.9 million common fund settlement); *Franco v. Ruiz Food Products, Inc.* 2012 WL 5941801, *13 (E.D. Cal. Nov. 27, 2012) (approving PAGA settlement payment of $7,500.00 to the LWDA out of $2.5 million common-fund settlement). As a result, the Court should approve the PAGA settlement pursuant to California Labor Code § 2699(l)(2).

### E.    The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

-16-

Plaintiff requests final approval of settlement administration costs in the amount of $12,500.00. CPT has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. *See generally* CPT Decl. Accordingly, the $12,500.00 payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

### F.    Final Appointment of Settlement Class Counsel

Under Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." In making this determination, courts generally consider the following attributes: the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

Plaintiffs request that the Court finally appoint as Lead Counsel Jason Lohr of Lohr Ripamonti & Segarich LLP, and as class counsel Roberto Ripamonti of Lohr Ripamonti & Segarich LLP and Denis Kenny and John Lough of Scherer Smith & Kenny LLP, each as counsel for the Settlement Class ("Class Counsel"). Class Counsel meet the requirements of Rule 23(g), as the Court previously recognized in its decision certifying the Rule 23 class in this case. ECF No. 169 at 18). These attorneys have invested considerable time and resources into the investigation of the facts underlying the claims and have performed work critical to achieving benefits for the Class. *See, e.g.,* Lohr Dec. ¶ 18, ECF No. 188-1.

### IV.    CONCLUSION

Plaintiff respectfully requests that the Court enter an order : (1) granting this Motion for Final Approval of the Settlement Agreement; (2) finally approving the Settlement Agreement; (3) finally certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (4) finding the class notice as implemented satisfied Rule 23 and due process; (5) finally appointing Plaintiff James Karl as the Settlement Class Representative; (6) finally appointing as Lead Counsel Jason Lohr of Lohr Ripamonti & Segarich LLP, and as class counsel

-17-

Roberto Ripamonti of Lohr Ripamonti & Segarich LLP and Denis Kenny and John Lough of Scherer Smith & Kenny LLP, each as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); (7) approving payment to CPT Group as the Settlement Administrator; and (8) providing any other relief the Court deems just and proper.

Dated: December 9, 2021

Respectfully submitted,

LOHR RIPAMONTI & SEGARICH LLP
/s/ Jason Lohr
Jason Lohr

Dated: December 9, 2021

SCHERER SMITH & KENNY LLP
/s/ Denis Kenny
Denis Kenny
*Attorneys for Plaintiff JAMES KARL and the Class*

-18-