1
2
3
4
5
6                   UNITED STATES DISTRICT COURT
7
8                   NORTHERN DISTRICT OF CALIFORNIA
9
10    JAMES KARL,
11              Plaintiff,                        No.  C 18-04176 WHA
12          v.
13    ZIMMER BIOMET HOLDINGS, INC., et            **ORDER RE MOTION FOR FINAL**
      al.,                                        **SETTLEMENT APPROVAL AND**
14                                                **MOTION FOR ATTORNEY'S FEES**
              Defendants.
15    _____
16
17                           **INTRODUCTION**

18          In this employment misclassification action, defendant medical-device company

19    classified its sales associates as independent contractors, depriving them of various employee

20    benefits.  The parties now move for final approval of their class settlement and class counsel

21    move for attorney's fees and costs.  To the extent stated, the motions are **GRANTED**.

22                            **STATEMENT**

23          Prior orders detailed our facts (Dkt. Nos. 127, 169, 204).  In brief, plaintiff James Karl

24    sued defendant medical-device corporation Zimmer Biomet Holdings, Inc. in its various

25    corporate forms for misclassifying him and other sales associates as independent contractors.

26    After nearly three years of litigation that included three appeals to our court of appeals and one

27    attempted appeal to the Supreme Court, the parties reached a class-action settlement agreement

28

United States District Court
Northern District of California

1   in April 2021.  Since preliminary approval, notice of the settlement has reached all class

2   members (Thompson Decl. ¶¶ 9–10; Dkt. Nos. 214, 217).

3        The parties now move for final approval of the settlement and class counsel moves for

4   fees and costs.  There were no opt-outs or objections to the settlement or the requested

5   attorney's fees and costs.  This order follows a full fairness hearing.

6                                    **ANALYSIS**

7        "The class action device, while capable of the fair and efficient adjudication of a large

8   number of claims, is also susceptible to abuse and carries with it certain inherent structural

9   risks."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 623 (9th

10  Cir. 1982).  A settlement purporting to bind absent class members must be fair, reasonable, and

11  adequate.  *See* FRCP 23(e).  Rule 23(e)(2) requires district courts to employ a two-step

12  process.  *First*, the parties must show the district court will likely be able to approve the

13  proposed settlement.  *Second*, the district court must hold a hearing to make a final

14  determination of whether the settlement is fair, reasonable, and adequate.  We have arrived at

15  step two.

16       Our court of appeals recently explained that the final fairness assessment must analyze

17  the eight *Churchill* factors:  (1) the strength of the plaintiff's case; (2) the suit's risk, expense,

18  complexity, and the likely duration of further litigation; (3) the risk of maintaining class action

19  status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and

20  the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

21  governmental participant (if any); and (8) the reaction of the class members to the proposed

22  settlement.  *Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021) (quoting *In re*

23  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *Churchill Vill. v.*

24  *Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).  Additionally, Rule 23(e)(2) requires the district court

25  to consider an overlapping set of factors, including the adequacy of the notice procedure, "the

26  terms of any proposed award of attorney's fees," to scrutinize the settlement for evidence of

27  collusion or conflicts of interest, and to review other, relevant factors before deeming the

28  settlement fair.  *Kim*, 8 F.4th at 1179; *Briseño v. Henderson*, 998 F.3d 1014, 1023–26 (9th Cir.

United States District Court
Northern District of California

2

2021).  Among the other relevant factors that will be considered are those listed by this Court in its notice regarding factors to be evaluated for any proposed class settlement, filed herein on August 23, 2018 (Dkt. No. 12).

In short, in consideration for the dismissal of this action with prejudice and a release of all claims (excluding claims under the FLSA), the settlement creates a $7,380,482.10 fund to compensate the class.  The common fund will be distributed on a pro-rata basis based upon the bi-weekly service pay periods worked by each class member.  On average, each class member will receive a settlement payment of approximately twenty-one thousand dollars.  Moreover, for non-monetary relief, the settlement provides a process to reclassify Zimmer's sales associates as IRS form W-2 employees.  "Highly Compensated" sales associates will also have the option to remain independent contractors.

1.    THE CHURCHILL FACTORS.

We first turn to the eight *Churchill* factors.

*First* and *second*, the strength of plaintiff's case and the risk, expense, and complexity of the case support settlement.   Misclassification cases generally rank as time consuming and expensive.  But plaintiff would have had the additional burden of establishing that Zimmer misclassified its sales associates at a time when California's law on the matter remains in a state of significant flux.  In 2018, the California Supreme Court "dramatically altered state labor law in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal.5th 903, 232 Cal.Rptr.3d 1, 416 P.3d 1 (2018), by adopting the 'ABC test' for ascertaining whether workers were employees or independent contractors."  *Am. Soc. of Journalists and Authors, Inc. v. Bonta*, 15 F.4th 954, 957–58 (9th Cir. 2021).  Since then, California's appellate courts and our own court of appeals have issued opinions interpreting *Dynamex*, but the law is far from settled.  It bears mentioning, moreover, that Zimmer had sought to apply certain statutory exemptions to the ABC test, in which case the common law standard for employment classification would have also needed to be considered (*see* Dkt. No. 169 at 4, citing *Borello & Sons v. Dpe't of Indus. Rel.*, 48 Cal. 3d 341 (1989)).

United States District Court
Northern District of California

3

United States District Court
Northern District of California

Point in fact, this and other thorny legal grounds resulted in the parties appealing three previous decisions in our action to our court of appeals, and one decision to the Supreme Court. And remember, an October 2019 order granted Zimmer summary judgment on several of plaintiff's claims, including the FLSA claim for unpaid overtime (Dkt. No. 127). Zimmer thus had already whittled away aspects of plaintiff's case. At trial, Zimmer planned to introduce evidence that it did not sufficiently constrain its sales representatives for them to qualify as employees, including how: it did not track its sales representatives' daily activities or sales meetings; that team leads controlled their team composition and that government regulations controlled sales more than Zimmer's own rules; and that sales representatives made their own decisions and used their own judgment about sales strategies on a day-by-day basis (Dkt. No. 169 at 8–9). Zimmer's counterarguments might have defeated plaintiff's theories at trial.

*Third*, the risk of maintaining class action status throughout the trial is a neutral factor. A July 2020 order certified a Rule 23 class and appointed Lohr Ripamonti & Segarich LLP and Scherer Smith & Kenny, LLP as class counsel, and our court of appeals denied a petition for permission to appeal the decision (Dkt. Nos. 169, 182). However, the damages phase of the trial could still present individualized issues of proof that might complicate a class-wide verdict.

*Fourth*, the total settlement amount modestly favors settlement. The settlement provides for a non-reversionary class settlement amount of $7,380,482.10. Taking into account attorney's fees and costs, $5,444,480.01 is allocated to the class, which averages out to approximately $21,691.16 per each of the 251 class members. The settlement represents 6.9 percent of what plaintiff asserts is Zimmer's total exposure. This is a low-end settlement. But, the settlement also provides for the reclassification of sales representatives into IRS form W-2 employees, an important element of non-monetary relief and step further than another misclassification class-action settlement recently before the undersigned. *See Kudatsky v. Tyler Techs., Inc.*, 2021 WL 5356724, at *4 (N.D. Cal. Nov. 17, 2021). This monetary and non-monetary relief qualifies as adequate.

1

2

3

4

5

6

*Fifth*, the stage of the proceedings supports settlement.  The parties engaged in a significant amount of discovery.  Nine thousand pages of documents were produced, and the parties took eight depositions.  A class was certified.  Defendants were granted summary judgment as to a number of claims.  In short, this settlement occurred after significant victories on both sides and in the shadow of trial.  The parties also had the benefit of engaging in arms-length settlement discussions supervised by Judge Donna Ryu.

7

8

9

10

11

12

13

14

*Sixth*, the abilities and views of counsel support settlement.  Class counsel have a good deal of experience with these sorts of actions (Lohr Decl. ¶ 1).  *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955 (N.D. Cal. Oct. 18, 2021) (Judge Beth L. Freeman); *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4586960 (N.D. Cal. Sept. 25, 2018) (Judge Virginia K. DeMarchi).  This order finds counsel have diligently kept their nose to the grindstone to litigate class certification, oppose Zimmer's motion for summary judgment, and litigate the appeals of various decisions herein.  Counsel for both sides have approached settlement negotiations with the same zeal.

15

*Seventh*, no government entity participated in this action.  This factor is neutral.

16

17

18

*Eight*, the reaction of the class members to the settlement is positive.  With one-hundred percent participation, no class member objected to the settlement agreement.  This factor supports settlement.

19

In sum, the settlement agreement qualifies under the *Churchill* factors.

20

**2.    RULE 23 AND THIS COURT'S SETTLEMENT FACTORS.**

21

22

23

24

25

Consideration of the *Churchill* factors alone is not enough.  *Kim*, 8 F.4th at 1179.  This order accordingly evaluates whether the settlement is likely to be fair, reasonable, and adequate under Rule 23(e)(2), as well as this Court's notice regarding factors to be evaluated for any proposed class settlement (Dkt. No. 12), to the extent not considered in the *Churchill* analysis above.

26

27

*First*, reclassification and recovery of 6.9 percent of total damages represents an adequate cost-benefit analysis for absent class members given the risks of litigation discussed above.

28

United States District Court
Northern District of California

*Second*, the release of claims is not unnecessarily vague or overbroad and, after preliminary approval, class counsel has now provided notice to all class members.  The settlement releases "all claims certified for class treatment, alleged on a representative action basis, or which reasonably arise from, the factual and/or legal allegations set for in the operative complaint," and then goes on to list specific claims by name (Settlement Agreement § I.W, Dkt. No. 198-1 Exh. A).  This ranks as adequate here given the nature of the litigation.

At the final approval hearing, class counsel explained that six notice packets were returned as undeliverable and had no forwarding address or email address (Thompson Decl. ¶¶ 9–10).  "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  *Officers for Justice*, 688 F.2d at 624 (citation omitted).  Class counsel explain that the claims administrator CPT Group mailed the class notice and related forms to the class members on August 19, 2021.  Twenty-five notices were returned by the Post Office as undeliverable.  CPT then used Accurint to perform a skip-trace to locate better addresses for these twenty-five members.  CPT used this information to remail thirty notice packets. Six class members remained outstanding.

At the final approval hearing, the parties were ordered to find and notify those six class members and determine whether they opposed the settlement.  Counsel did so and reported back that none of the six newly-notified class members objected (Dkt. No. 214).  An order dated February 3, 2022, granted the parties stipulated request for additional time to locate and notify five further class members inadvertently excluded from the notice list (Dkt. No. 216).  Class counsel managed to properly notify these five class members, who also did not object to the settlement (Dkt. No. 217).  Because counsel have gone to the appropriate lengths to locate and notify all class members, the release ranks as sufficient.

*Third*, the plan of allocation is fair and reasonable, and the class members are treated equitably relevant to each other.  After expenses, attorney's fees, administrative costs, and PAGA penalties to LWDA are paid out, the final settlement will deliver $5,444,480.01 to 251 individuals.  The average payout will be approximately $21,691.16.  Each class member will receive his or her pro-rata share of the settlement amount based on the number of pay periods

6

that the class member performed services for Zimmer in California during the class period.
There is no reversion provision.  Settlement checks not cashed within 180 days will be sent to
the California State Controller's Office's Unclaimed Property Division (Settlement Agreement
§ III.C.3).  The notice was in plain English.  There is no incentive award.  These facts support
settlement

   *Fourth*, attorney's fees are discussed further below, but the proposed award and timing of
payment are appropriate.  Attorney's fees were properly left to the Judge.  This factor supports
approval.

   *Fifth*, this order finds no evidence of collusion or conflicts of interest.  As explained, the
parties actively litigated this case, and only settled after engaging in settlement conferences
before Judge Ryu.  There is no evidence that the parties did not engage in arms-length
negotiations.  In addition, class counsel did identify any agreement pursuant to Rule 23(e)(3).

   *Sixth,* this order notes that while the settlement provided a path for class member to
transition to employee status, that transition was explicitly subject to whether the sales
representatives had satisfactory job performance.  To that end, the preliminary approval order
required the notice to state that those not satisfactorily performing might well be terminated in
response to the settlement (Dkt. No 204 at 5, 7).  As it turns out, Zimmer intends to terminate
their relationship with two individuals for performance prior to the transition to employee
status (Br. 5–6).  Nevertheless, this order must take a wide-angle view of the settlement, and
transitioning ninety-nine percent of the class to IRS form W-2 status is laudable.

   Finally, other factors support final approval.  A portion of the settlement amount,
$110,707.22, will be allocated to the resolution of the PAGA claim, of which seventy-five
percent ($83,030.42) will be paid directly to the LWDA, and the remaining twenty-five percent
($27,676.80) will be paid to participating class members (Settlement Agreement § I.T).  This is
acceptable.  There is no issue with expansion of the class, nor a dwindling or minimal assets
problem.  The timing of the proposed settlement is appropriate.

   In short, having considered the applicable factors, this order finds the proposed class
settlement is fair, reasonable, and adequate so as to warrant final approval.  The Court shall

United States District Court
Northern District of California

7

1    retain jurisdiction to enforce the terms of the settlement for six months from the date of this

2    order.  Accordingly, and to the extent stated, final approval of the proposed class settlement

3    and plan of allocation is **GRANTED**.

4         **3.      MOTION FOR ATTORNEY'S FEES AND COSTS.**

5              ***A.      FEES.***

6         Class counsel request $2,066,534.99 in attorney's fees, or twenty-eight percent of the

7    total common fund.  For the reasons that follow, this order will award $1,814,826.67, or 24.6

8    percent of the common fund.

9         "Because the relationship between class counsel and class members turns adversarial at

10   the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class

11   counsel's requests for fees and expenses from the common fund." *In re Optical Disk Drive*

12   *Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).  A district court must ensure that

13   attorney's fees are "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963–

14   64 (9th Cir. 2003).  "In 'common-fund' cases where the settlement or award creates a large

15   fund for distribution to the class, the district court has discretion to use either a percentage or

16   lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  This order

17   finds the percentage method appropriate given the nature of the settlement. *See In re Bluetooth*

18   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

19        Our court of appeals has recognized twenty-five percent of the common fund as a

20   benchmark award for attorney's fees. *Ibid*.  A departure from our circuit's benchmark merits a

21   closer look at all the circumstances of the case, which can include: (1) the results achieved; (2)

22   the risks of litigation; (3) whether there are benefits to the class beyond the immediate

23   generation of a cash fund; (4) whether the requested percentage rate is above or below the

24   market rate; (5) the contingent nature of the representation and the opportunity cost of bringing

25   the suit; (6) a lodestar cross-check; and (7) reactions from the class. *See Vizcaino v. Microsoft*

26   *Corp.*, 290 F.3d 1043, 1048–52 (9th Cir. 2002).

27

28

United States District Court
Northern District of California

Counsel seeks $2,066,534.99, which breaks down to $1,052,976.64 for Lohr Ripamonti & Segarich LLP, $971,978.45 for Scherer Smith & Kenny LLP, and $41,579.90 to Public Citizen Litigation Group. We proceed through the *Vizcaino* factors.

The results achieved, risks of litigation, and non-monetary benefits to the class do not warrant a departure from the benchmark. The parties did reach an agreement to reclassify class members as employees, but the monetary settlement of 6.9 percent of potential liability remains on the low side of permissible settlement amounts. Moreover, while the current legal landscape posed risks to the class at trial, the ABC test adopted by the California Supreme Court reflected its concern the previous "*Borello* standard caused confusion and enabled businesses to evade labor requirements." *Am. Soc. of Journalists & Authors*, 15 F.4th at 958 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399 (Cal. 1989)). The law may be in a state of flux, but the general trend is in the class's favor. Thus, the *first*, *second*, and *third* factors all support a downward departure from the requested fee award.

As to the *fourth* factor, the percentage rate is three percent above the twenty-five percent benchmark for common fund cases in our circuit, which equates to an increase in fees of $221,414.46. Despite class counsel's description of this upward departure as "modest" (Br. 1), class counsel must justify this increase of nearly a quarter of a million dollars.

*Fifth*, class counsel took on the risk of litigating this case on a contingency basis. Over nine-thousand pages of documents were produced in discovery and eight depositions were taken. Class counsel expended a total 4,348.5 hours of work in the process (Lohr Fee Decl. ¶¶ 17, 21; Kenny Fee Decl. ¶¶ 9–12; Zieve Fee Decl. ¶ 6). The contingency arrangement moderately supports an upward departure from the benchmark.

*Sixth*, a lodestar cross-check supports this order's award of 23.5 percent of the common fund. The alleged lodestar for the three firms amounted to $2,890,438.70 (Br. 12). Breaking that number out, the hourly billing rates across all three firms that worked on this case ranged from $180 for non-attorney hours to $899 for Attorneys Allison Zieve and Scott Nelson (who assisted with the writ petition to the Supreme Court). Partners Jason Lohr and Denis Kenny (both $750 per hour) represent to the top billers in this matter (Lohr Fee Decl.; Kenny Fee

Decl.; Zieve Fee Decl.).  Counsel billed a total of 4,348.5 hours in this litigation.  Both class

counsel's hour rates and the hours expended rank as fair and reasonable, market-based, and

comparable to other recent approvals in this district.  *See Kudatsky*, 2021 WL 5356724, at *5;

*Bisaccia v. Revel Sys. Inc.*, 2019 WL 3220275, at *8 (N.D. Cal. July 17, 2019) (Judge

Haywood Gilliam).  The award granted herein of $1,814,826.67 in attorney's fees equates to a

multiplier of 0.63.  Counsel's requested award equates to a multiplier of 0.71.  Both multipliers

are well within the acceptable range of multipliers commonly applied in our circuit.  *See, e.g.*,

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 571–72 (9th Cir. 2019); *Vizcaino*,

290 F.3d at 1051 n.6 (describing appendix to opinion, finding a range of multipliers in

common fund cases of 0.6–19.6).

      *Seventh*, the requested fee of twenty-eight percent of the settlement received no

objections from class members, who received notice of the proposed award with their notice of

settlement and opportunity to opt-out (Thompson Decl. ¶¶ 3–4, 11–13; Dkt. Nos. 214, 217).

      Some *Vizcaino* factors provide modest support for counsel's requested upward departure

from the benchmark fee award, such as the reclassification of class members into W-2

employees.  However, given the class will only recover 6.9 percent of potential damages, the

ultimate benefit to class remains modest.  Consequently, this order AWARDS **$1,814,826.67** in

attorney's fees, to be distributed to each firm in the same proportions as their requested fees.

This equates to twenty-five percent of the common fund less costs and expenses, or 24.6

percent of the total common fund.  Taking expenses and other overhead into account

incentivizes counsel's cost-effective management of the litigation.[1]

### B.    COSTS.

      Counsel has incurred a total to date (as of December 9, 2021) of $25,645.00 in

unreimbursed costs (Lohr Fees Decl. ¶ 26; Kenny Fees Decl. ¶ 14).  Counsel has provided

specifics as to Lohr Ripamonti & Segarich LLP, the largest entries of which concern class

---

[1] $7,380,482.10 (gross common fund) - $25,645.00 (litigation costs) - $83,030.42 (PAGA
penalties to LWDA) – $12,500 (administrative costs) = $7,259,306.68; $7,259,306.68 x .25 =
$1,814,826.67.

United States District Court
Northern District of California

notice fees ($3,104.70), a transcript fee apparently for a Rule 30(b)(6) witness deposition ($2,486.45), and a flight to Chicago for the Rule 30(b)(6) witness deposition ($1,257.20) (Lohr Fee Decl. Exh. A).

The other fees generally concern filing fees, copy fees, and Pacer fees. This sample appears reasonable given this three-year and multi-million-dollar action, and this order will not require an itemized itinerary for the balance of the requested costs. The request for **$25,645** in costs is **APPROVED**.

In sum, class counsel shall receive $25,645 as reimbursement for litigation expenses, to be paid promptly from the settlement fund. As for attorney's fees, defendant shall wire transfer fifty percent of the total $1,814,826.67 as of the effective date as defined in the settlement, divided proportionately to counsel's original request for fees among the three law firms representing the class. The remaining fifty percent shall be paid when defendants certify that all funds have been properly distributed and the file can be completely closed.

## CONCLUSION

To the extent stated, final approval of the class settlement is **GRANTED**.

Plaintiff's request to finally certify, for settlement purposes, the proposed settlement class under Rule 23(a), (b)(3), and (e) is **GRANTED**.

Plaintiff's further request that this order find the class notice as implemented satisfied Rule 23 and due process is **GRANTED**. Plaintiff's further request to finally appoint plaintiff James Karl as the settlement class representative is **GRANTED**. Plaintiff's further request to appoint as lead counsel Jason Lohr of Lohr Ripamonti & Segarich LLP, and as class counsel Roberto Ripamonti of Lohr Ripamonti & Segarich LLP and Denis Kenny and John Lough of Scherer Smith & Kenny LLP, each as counsel for the settlement class under Rule 23(g) is **GRANTED**.

Plaintiff's further request to finally approve payment to CPT Group as the settlement administrator is **GRANTED**.

United States District Court
Northern District of California

11

This order **AWARDS** attorney's fees in the amount of **$1,814,826.67** to be distributed in installments as described above.  This order further **AWARDS** class counsel costs in the amount of **$25,645**.

**IT IS SO ORDERED.**

Dated:  March 4, 2022.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE